# EXHIBIT 2

Defendant Roger Stone's
Motion to Dismiss the Complaint,
Motion to Strike the Complaint, and
Motion for Sanctions
(filed September 18, 2020)

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

LARRY KLAYMAN

    Plaintiff,

v.                                                            CASE NO. 20-007120 CACE

INFOWARS, LLC, et. al.

    Defendants

_____/

**DEFENDANT ROGER STONE'S MOTION TO DISMISS THE COMPLAINT,
MOTION TO STRIKE THE COMPLAINT, AND MOTION FOR SANCTIONS**

Defendant, Roger Stone, through counsel, files this motion to dismiss for failure to timely serve the complaint within 120 days, pursuant to Fla. R. Civ. Pro. 1.070(j); motion to strike Plaintiff's claims pursuant to Fla. R. Civ. P. 1.140(f); and, motion for sanctions for vexatious litigation.

**INTRODUCTION**

Plaintiff Klayman alleges that Defendant Roger Stone has engaged in defamation, defamation *per se*, and defamation by implication – and in this version of the lawsuit, unfair competition with added defendants from InfoWars, LLC. Roger Stone, by trade, is a political pundit and commentator who is well-known for making unconventional and sometime controversial statements to the media. Plaintiff is an attorney who is well-known for his 'throwing something on the wall in the hopes that it sticks' approach to filling lawsuits. In fact, Plaintiff "likens his legal work to a MIRV missile, outfitted with many nuclear warheads, '[a]t

least one will get through to accomplish the mission,'"[1] and has said that he's filed "thousands"[2] of lawsuits. Indeed, Klayman revels in the notoriety he receives for his controversial, numerous, and unsuccessful lawsuits.[3]

Klayman is on a vexatious campaign to sue Roger Stone throughout the country and this Circuit. Klayman has filed suit against Stone on behalf of himself or his select client, Jerome Corsi, no less than seven times since 2019. Usually alleging identical facts and causes of action variations depending on whether the case was filed in federal district court or state circuit court.[4] Setting aside the merits of the lawsuit, Stone's arguments in this motion are: 1) this case was not served in time (120 days) and therefore, this Court does not have jurisdiction; 2) this case cannot be filed in this Court because *Klayman v. Stone,* Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019) was filed first and Klayman cannot file a new lawsuit with additional defendants in a new division; 3) the repeated filing of the same lawsuit over and over again, is vexatious litigation

---

[1] David Montgomery, *Can Larry Klayman make history with his NSA lawsuit?*, The Washington Post Magazine, May 9, 2014, https://www.washingtonpost.com/lifestyle/magazine/can-larry-klayman-make-history-with-his-nsa-lawsuit/2014/05/08/0a858436-b5c0-11e3-8cb6-284052554d74_story.html?utm_term=.93d7fc5ef51e

[2] Dana Milbank, *Dana Milbank: Larry Klayman's legal massacre*, Florida Today, Jan. 3, 2015, https://www.floridatoday.com/story/opinion/columnists/syndicated/2015/01/03/dana-milbank-larry-klaymans-legal-massacre/21101645/.

[3] *Id*. ("He uses litigation as a press strategy. His lawsuits allow him to uncover documents and depose officials, which makes news and gets him headlines. 'You report more when I file a lawsuit,' Klayman explained. 'It's like a prizefight.'").

[4] *Corsi v. Stone*, Case No. 1:19-cv-00324, filed in the United States District Court for the District of Columbia (dismissed). *Corsi v. Caputo,* Case No. 1:19-cv-01573-TJK (D.D.C.) (dismissed).

*Corsi v. Stone,* Case No. 50-2019-CA-013711-XXXX-MB (15th Jud. Cir., Fla. 2019) (Newsmax, & Fairbanks) (summary judgment granted).

*Klayman v. Stone,* Case No. 50-2019-CA-015104-XXXX-MB (15th Jud. Cir., Fla. 2019).

*Klayman v. Stone,* Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019).

*Klayman v. Infowars,* Stone, Case No. CACE-20-007120 (17th Jud. Cir., Fla. filed Apr. 28, 2020) and *Corsi v. InfoWars, LLC & Stone,* CACE 20-004473 (17th Jud. Cir., Fla. filed Mar. 11, 2020).

*Klayman v. InfoWars, LLC,*  9:20-cv-80614 (S.D. Fla. 2020).

and is subject of sanctions.

I. **Motion to Dismiss – Failure to Serve Complaint within 120 days.**

Plaintiff Klayman has sued Roger Stone again. The allegations are typically the same – Stone said nasty things about me and Stone should therefore pay me tens-of-millions of dollars. None thus far has been successful. This lawsuit was filed after *Klayman v. Stone,* Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019) where Klayman sued Stone for the appearance Stone made on the subject matter InfoWars program. This lawsuit, although Klayman added InfoWars defendants, is the same as the original one.

Klayman filed the complaint on April 28, 2020. He served the complaint on August 27, 2020. *See* Exhibit – 1 (proof of service). Florida Rule of Civil Procedure 1.070(j) states that a summons must be served on a complaint within 120 days of the filing of the suit. It is a matter of jurisdiction. This Court lost jurisdiction on August 26, 2020 – one day late. Because Klayman failed to timely serve the complaint within 120 days, this Court is without jurisdiction and Klayman should not be able to refile in this Court. Klayman must consider the various rules and ethics relating to whether he can amend the original lawsuit in *Klayman v. Stone,* Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019). While it should not concern this Court, Klayman should be cautious about refiling because he filed an identical suit in the Western District of Texas against the same defendants. *Corsi v. InfoWars, LLC,* 1:20-cv-00298-LY (W.D. Tex. 2020). The Court should dismiss this lawsuit with an instruction not to refile in this division.

II. **Motion to Strike Plaintiff Klayman's Statements**

As Mr. Klayman is aware, as a member of the Florida Bar: "[a] party may move to strike or the court may strike redundant, immaterial, impertinent, or scandalous matter from any pleading at any time." Fla. R. Civ. P. 1.140(f). Furthermore, a motion to strike a matter as

3

redundant, immaterial or scandalous should be "granted if material is wholly irrelevant, can have no bearing on equities, and no influence on the decision. *Pentecostal Holiness Church v. Mauney,* 270 So.2d 762, 769 (Fla. 4th DCA 1972). As such, Defendant Stone moves this Court to strike the following:

- "Awarding Plaintiff Klayman's attorney's fees and costs" (Compl. b). There is no statute or contract that supports such a remedy. As to FDUPTA claim under Chapter 501, Plaintiff does not allege a "good" or "service" that would provide for protection under the statute.

- "Awarding Plaintiff Klayman compensatory and actual including consequential and incidental damages in excess of $50,000,000 million U.S. Dollars." (Compl. a). There is no basis in the complaint for such a request, nor is it jurisdictional.

- Klayman wasn't threatened in "Mafia style," nor does anything alleged in that paragraph have anything to do with the alleged cause of action. The entire complaint is littered with irrelevancies. *See Klayman v. InfoWars, LLC,* 9:20-cv-80614 (S.D. Fla. 2020) (Order) – Exhibit – 2.

For these reasons, the Court should strike the unsubstantiated assertions pursuant to Rule 1.140(f) of the Florida Rules of Civil Procedure.

### III.     Motion for Sanctions

Klayman is a member of the Florida Bar. Even though he has filed *pro se*, he still is governed by the rules as if he is a lawyer for a party. He should be sanctioned for filing another duplicative and vexatious lawsuit against Roger Stone.

The Court has inherent authority to sanction parties and counsel.

This Court has explained that "[g]enerally, a court may only award attorney's fees when such fees are 'expressly provided for by statute, rule, or contract.' " *Bane v. Bane,* 775 So.2d 938, 940 (Fla.2000). However, since 1920, this Court has recognized the inherent authority of trial courts to assess attorneys' fees for the misconduct of an attorney in the course of litigation. *See United States Sav. Bank v. Pittman,* 80 Fla. 423, 86 So. 567, 572 (1920) [(foreclosure case)].

\*\*\*\*

As we have subsequently stated, "Clearly, a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So.2d 606, 608–09 (Fla.1994). Most recently, the Court in *Bitterman v. Bitterman,* 714 So.2d 356, 365 (Fla.1998), recognized the inherent authority of a trial court to award attorneys' fees for bad faith conduct against a party, even though no statute authorized the award:

The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith. Attorney's fees based on a party's inequitable conduct have been recognized by other courts in this country. *See Vaughan v. Atkinson,* 369 U.S. 527, 530–31, 82 S. Ct. 997, 8 L.Ed.2d 88 (1962) (awarding attorney's fees based on respondent's "recalcitrance" and "callous" attitude); *Rolax v. Atlantic Coast Line R.R. Co.,* 186 F.2d 473, 481 (4th Cir.1951) (holding that attorney's fees were justified because "plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization"). We note that this doctrine is rarely applicable. It is reserved for those extreme cases where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Foster v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S. Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). "Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir.1982) (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)). This Court and other courts in this state have recognized that attorney's fees can be awarded in situations where one party has acted vexatiously or in bad faith. *See Florida Patient's Compensation Fund v. Rowe,* 472

5

> So.2d 1145, 1148 (Fla.1985) ("This state has recognized a limited exception to this general American Rule in situations involving inequitable conduct."); *Hilton Oil Transport v. Oil Transport Co.,* 659 So.2d 1141, 1153 (Fla. 3d DCA 1995); *In re Estate of DuVal,* 174 So.2d 580, 587 (Fla. 2d DCA 1965).

*Moakley v. Smallwood*, 826 So. 2d 221, 223–24 (Fla. 2002).

The filing of repetitive motions seeking to re-litigate claims which have previously been resolved on the merits is a ground for a court to consider sanctions against a *pro se* litigant. *See Westbrook v. State*, 149 So. 3d 723, 723–24 (Fla. 3d DCA 2014). "The right to proceed pro se may be forfeited where it is determined, after proper notice and an opportunity to be heard, that the party has abused the judicial process by the continued filing of successive, meritless or frivolous collateral claims in a criminal proceeding." *Id.* (citing *State v. Spencer,* 751 So.2d 47 (Fla.1999)). Certainly, the Bar and the courts expect more from its lawyers. Where a lawyer files abusive and repetitive claims without basis, the lawyer can be sanctioned. *See The Florida Bar v. Thompson,* 979 So. 2d 917, 920 (Fla. 2008) (citations omitted).

The Court's inherent authority to impose fees can extend to Corsi and counsel as well. *See Thompson,* 979 So. 2d at 920.

> Both [Florida state courts] and the United States Supreme Court have, when deemed necessary, exercised the inherent judicial authority to sanction an abusive litigant. *See, e.g., Martin v. D.C. Court of Appeals,* 506 U.S. 1, 113 S. Ct. 397, 121 L.Ed.2d 305 (1992); *In re Sindram,* 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991); *In re McDonald,* 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989); *Fla. Bd. of Bar Exam'rs re Ramos,* 17 So.3d 268 (Fla.2009); *Fla. Bar v. Thompson,* 979 So.2d 917 (Fla.2008); *Hamilton v. State,* 945 So.2d 1121 (Fla.2006); *May v. Barthet,* 934 So.2d 1184 (Fla.2006); *Sibley v. Fla. Judicial Qualifications Comm'n,* 973 So.2d 425 (Fla.2006). The need for such a sanction lies in the protection of the rights of others to timely review of their legitimate filings. *See Martin,* 506 U.S. at 3, 113 S.Ct. 397 (imposing sanction where petitioner's filings for certiorari review had a deleterious effect on the Court's fair allocation of judicial resources); *Sibley,* 973 So.2d at 426. The

> resources of our court system are finite and must be reserved for the resolution of genuine disputes. *See Peterson v. State,* 817 So.2d 838, 840 (Fla.2002). As noted by the United States Supreme Court, "Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald,* 489 U.S. at 184, 109 S. Ct. 993.

*The Florida Bar v. Kivisto*, 62 So. 3d 1137, 1139 (Fla. 2011) (emphasis added).

Klayman's repeated filing of the same lawsuits occurs because he is not sanctioned for doing it. This is not a case where a young lawyer, overcome by zealousness, unconsciously backed up into a cactus. Klayman is an experienced lawyer who repeatedly has filed identical lawsuits (in this case over and over again), as part of a litigation strategy to harass – vexatiousness. Fees costs and an injunction should be imposed.

## CONCLUSION

The motion to dismiss should be granted. The irrelevant and scandalous allegations in the complaint should be stricken, and Plaintiff should be sanctions with fees and costs, for filing a vexatious lawsuit in this Court. Lastly, the Court should enjoin Klayman on behalf of himself and Corsi to not file any lawsuits against Roger Stone in this Circuit unless it involves entirely new allegations.

Respectfully submitted,

Robert C. Buschel, Esq.
BUSCHEL GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 1300
Fort Lauderdale, Florida  33394
Tele:  (954) 530-5301
Email: Buschel@BGlaw-pa.com

By:  __/s/ Robert C. Buschel_____

7

ROBERT C. BUSCHEL  
Florida Bar No. 0063436

### CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of Court using Florida Efiling. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by Florida Efiling or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

BUSCHEL GIBBONS, P.A.

BY: /s/ Robert Buschel  
ROBERT C. BUSCHEL

Exhibit -- 1

IN THE CIRCUIT COURT OF THE _____Seventeenth_____ JUDICIAL CIRCUIT,
IN AND FOR _____ COUNTY, FLORIDA

Case No.: CACE-20-007120
Division: Circuit Civil

__Larry Klayman__,
        Petitioner,

and

__Infowars LLC, et al__,
        Respondent.

*[handwritten: KRL / SD51466 / 8/27/2020 / 6:13]*

## SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
## ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
## CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: {enter other party's full legal name} Roger Stone
{address (including city and state)/location for service} 4300 Bayview Drive, Fort Lauderdale, FL, 33308

## IMPORTANT

A lawsuit has been filed against you. You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at:
{street address} 201 SE 6TH STREET, FORT LAUDERDALE, FL, 33301
A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

**If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

{Name and address of party serving summons} Larry Klayman, 7050 W. Palmetto Park Rd, Boca Raton, FL, 33433

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.

Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.

You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address, Florida Supreme Court Approved Family Law Form

Florida Family Law Rules of Procedure Form 12.910(a), Summons: Personal Service on an Individual (03/17)

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 05/05/2020 07:27:38 PM.****

# Exhibit -- 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-80614-CIV-ALTMAN**

**LARRY KLAYMAN**,

    *Plaintiff*,

v.

**INFOWARS, LLC,** *et al.*,

    *Defendants*.

_____/

## ORDER REQUIRING MORE DEFINITE STATEMENT

Larry Klayman was upset when Roger Stone called him "incompetent" on national television. *See* Complaint [ECF No. 1] ¶ 44. So, he filed this Complaint—which, when attachments are included—is 46 pages long. *See id.* at 1–46.

In the Complaint, Klayman asserts five causes of actions against five Defendants. Somewhat surprisingly—given the allegations—none of the Defendants is named Roger Stone. Instead, Klayman has sued: Infowars, LLC; Free Speech Systems, LLC; Alex Jones; David Jones; and Owen Shroyer. *See id.* at 1. Against these Defendants, Klayman levies (1) three counts relating to Mr. Stone's allegedly defamatory statements; (2) one count of Unfair Competition under the Lanham Act; and (3) one count of Unfair and Deceptive Trade Practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See generally id.* at 1–21.

The Complaint, however, is a shotgun pleading. It is, in the words of the Eleventh Circuit, "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015); *see also* FED. R. CIV. P. 8(a) ("A pleading that states a claim for relief must contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief."

(emphasis added)).

To give some notable examples, Klayman avers that "Defendant Alex Jones is a well-known extreme and totally discredited 'conspiracy theorist' and media personality." *Id.* ¶ 6. He goes on to inform the Court that the "Sandy Hook families had to endure years of abuse and torture from Defendants before finally filing suit against numerous parties." *Id.* ¶ 17. "Furthermore," he continues, "Defendant Alex Jones in concert with the other Defendants propagated and promoted the 'Pizzagate' conspiracy on his show." *Id.* ¶ 19. These statements are wholly irrelevant to the Complaint's causes of action and serve none of its stated purposes: The Sandy Hook tragedy, for instance, plays no part in the Plaintiff's claims, and Defendant Jones' status as a conspiracy theorist—true or not—is similarly immaterial.

Of course, if these deficiencies plagued only one or two sentences in an otherwise-compliant complaint, the Court might look the other way. But the *whole* Complaint is littered with ostentatious irrelevancy. Take, for example, paragraph 27, which reads as follows:

> 27. Stone likes to portray himself as Mafia, and indeed on information and belief has Mafia connections, frequently making reference to Mafia figures who he admires, as well as other unsavory types who have been alleged to have engaged in unethical and/or illegal behavior. For example, he frequently makes reference to his heroes being Hyman Roth in the 'Godfather," who was the movie version of Meyer Lansky, and Roy Cohn, not to mention, Richard Nixon, for his role in Watergate. In this regard, after Stone was indicted he held a press conference on the courthouse steps of the federal courthouse in Ft. Lauderdale, where he was booked, with his arms defiantly in the air in the "victory' pose used by Nixon after he resigned in disgrace as a result of the Watergate scandal. At the time, Stone had been employed by a Nixon group called CREEP, or the Committee to Reelect the President. Defendant Stone even has a large tattoo of Richard Nixon affixed to his back. Thus, given his admiration for persons such as these, particularly Mafia figures, his actions as pled herein can be taken as threats, as well as being defamatory. And, Plaintiff Corsi is 72 years old and thus very vulnerable emotionally and physically to these threats. Stone's intentional infliction of emotional distress and coercion and threats are intended to try even cause Plaintiff Corsi to have heart attacks and strokes, in order that Plaintiff will be unable to testify at Stone's criminal trial. Tellingly, Stone threatened kill a material witness and his service dog, Credico, Person 2 in the Mueller Indictment, "Mafia style."

2

> Stone also fashions himself and indeed has the reputation, at a minimum, as being the preeminent "dirty trickster." See "Get Me Roger Stone" on Netflix.

Compl. ¶ 27 (grammatical errors in original).

In just one paragraph, Klayman manages to reference the Mafia, Hyman Roth, Meyer Lansky, Roy Cohn, Richard Nixon, the Watergate Scandal, a "group called CREEP," a "large tattoo of Richard Nixon," an emotional support animal, an internet streaming service, a documentary, and the Mueller Indictment—not to mention several serious allegations of witness tampering and intimidation. *Id.* ¶ 27. This paragraph plainly violates FED. R. CIV. P. 10(b), which requires that "[a] party . . . state its claims or defenses in numbered paragraphs, each limited as far as practicable to *a single set of circumstances*." (emphasis added).

But the problem lies, not so much in the sheer number or variety of allegations—though these are, in themselves, problematic. The problem is, rather, that the Defendants cannot properly answer this paragraph with a simple "Admitted," "Denied," or "I don't know"—as FED. R. CIV. P. 8(b) requires them to do. After all, some of these "facts" are true, others may not be, some are factual averments, others are legal conclusions, and many more may be the kinds of things the Defendants know nothing about—all within a single paragraph.

Again, it would be one thing if paragraph 27 were unique in this respect. But the entire Complaint is similarly deficient. So, for instance, whole pages of the Complaint are dedicated to Roger Stone's pending criminal prosecution. *See generally* Compl. at 6–8. In fact, the Plaintiff attaches to the Complaint a copy of the indictment against Mr. Stone—this, despite the fact that Mr. Stone is not a party to this case. *See id.* at 21. Either way, the pending criminal prosecution against Mr. Stone is wholly irrelevant to the Plaintiff's defamation claims.

The Plaintiff's decision to include a count of Unfair Competition under the Lanham Act

3

warrants separate discussion. *See* Compl. at 16–18. To have standing[1] to bring a claim under the Lanham Act, the Plaintiff's injuries must fall within the "zone of interests" the statute was intended to protect. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) ("The zone-of-interests test is therefore an appropriate tool for determining who may invoke the cause of action in § 1125(a)."). Identifying those interests "requires no guesswork, since the Act includes an 'unusual, and extraordinarily helpful,' detailed statement of the statute's purposes." *Id.* at 131 (citation omitted). Those "purposes" are set out in 15 U.S.C. § 1127, which provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

The Plaintiff's alleged injury appears to lie *well* outside the zone of these interests. He alleges no use of a "mark," mentions no "unfair competition," claims no "counterfeiting," and does not reference any international commerce. Instead, he brings a Lanham Act claim as an attorney whose reputation was (allegedly) harmed when a television personality (apparently) expressed a negative opinion of him. *See* Compl. ¶ 77 ("Defendants have made false and/or misleading statements that have deceived and/or had the tendency to deceive a substantial segment of the receiving audience."). Because this injury does not plausibly fall within the purview of the Lanham Act's "zone of interests," its inclusion in the Complaint is purely "conclusory."

---

[1] It is the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

4

At its core, the Plaintiff's claim is straightforward: he was injured, he says, when a television personality defamed him on a national television program. Rather than plead *these* simple facts, however, the Plaintiff has delved deeply into the Defendants' personal histories in a way that untethers most of his factual allegations from the Complaint's causes of action. This type of shotgun pleading is inappropriate in federal court. *See, e.g.*, *Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

Nevertheless, the Eleventh Circuit has warned that a "district court abuses its discretion when it dismisses an action *sua sponte* without providing the plaintiff with notice of its intent to dismiss or an opportunity to respond, unless amendment would be futile or the complaint is patently frivolous." *Brinson v. Welsh*, 709 F. App'x 582, 584 (11th Cir. 2017) (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015) (cleaned up)). And this Court is not prepared (at least not yet) to say that the Complaint is "patently frivolous"—and so, it will not be dismissed.

Fortunately, though, the Eleventh Circuit has approved of a less-drastic remedy in these circumstances: When faced with a shotgun pleading, the Circuit has said, district courts should *sua sponte* require the plaintiff to amend his complaint *before* the defendant wastes resources responding to a pleading that patently violates the Federal Rules of Civil Procedure. *See, e.g.*, *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) ("When presented with a shotgun complaint, the district court should order repleading *sua sponte*."); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) ("In light of defense counsel's failure to request a repleader, the court, acting sua sponte, should have [required a more definite statement]."

5

(cleaned up)); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 n.5 (11th Cir. 1996) ("On examining those pleadings, the court, acting *sua sponte,* should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement."); *see also Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) ("[W]hy should parties wait until discovery to identify, with precision, the subject of the litigation? That is exactly backward. Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading."); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("[Shotgun] pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently."); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) ("[S]hotgun pleadings wreak havoc on the judicial system.").

This Court will follow that admonition here and require the Plaintiff to amend his Complaint *before* any response is filed.

Accordingly, the Court hereby

**ORDERS** as follows:

1. The Plaintiff shall, by **April 23, 2020,** file an Amended Complaint that complies with the Eleventh Circuit's holding in *Weiland*, the Federal Rules of Civil Procedure, and this Order. In particular, the Plaintiff shall remove all references to irrelevant, conclusory, and scandalous material.

2. The Plaintiff shall then serve a copy of the Amended Complaint, together with this Order, on each of the Defendants.

6

3. If the Plaintiff chooses to include his Lanham Act claim in his Amended Complaint, he must **SHOW CAUSE**, by **April 27, 2020**, that he has standing to pursue that claim.

4. Failure to comply with this Order will result in dismissal without prejudice and without further notice.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 13th day of April 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record