App. 1

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: CLIVEN D. BUNDY, | No. 18-70359 |
| CLIVEN D. BUNDY, AKA Cliven Bundy, | D.C. No. 2:16-cr-00046-GMN-PAL-1 |
|      Petitioner, | District of Nevada, Las Vegas |
| v. | ORDER |
| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA, LAS VEGAS, | (Filed Apr. 24, 2018) |
|      Respondent, | |
| UNITED STATES OF AMERICA, | |
|      Real Party in Interest. | |

Before: W. FLETCHER, GOULD, and BYBEE, Circuit Judges.

The petition for writ of mandamus is hereby DENIED.

———

GOULD, Circuit Judge, dissenting:

I respectfully dissent for the reasons stated in my prior dissent on the initial mandamus petition filed by

App. 2

Mr. Klayman after his *pro hac vice* application to represent then criminal defendant Cliven Bundy had been denied by the district court. *See In re Bundy*, 840 F.3d 1034, 1049 (9th Cir. 2016) (Gould, J., dissenting). I dissent also based on the Supreme Court's authority in *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), because at this stage the district court has dismissed the criminal claims against Cliven Bundy, based on alleged government misconduct, and so the matter of Mr. Klayman's desired *pro hac vice* application to represent Bundy is currently and effectively moot.

The Government suggests in footnote 5 of its Answer from the United States (Plaintiff–Real Party in Interest), that Klayman's mootness premise may be undermined if the district court grants a pending motion to reconsider its dismissal, or if the Government filed an appeal of the dismissal and prosecuted after a reversal in the appellate courts. However, those possibilities are speculative because there is now no criminal prosecution pending the defense of which would be assisted by Klayman's *pro hac vice* application for admission. But if there were to occur a renewed prosecution of Bundy, for either of those potential reasons, then Klayman could once more seek to represent him *pro hac vice* and proceedings would follow. I view those possibilities as speculative at present because no one could say that either would occur. The immediate problem for Klayman is the existence of the prior decisions of the district court denying *pro hac vice* admission and of this panel denying mandamus relief. Those opinions are now effectively unreviewable on further appeal,

App. 3

and the only appeals thus far have concerned only the extreme standards governing issuance of mandamus relief.

It is true that our circuit's law only requires vacatur for mootness in civil cases under the authority of *Munsingwear*. So in that sense, because Klayman's attempted *pro hac vice* admission arises in the context of a criminal case, it might be difficult to say there is any "clear error" here, such as ordinarily animates the giving of mandamus relief under *Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977). In fact that argument is asserted by the government in opposing this mandamus petition, that this petition relates to a criminal case and *Munsingwear* relief is only the rule for civil cases. But while Klayman's client Cliven Bundy was the target defendant of the dismissed criminal case, the denial of Klayman's petition for writ of mandamus cannot be viewed as anything other than a civil proceeding. And even if a mandamus petition related to a representation in a criminal case should be viewed as a criminal matter, there's no sound reason why the reasoning and policy of *Munsingwear* would not make its rule still applicable.

Although Bundy now is out of his original criminal case which has been dismissed as a result of the government misconduct, the damage to Klayman from wrongful denial of his attempted *pro hac vice* admission, is still present. So his current mandamus petition is not moot by analogy to the collateral order doctrine of *Cohen v. Benefit Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

App. 4

I respectfully dissent from denial of the current mandamus petition because of what I consider to be an unnecessary and excessive negative impact of the district court's decision denying *pro hac vice* admission, and our prior decisions denying mandamus relief, on the practice and reputation of Klayman.

I do not share the Petitioner's view that there has been any bias against him by any member of our panel. But I am motivated to dissent because these proceedings have become overblown. If, as I believe, the criminal case against Bundy is over, with the *pro hac vice* admission issue here being a dead letter, then I see no substantial reason in fairness why the prior decisions of the district court and of our court on this matter need to stand of record, serving no purpose at this stage, and potentially and unfairly being to the detriment of Klayman's practice and reputation. Having dissented from the initial denial of mandamus relief by us when Klayman first challenged the denial of *pro hac vice* status in the district court, I respectfully maintain my dissent here.

I respectfully continue to believe that the initial denial of *pro hac vice* was wrong, in substance and in the standard applied. It was wrong in substance because Klayman is an inventive and aggressive criminal defense attorney, a counsel of choice for Bundy who faced the risk of life imprisonment at his age of more than 70. In my view Klayman was just what Bundy needed because of Bundy's controversial status as a defendant, and the broad array of federal power lined up against Bundy. In those circumstances, archaic rules

App. 5

giving district courts substantial discretion to control what attorneys appear in the district court, should necessarily give way to the Sixth Amendment right of the defendant to the counsel of his or her choice as part of the defense team, except when exclusion of a chosen defense counsel is justified by the most extreme circumstances showing a superior government interest, but such circumstances were not presented here.

The decision is also wrong for applying the incorrect standard in this respect. Like the Fifth Circuit in *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975), and the Eleventh Circuit in *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997), we should have held that only a prior suspension or disbarment of Klayman or facts warranting that could justify denying *pro hac vice* admission. *See In re Bundy*, 840 F.3d at 1056 (Gould, J., dissenting). Instead, we mistakenly allowed the district court to deny Klayman's admission when a major part of the district court's reasoning concerned a pending negative bar proceeding that had never been completed and subjected to appeals. The standard we chose too easily let a district court eliminate a criminal defense lawyer who promised to be a thorn in the side of the district court; but indeed that was just what Bundy then needed and what should have been permissible in a high stakes contest like this with liberty for life at stake. We should instead have applied the standard used by the Fifth and Eleventh Circuits suggesting that a defense counsel of choice should not be eliminated through the *pro hac vice* admission process absent an ethical violation sufficient

App. 6

to warrant a disbarment or facts determined finally to that extent.

For these reasons, I respectfully dissent.

———————————————

App. 7

[SEAL] **OFFICE OF DISCIPLINARY COUNSEL**

*Serving the District of Columbia Court of Appeals
and its Board on Professional Responsibility*

**515 5th Street NW, Building A, Room 117, Washington,
DC 20001 • 202-638-1501, FAX 202-638-0862**

July 2, 2018

Hamilton P. Fox, III
*Disciplinary Counsel*

Elizabeth A. Herman
*Deputy Disciplinary
    Counsel*

*Senior Assistant
    Disciplinary Counsel*
Jennifer P. Lyman
Julia L. Porter

*Assistant Disciplinary
    Counsel*
Joseph N. Bowman
Hendrik deBoer
Gayle Marie Brown Driver
Jerri U. Dunston
Jelani C. Lowery
Becky Neal

Dolores Dorsainvil Nicolas
Sean P. O'Brien
Joseph C. Perry
William R. Ross
Clinton R. Shaw, Jr.
H. Clay Smith, III
Caroll Donayre Somoza
Traci M. Tait

*Senior Staff Attorney*
Lawrence K. Bloom

*Manager, Forensic
    Investigations*
Charles M. Anderson

*Senior Forensic
    Investigator*
Kevin E. O'Connell

### ***CONFIDENTIAL***

Larry E. Klayman, Esquire
269 South Beverly Drive
Suite # 1298
Beverly Hills, California 90212
    and
leklayman@gmail.com

App. 8

**Re:  Klayman/Disciplinary Counsel**
**Disciplinary Docket No.: 2017-D051**

Dear Mr. Klayman:

Based on the investigation of your actions in connection with your *pro hac vice* application in *United States v. Bundy*, Disciplinary Counsel has prepared the enclosed proposed specification of charges. Before submitting the proposed charges to a Contact Member, I wanted to give you an opportunity to provide this office with any additional information and documents you think are relevant. In your letter of June 12, 2018, you said you would be filing another writ of certiorari with the Supreme Court. If you have done so, please provide Disciplinary Counsel a copy.

We are sending this correspondence to your Beverly Hills, California address because you have stated this is where you want this office to send your mail. Please note that the D.C. Bar Membership Office continues to list your address as 2020 Pennsylvania Avenue, NW, Suite 345, Washington, D.C. 20006. To ensure that all mail is sent to you in California, you should advise the D.C. Bar of your most current primary address.

Thank you for your cooperation.

Sincerely yours,

/s/ Julia L. Porter
Julia L. Porter
Senior Assistant
    Disciplinary Counsel

Enclosure:   Draft Specification of Charges

JLP:act

——————

App. 9

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY

| | |
|---|---|
| **In the Matter of** : | |
| **LARRY E. KLAYMAN, ESQUIRE** : | |
| **Respondent,** : | **Disciplinary Docket No. 2017-D051** |
| **A Member of the Bar of the District of Columbia Court of Appeals. Bar Number: 334581 Date of Admission: December 22, 1980** : | |

### SPECIFICATION OF CHARGES

The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar R. X and XI, § 2(b).

Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar R. XI. Pursuant to D.C. Bar R. XI, § 1(a), jurisdiction is found because:

1. Respondent is a member of the Bar of the District of Columbia Court of Appeals, having been admitted on December 22, 1980, and assigned Bar number 334581. Respondent also is licensed in Florida. Respondent was licensed to practice in Pennsylvania but was administratively suspended based on his failure to

App. 10

comply with CLE requirements. Respondent has never been licensed to practice law in Nevada.

The facts giving rise to the charges of misconduct are as follows:

### The Disciplinary Proceedings Pending Against Respondent in 2016

2.   On or about November 15, 2012, Disciplinary Counsel submitted proposed charges against Respondent in Bar Docket No. 2008-D048. A contact member approved the charges, and they were filed with the Court on September 27, 2013 and subsequently served on Respondent.

3.   On June 23, 2014, Respondent signed an affidavit stipulating to the facts in a petition for negotiated discipline. Respondent averred that he accepted full responsibility for his misconduct, which the negotiated petition described as violations of Rule 1.9 (conflict of interest) in three matters and Rule 8.4(d) (conduct seriously interfering with administration of justice) in one of the three matters. He agreed to a public censure for his misconduct.

4.   After holding a hearing on the petition for negotiated discipline, the Hearing Committee issued an order on January 13, 2015, finding that a public censure was "unduly lenient." On that basis, the Committee rejected the petition for negotiated discipline but said the parties could revise and resubmit it.

5.   On June 22, 2015, Disciplinary Counsel filed a motion to withdraw its petition for negotiated

App. 11

discipline. On August 3, 2015, the Hearing Committee denied the motion as moot, as the matter for negotiated disposition already was closed.

6.    On August 31, 2015, the Board Office assigned the previously-filed charges against Respondent to another Hearing Committee. That Committee held a three-day hearing on the charges on January 26-28, 2016.

7.    At the close of the hearing on January 28, 2016, the Hearing Committee made a preliminary, non-binding decision, finding that Respondent had violated at least one of the Rules. The Committee set a briefing schedule for post-hearing briefs.

8.    On March 3, 2016, Disciplinary Counsel filed its post-hearing brief, recommending that Respondent be suspended based [sic] the evidence demonstrating he violated Rule 1.9 in three matters and Rule 8.4(d) in one of the three matters.

9.    Respondent did not file his post-hearing brief until sometime after March 16, 2016.

**The Criminal Charges Against Cliven Bundy in Federal Court in Nevada**

10.    On March 2, 2016, a federal grand jury in the District of Nevada returned a sixteen-count superseding indictment against Cliven Bundy, four of his sons, and 14 others, charging them with conspiracy, assault on a federal officer, obstruction of justice, and other crimes.

App. 12

11.    Following his indictment, Bundy retained a Nevada lawyer, Joel Hansen, and Respondent to represent him in the criminal matter, which was before the United States District Court of Nevada.[1]

12.    Under Local Rules for the United States District Court of Nevada, an attorney who has been retained to appear in a particular case but is not a member of the bar of the district court "may appear only with the court's permission . . . by verified petition on the form furnished by the clerk." Nev. Dist. Ct. Local R. IA 11-2(a). The Rule further states that "[t]he court may grant or deny a petition to practice under this rule." *Id.* 11-2(h).

### Respondent's Petition to be Admitted *Pro Hac Vice* as Counsel for Bundy

13.    On March 27, 2016, Respondent filed a Verified Petition stating that Bundy had retained him in connection with the Nevada criminal case and requesting *pro hac vice* admission to practice before the district court.

14.    In his verified petition and in other pleadings Respondent filed with the United States District of Nevada and the United States Court of Appeals for the Ninth Circuit, Respondent listed his offices at 2020

---

[1]  Hansen later sought permission to withdraw for health reasons, and the district court approved his request on the condition that Bundy find substitute local counsel. On October 24, 2016, Nevada attorney Bret Whipple entered his appearance as counsel for Bundy.

App. 13

Pennsylvania Avenue, NW, Suite 800 (later Suite 345), Washington, D.C. 20006.

15.   The Verified Petition included Respondent's sworn responses to a number of inquiries. The fifth question or request for information read:

> That there are or have been no disciplinary proceedings instituted against petitioner, nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid disciplinary or disbarment proceedings, except as described in detail below.

16.   Respondent wrote in response:

> The only disciplinary case pending is in the District of Columbia, disclosed in the attached. During my 39 years as an attorney, I have remained continually in good standing with every jurisdiction that I have been admitted to, but have responded to a few complaints explained in the attached statement. I also allowed my bar membership in Pennsylvania to lapse for lack of use by not completing CLE's [sic] there, but remain eligible for reinstatement. See attached statement.

17.   Respondent provided further information in an attached statement. With respect to the disciplinary case in D.C., Respondent stated:

> [The proceeding] was filed almost 8 years ago over a claim by Judicial Watch, my former public interest group that I founded and was

App. 14

Chairman and General Counsel, after I left Judicial Watch to run for the U.S. Senate in Florida in 2003-04, that by representing a former client, employee and donor that it had abandoned, sexually harassed and defrauded that I was in conflict of interest. I represented the persons pro bono, did not breach any confidences with Judicial Watch, and did so only to protect their interests in an ethical fashion. I did not seek to break any agreements with Judicial Watch but rather to have them enforced to help these persons. The matter is likely to be resolved in my favor and there has been no disciplinary action.

18.   As to other bar complaints, Respondent explained that he "agreed to a public reprimand before The Florida Bar" for failing to timely pay a mediated settlement to a client, but that there was "no showing of dishonesty" and he was never suspended from the practice of law. Respondent also revealed that, 22 and 18 years earlier, "two judges vindictively stated that I could not practice before them after I challenged rulings they had made on the basis of bias and prejudice." He explained that those exclusions applied only to the two judges themselves, Judge William D. Keller of the U.S. District Court for the Central District of California and Judge Denny Chin of the U.S. District Court for the Southern District of New York. He said that the "bars of the District of Columbia and Florida reviewed these rulings and found that I did not act unethically" and that he was currently in good standing in both jurisdictions.

App. 15

19.   On March 31, 2016, the district court denied Respondent's Verified Petition "for failure to fully disclose disciplinary actions and related documents." The district court found that Respondent's statement that the matter regarding Judicial Watch pending in D.C. "is likely to be resolved in my favor and there has been no disciplinary action" was "misleading and incomplete." The district court had, on its own, learned that in the D.C. disciplinary proceedings, Respondent had signed an Affidavit of Negotiated Discipline and a Petition for Negotiated Discipline in which he stipulated to misconduct in three different cases and consented to a public censure. Respondent had failed to disclose either of these documents to the district court. The district court found that they were "admissions of three separate incidents of stipulated misconduct that were not clearly disclosed in [Respondent]'s Verified Petition."

20.   The district court denied the petition, but without prejudice. The district court then explained:

> Should Klayman wish to file a new Verified Petition with the Court, the following information should be included: (1) the case numbers for the cases before Judge William D. Keller and Judge Denny Chin that resulted in these judges precluding Klayman's practice before them; (2) verification of the review by the Bar Associations of the District of Columbia and Florida finding that Klayman did not act unethically before Judges Keller and Chin; (3) an updated Certificate of Good Standing from the Supreme Court of Florida; (4) the

App. 16

Florida Bar Association's reprimand verifying that there was no showing of dishonesty in connection with their disciplinary action; (5) the Exhibits attached to this Order [the Affidavit of Negotiated Disposition and Petition for Negotiated Discipline that Respondent signed and were filed in the D.C. disciplinary proceeding on June 23, 2004]; and (6) verification that the matter in the District of Columbia disciplinary case referenced in the Verified Petition has been resolved with no disciplinary action.

21.   On April 7, 2016, Respondent filed a "Supplement to and Renewed Verified Petition" for permission to practice in the court as counsel for Bundy in his criminal case.[2] Respondent provided evidence and explanations for items (1)-(5) of the district court's requirements as follows: (1) he provided the case names and citations for the actions involving Judges William D. Keller and Denny Chin; (2) he provided a letter from the D.C. Bar finding no ethical violation in the Keller and Chin matters, but said that the Florida Bar's files were no longer accessible; (3) he provided an updated letter of good standing from the Supreme Court of Florida; (4) he provided a copy of Florida's reprimand; and (5) he provided the exhibits attached to the district court's March 2016 order. As to the district court's sixth requirement, Respondent disputed the conclusion the

---

[2] The district court noted that, contrary to its order, Respondent did not file a new Verified Petition. Thus, it construed his Renewed Petition as a request for reconsideration of the original Verified Petition.

App. 17

district court drew from the documents it had identified. The court, he said, "appears to have misunderstood the nature and current posture of the disciplinary proceeding underway" in the District of Columbia.

> [T]he prior attempted negotiated discipline never entered into effect and Mr. Klayman never chose to pursue any further proposed negotiated discipline as he . . . did not violate any ethical provision of the District of Columbia Code of Professional Responsibility. Bar Counsel and Mr. Klayman had attempted to resolve the matter by agreement, but Mr. Klayman later thought the better of having signed the affidavit and agreeing to negotiated discipline it [sic] since he feels strongly that he acted ethically at all times.

With his supplement statement, Respondent provided a letter prepared by Professor Ronald Rotunda giving his "expert" opinion that "Respondent ha[d] not committed any offense that merits discipline." Respondent also attached his "post-hearing brief" to the Hearing Committee in the D.C. disciplinary matter, but did not describe the evidence offered at the hearing (although he did say it did not include his affidavit or prior admissions), and the brief itself did not explain the procedural posture of the D.C. disciplinary proceeding. Respondent did not include the brief Disciplinary Counsel had filed in the matter. Respondent repeated that he was "confident of ultimately prevailing . . . since the ultimate finding of the Committee which heard the evidence is simply a recommendation" that the Board and D.C. Court would review.

App. 18

22.   The district court treated Respondent's renewed filing as a request for reconsideration and denied it on April 19, 2016. The district court did not discuss the first five conditions imposed in its March 31 Order, but only the sixth – the D.C. disciplinary matter. The court noted that Respondent "admit[ted] that [the D.C. matter] is still pending," and thus there was "no error with its prior ruling." The court ordered that "Klayman's Verified Petition shall remain denied without prejudice until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor."

### The Bivens Action Against the Federal District Judge and Others

23.   On May 10, 2016, a few weeks after the district court denied Respondent's renewed request for *pro hac vice* admission, Bundy filed a Bivens action against Chief Judge Gloria Navarro (the district court judge that had denied Respondent's *pro hac vice* petition) and others including Senator Harry Reid and his son, and President Obama for allegedly conspiring against him. In the complaint, Bundy alleged, among other things, that the district court had denied Respondent *pro hac vice* admission for political reasons and she was biased and prejudiced.

24.   On May 20, 2016, Bundy filed a motion to disqualify Chief Judge Novarra [sic] based on the allegations in the Bivens lawsuit pending against her. The district court denied the motion.

25.   Respondent did not sign and was not listed as counsel on the Bivens complaint against the district court judge and others. Respondent, however, was listed as "of counsel" on subsequent pleadings filed on behalf of Bundy in the Bivens action, and his D.C. Bar number and D.C. office were provided in the caption of those pleadings.

26.   On October 12, 2016, the Bivens action was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A) based on the stipulation of all the parties. The parties dismissed the action approximately a week after the Ninth Circuit issued a briefing schedule in connection with Respondent's first petition for writ of mandamus.

### Respondent's Successive Petitions for Writ of Mandamus

27.   On July 6, 2016, Respondent filed an Emergency Petition for Writ of Mandamus with the Ninth Circuit. Respondent requested that the Ninth Circuit compel the district court to admit him *pro hac vice* and argued that Bundy's Sixth Amendment right to counsel would be violated if he were forced to go to trial without his attorney of choice.

28.   Chief Judge Navarro filed a response to the Ninth Circuit defending the district court's decision not to admit Respondent. The district court also offered additional evidence and grounds for its refusing to grant Respondent *pro hac vice* status, including: (1) Respondent had failed to accurately and truthfully describe the D.C. disciplinary proceedings and had failed

to disclose that a hearing committee had rejected the negotiated disposition because the sanction of public censure was unduly lenient; (2) Respondent failed to mention or disclose other court findings relevant to question five on the petition, and the district court listed eight cases in which the courts had revoked or denied Respondent *pro hac vice* status because of his "inappropriate and unethical behavior"; (3) Respondent had misrepresented the two cases in which two district court [sic] had banned him from their courtrooms and had failed to disclose that the trial court's decisions were affirmed on appeal, and the Second Circuit in affirming one of the decisions found that Respondent's challenge to a district court's impartiality was "insulting and smacked of intimidation"; and (4) that Respondent had been involved in the Bivens action that Bundy filed against President Obama, Senator Reid, and the district court judge who denied Respondent's *pro hac vice* admission, alleging they had conspired to violate his civil rights.

29.   On October 28, 2016, the Ninth Circuit denied Respondent's request for mandamus relief. The Ninth Circuit concluded:

> Klayman has made misrepresentations and omissions to the district court regarding the ethics proceedings before the District of Columbia Bar; he has shown a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process by suing the district judge personally. By any standard, the district court

App. 21

properly denied his petition to be admitted *pro hac vice*. Bundy is entitled to a fair trial, defended by competent, vigorous counsel of his choosing. But his right to such counsel does not extend to counsel from outside the district who has made it a pattern or practice of impeding the ethical and orderly administration of justice.[3]

30.   On November 10, 2016, Respondent filed an emergency petition with the Ninth Circuit requesting rehearing en banc. On December 13, 2016, the Ninth Circuit denied the petition for rehearing.

31.   On January 17, 2017, Respondent filed an emergency petition for writ of mandamus with the Supreme Court, which he supplemented twice. Respondent misrepresented that Bundy's trial would commence on February 6, 2017, when it was actually scheduled to begin 30 days after the completion of the February 6, 2016 trial of other defendants in the case. The Supreme Court denied the petition on February 27, 2017. *In re Bundy*, 137 S. Ct. 1213 (S. Ct. 2017).

32.   On March 9, 2017, Respondent filed a second emergency petition for writ of mandamus with the Ninth Circuit, raising many of the same arguments he had in his first petition and additional arguments that [sic] Ninth Circuit found had no merit or were false.

---

[3] Chief Judge Gould dissented based on his conclusion that Bundy's Sixth Amendment right to chosen counsel should have taken precedence over the issue of Respondent's candor.

App. 22

33.   The Ninth Circuit denied Respondent's second petition in a per curiam opinion on March 30, 2017. *In re Bundy*, 852 F.3d 945 (9th Cir. 2017). The Ninth Circuit found that Respondent's second petition was "procedurally irregular" and substantively had "no merit[ ]". The Ninth Circuit found that there was no credible evidence to support Respondent's claim that the district court had threatened Bret Whipple, Bundy's lawyer in the criminal case, with contempt, and that Respondent's claims about Whipple, including that he had little or no federal criminal defense experience, were "demonstrably false." The Ninth Circuit concluded that the documents Respondent filed "in support of the petition for a writ of mandamus – by themselves and without looking to our earlier decision's consideration of Klayman's record – entirely support the district court's decision [to deny him *pro hac vice* admission]. The petition and reply contain patently false allegations and lack the most basic of due diligence in fact checking." 852 F.3d at 953.[4]

34.   On April 3, 2017, Respondent filed an emergency petition for rehearing en banc. No judge requested a vote on whether to rehear the matter en banc, and the Ninth Circuit denied Respondent's request for an en banc rehearing on May 15, 2017.

35.   On May 18, 2017, Respondent filed a "Motion to Correct the Record Regarding False Allegations of Misstatements to this Court and the District Court"

---

[4] Chief Judge Gould dissented but for the reason he did in his dissent of the first petition.

and an accompanying brief. Respondent alleged that the district court and Judge Bybee of the Ninth Circuit (the judge who had written the decisions denying Respondent's first two mandamus petitions) had made false allegations against him and insisted he had not made any misrepresentations or omitted any information he was required to disclose. He alleged that "the 'issue' of [his] truthfulness only arose when the District Court was pressed for a reason why it had arbitrarily and capriciously denied [his] *pro hac vice* application by [the Ninth Circuit] and thereby fabricated this diversionary tactic to protect itself."

36. The Ninth Circuit denied Respondent's "Motion to Correct the Record" on May 23, 2017.

37. On June 14, 2017, Respondent filed a "Motion for a Separate Judicial Panel to Rule on Klayman's Motion to Correct Record." Respondent alleged that Judge Bybee should not be allowed "to rule on his own misconduct."

38. The Ninth Circuit denied the motion the next day, June 15, 2017.

39. Respondent again sought review by the Supreme Court, filing a petition for a writ of mandamus on July 21, 2017, and two supplemental briefs. The Supreme Court denied the petition for review on October 2, 2017 and denied Respondent's subsequent petition for rehearing on October 30, 2017.

40. While he was seeking review by the Supreme Court of the denial of his second mandamus petition,

Respondent filed a third emergency petition for writ of mandamus with the Ninth Circuit on October 2, 2017.

41. The Ninth Circuit denied the petition two days later on October 4, 2017.[5]

42. On October 6, 2017, Respondent filed under seal an emergency motion for a separate judicial panel with a "judicial council complaint." The Ninth Circuit denied the motion for a separate judicial panel that same day.

43. On December 20, 2017, Chief Judge Navarro declared mistrial in the criminal [sic] against Bundy, who continued to be represented by Whipple. On January 8, 2018, Chief Judge Navarro granted the motions of Bundy and other defendants to dismiss the charges against them with prejudice.

44. Several months before Chief Judge Nararro's rulings of December 20, 2017, the Hearing Committee issued its report in Respondent's disciplinary matter finding that he had violated Rule 1.9 in three matters and Rule 8.4(d) in one of those matters, and recommending he be suspended for 90 days with a fitness requirement.

45. On February 6, 2018, the Board on Professional Responsibility issued its report and recommendation in the disciplinary matter against Respondent. The Board accepted the Committee's findings of fact, agreed that Respondent had violated Rule 1.9 in

---

[5] As he had had [sic] before, Chief Judge Gould dissented, saying he would grant the petition to give Bundy his lawyer of choice.

three matters, but disagreed that he violated Rule 8.4(d), although saying it was a "close question." The Board also recommended a 90-day suspension, but without a fitness requirement.

46.   On February 6, 2018, the same day the Board issued its report, Respondent filed his fourth petition for writ of mandamus with the Ninth Circuit, which he amended on February 7, 2018. Respondent contended that the Ninth Circuit's and district court's previous orders should be vacated because they were now moot based on the dismissal of the underlying criminal matter against Bundy. Respondent also contended that "Judge Bybee's order" must be vacated because of Judge Bybee's alleged bias. According to Respondent, Judge Bybee's decision to rule against Respondent "can only be explained by the appearance of Judge Bybee's extrajudicial bias and prejudice stemming from his personal relationships, friendships, and associations with Judge Navarro and Sen. Reid, . . . " Respondent requested that Judge Bybee not be included in the judicial panel ruling on his fourth petition.

47.   In support of his claim that Judge Bybee had extrajudicial bias, Respondent made a number of assertions that had no basis and were frivolous, that included but were not limited to:

(a)   Judge Bybee demonstrated his bias and reacted to his friendship and personal relationship with the District Court Judge and Sen. Reid, by asking Respondent questions about the Bivens action filed against the District Court Judge, Sen. Reid, and

App. 26

President Obama during the oral argument in the first mandamus petition (the questions Respondent attributed to Judge Bybee were asked by another Judge on the Panel);

(b)   Judge Bybee assumed in his questions (which were actually asked by another judge) that Respondent had something to do with the Bivens action (Respondent had initially said that he was a plaintiff in the Bivens action before clarifying he was not a party, although he was involved in the action as he was listed "of counsel" in numerous pleadings filed on behalf of Bundy);

(c)   Judge Bybee and Judge Navarro "are close friends and associates" by virtue of the fact that Judge Bybee was a "founding faculty member" of UNLV's law school, and Judge Navarro received her undergraduate degree from UNLV;

(d)   Judge Bybee had a "longstanding relationship, friendship and association" with Sen. Reid as evidenced by Sen. Reid's statements about Judge Bybee in 2003 in connection with his nomination to the Ninth Circuit in 2003, and Judge Bybee was "return[ing] the favor" by denying Respondent's *pro hac vice* application; and

(e)   Judge Bybee and Sen. Reid had a "social and familiar relationship" because Judge Bybee's wife Shannon and Sen. Reid were both inducted within one year of one another as members of the same UNLV organization (Shannon Bybee, a male, was never married to Judge Bybee, and died in 2003).

App. 27

48. Respondent further alleged that "[t]he fact remains, however, that Mr. Klayman has never once been found to have acted unethically by any bar association who reviewed his conduct before a judge." When Respondent made this statement, he knew that the Hearing Committee had found by clear and convincing evidence that he had violated Rule 1.9 in three matters, and Rule 8.4(d) in one of those matters.

49. Respondent also alleged that Judge Gould "clearly and unequivocally found that [Respondent] had fulfilled his obligation of candor and truthfully answered all the questions presented to him . . . " Respondent then quoted a statement by Judge Gould in his initial dissent, but omitted the Judge's concluding sentence in the quoted paragraph which read: "Yet, for [Respondent] to tell the district court that it was wrong about the negotiated discipline being in effect and to not also tell the court why the disposition lacked effect – its rejection by the bar committee – may have been a relevant omission."

50. On February 13, 2018, the Ninth Circuit denied Respondent's request that Judge Bybee be recused from the matter.

51. On April 24, 2018, the Ninth Circuit denied Respondent's fourth writ of mandamus.[6]

---

[6] Judge Gould dissented. He said he did not share Respondent's view that there had been any bias against him by any member of the panel, but found "these proceedings have become overblown." Judge Gould reiterated his belief that the initial denial of Respondent's *pro hac vice* admission was wrong.

App. 28

52.   Respondent's conduct violated the following D.C. Rules of Professional Conduct and/or the Nevada Rules of Professional Conduct, and/or Rule 46(c) of the Federal Rules of Appellate Procedure for the United States Court of Appeals for the Ninth Circuit,[7] as made applicable by D.C. Rule 8.5(b)(1) – all of which prohibit the same misconduct:

a.   Rule 3.1, in that Respondent asserted or controverted an issue when there was no basis in law and fact for doing so that was not frivolous;

b.   Rule 3.3(a), in that Respondent knowingly made a false statement of fact to a tribunal or failed to correct a false statement of material fact previously made to the tribunal;

c.   Rule 8.1(a), in that in his application and supplemental application for admission to the district court, Respondent knowingly made false statements of fact or material fact;

d.   Rule 8.4(c), in that Respondent engaged in conduct involving dishonesty, deceit, and misrepresentation; and

---

[7] FRAP 46(c) provides that "[a] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." In determining what constitutes "conduct unbecoming" a lawyer, the Ninth Circuit has looked to the ABA Model Rules and the state rules where the lawyer maintains his practice. *See, e.g.*, Rodriquez v. Robbins, 797 F.3d 758, 759 (9th Cir. 2015); *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010)

App. 29

e.  Rule 8.4(d), in that Respondent engaged in conduct seriously interfering with or prejudicial to the administration of justice.

Respectfully submitted,

_____
Hamilton P. Fox, III
Disciplinary Counsel

_____
Julia Porter
Senior Assistant Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

_____

## **VERIFICATION**

I do affirm that I verily believe the facts stated in the Specification of Charges to be true.

_____
Julia Porter
Senior Assistant Disciplinary Counsel

Subscribed and affirmed before me in the District of Columbia this ___ day of July 2018.

My Commission Expires:

_____   _____
                                       Notary Public

_____