IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| DR. JEROME CORSI, et. al.<br><br>        Plaintiff(s),<br><br>v.<br><br>INFOWARS, LLC et. al.,<br><br>        Defendant(s) | Case No.: 1:20-cv-00298-LY |

## **DEFENDANT ROGER STONE'S MOTION TO DISMISS**

Defendant, Roger Stone, through counsel files this motion to dismiss the amended complaint, ECF No. [47], pursuant to Federal Rule of Civil Procedure 12(b)(1) & (b)(6). Defendant Stone adopts the arguments made by co-defendants' motions to dismiss, to the extent they also apply to him.

### I.    **Background**

This case originated in the District of the District of Columbia. *Corsi v. InfoWars, LLC*, 1:19-cv-00656-ESH (D.D.C. Mar. 7, 2019). A month later, in the Southern District of Florida, Plaintiffs filed an identical suit. *See Klayman v. Infowars*, Case No. 20-cv-80614 (S.D. Fla. Apr. 8, 2020). The district court in Florida, in the strongest of terms, instructed Plaintiffs to amend their complaint to comply with Federal Rules of Civil Procedure 8(b) and 10(b). *Id.* ECF No. [57-2] (Order more definite statement and to show cause). Plaintiffs not only "shotgunned" the pleadings, it "shotgunned" this complaint all over the country – Southern District of Florida, District of the District of Columbia, and now, the Western District of Texas. Plaintiffs voluntarily dismissed their lawsuit in Florida and proceeded with the second suit filed in the

District of Columbia. It is only in this District did Plaintiffs sue Stone as a defendant regarding the claims made about conspiring with InfoWars defendants in federal court.

Plaintiffs have sued Roger Stone either separately or together, in state and federal courts, no less than seven times since 2019. Two were dismissed in the District of Columbia.[1] One was dismissed in Circuit Court in Palm Beach County, Florida,[2] one is pending in Palm Beach County;[3] another defamation case is pending in Circuit Court in Broward County, Florida.[4] Stone was served with three new lawsuits on the same day – this suit in this District, and the other two in Circuit Court in Broward County, asserting the same allegations.[5]

The crux of this lawsuit is allegedly defamatory statements made by Roger Stone and other defendants on a radio show that is broadcast from this jurisdiction. According to Plaintiffs, Defendants made and ratified these statements because they were "working in concert with Stone to defame, intimidate, and threaten Plaintiffs," to influence the outcome of Stone's then pending criminal trial in the District of Columbia. Am. Compl. ¶¶ 22–28, 38, 40; *see* ECF No. [10 pg. 5–6]. Plaintiffs contend that Corsi, a former associate of Stone, was "Person 1" described in Stone's indictment, and Corsi anticipated he might be called as a witness at Stone's trial. Am. Compl. ¶¶ 25, 28, 30. Corsi was not called as a witness in *United States v. Stone* probably because the government must have believed he was too unreliable to present him to a jury. *See Mueller report*, Exhibit – 1.

Plaintiffs allege that Stone intended his defamation campaign to diminish Corsi's value as a potential witness by besmirching Corsi's credibility and that of his attorney Klayman,

---

[1] *Corsi v. Stone*, Case No. 1:19-cv-00324, filed in the United States District Court for the District of Columbia (dismissed). *Corsi v. Caputo,* Case No. 1:19-cv-01573-TJK (D.D.C.) (dismissed).
[2] *Corsi v. Stone,* Case No. 50-2019-CA-013711-XXXX-MB (15th Jud. Cir., Fla. 2019) (Newsmax, & Fairbanks).
[3] *Klayman v. Stone,* Case No. 50-2019-CA-015104-XXXX-MB (15th Jud. Cir., Fla. 2019).
[4] *Klayman v. Stone,* Case No. CACE 19-002672 (17th Jud. Cir., Fla. 2019).
[5] *Klayman v. Infowars,* Stone, Case No. CACE-20-007120 (17th Jud. Cir., Fla. filed Apr. 28, 2020) and *Corsi v. InfoWars, LLC & Stone,* CACE 20-004473 (17th Jud. Cir., Fla. filed Mar. 11, 2020).

deflecting blame for Stone's own acts onto Corsi, and coercing Corsi to testify falsely if called as a witness. *Id.* ¶¶ 5, 28, 30–31. Corsi never testified at trial, and based upon Corsi's support of Stone before and after the trial, Stone wonders if Corsi's heart even stands behind this lawsuit, without Klayman supporting him. *See* Exhibit – 2. Plaintiffs also allege that Stone caused potential donors to contribute to Stone's legal defense fund rather than Corsi's because of the defamation. *Id.* ¶¶ 28, 30. According to Plaintiffs, Defendants conspired with Stone and acted as his surrogates to help him achieve these goals. *Id.* ¶¶ 9, 28, 31–33, 37, 47. Finally, Plaintiffs also allege that because Defendants are "conservative media personalities," who compete in the same market as Plaintiffs, their actions constitute unfair competition in violation of the Lanham Act. *Id.* ¶¶ 71–75, 105.[6] Plaintiffs have filed suit under the "surrogate" theory before, not only against Roger Stone but other targets. *See supra* n.1 & 2. But the suit is meritless and should be dismissed

Stone's response in sum, is: 1) this case is in Texas – Plaintiffs failed to give written notice to correct under the Texas Defamation Mitigation Act; 2) the statute of limitations for defamation and related causes of action, is one-year, and it has expired; 3) Stone's comments were true, opinion, or a satirical swipe at plaintiffs; 4) plaintiffs do not have Article III standing or prudential standing to sue under the Lanham Act because it applies to commercial speech in deceptive advertising only, not defendants' political speech; and, 5) plaintiffs' common law assault and emotional distress claims are meritless since no parties were alleged to be in Texas when these torts occurred.

This Court has the benefit of review of this lawsuit by two other district courts. *Corsi v. InfoWars, LLC,* 2020 WL 1156864 (D.D.C. 2020) (slip op.) (Kelly, J.,) and *Corsi v. InfoWars,*

---

[6] The District Court outlines the allegations of this lawsuit at *Corsi v. InfoWars, LLC*, 2020 WL 1156864, at *2 (D.D.C. Mar. 10, 2020).

*LLC,* 9:20-cv-80614 (S.D. Fla. 2020) (Altman, J.,), ECF No. [57-2]. Judge Kelly transferred this case rather than dismiss it, to avoid the prejudice of the one-year statute of limitations on existing defendants, not Roger Stone; and, Judge Altman ordered, without pleadings from the defense, plaintiffs to remove all references to "irrelevant, conclusory, and scandalous material," and allege standing as to their sole basis for federal question jurisdiction – the Lanham Act. They did not.

## II.     Plaintiffs Lack Standing on Lanham Act claim (Rule 12(b)(1))

### A.  Plaintiffs Lack Article III Standing

District Judge Altman, when he had jurisdiction over the case, issued a show cause order to Plaintiffs to demonstrate that they had standing to sue defendants under the Lanham Act. *Klayman v. Infowars,* Case No. 20-cv-80614 (S.D. Fla. Apr. 8, 2020), ECF No. [57-2]. Plaintiffs did not amend to demonstrate that they have standing to sue under the Lanham Act.

Article III standing concerns subject matter jurisdiction. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 560; *Ford,* 301 F.3d at 332. Plaintiffs cannot sustain this action because they allege no cognizable injury that can be fairly traced to Roger Stone's alleged actions, and thus fail to clear a fundamental constitutional threshold necessary to pursue their claims in federal court. Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. Central to that requirement is that a litigant has standing. This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693 (2013). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the

challenged action of the defendant, and not … th[e] result [of] the independent action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citation omitted). "Identifying the interests protected by the Lanham Act, however, requires no guesswork, since the Act includes an 'unusual, and extraordinarily helpful,' detailed statement of the statute's purposes." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (citation omitted).

Section 45 of the Act, codified at 15 U.S.C. § 1127, provides:

> The intent of this chapter is to *regulate commerce* within the control of Congress by making actionable the *deceptive and misleading use of marks in such commerce*; *to protect registered marks used in such commerce* from interference by State, or territorial legislation; *to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks*; and to provide rights and remedies stipulated by treaties and conventions respecting *trademarks, trade names, and unfair competition* entered into between the United States and foreign nations."

(emphasis added).

Plaintiffs must allege their injuries are proximately caused by violations of the statute. *Lexmark Intern., Inc.,* 572 U.S. at 131. "Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged as a sufficiently close connection to the conduct the statute prohibits." *Id.* Did the alleged statements divert or affect sales of goods or services? The Supreme Court held that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the *defendant's advertising*; and that that occurs when deception of consumers causes them to *withhold trade from the plaintiff*." *Id.* at 133-34. (emphasis added).

In the case at bar, Plaintiffs do not sufficiently allege that they are in competition with the other defendants. As both Plaintiffs were previously instructed by the District of Columbia Circuit: "The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act. To the contrary, it reinforces [defendant's] position that its blog post was *political speech* aimed at *critiquing* Farah's and Corsi's position . . . . As our sister circuits have emphasized, trademark rights cannot be used 'to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) (citations omitted) (emphasis added). "To invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark "in connection with any goods or services." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051–52 (10th Cir. 2008). "The Lanham Act is intended to protect the ability of consumers to distinguish among competing producers. *Id.* at 1053 (citations omitted).

Neither Plaintiffs Corsi nor Klayman allege injury in commerce by deceptive or misleading use of marks, or trade names. Speech among warring political speakers is political speech. The Lanham Act is not meant to protect the reputation of a speaker. It is meant to protect marks in connection producers of goods and services. *See id.* Not all defamation claims are Lanham Act claims. Klayman is not a member of the Texas Bar. None of the defendants is a lawyer. All of Corsi's books are political speech. Am. Compl. ¶ 3. Failure to allege how the parties are in competition with each other as it relates to a good or service, fails as a matter of standing. *See Logan v. Burgers Ozark Country Cured Hams Inc.,* 263 F.3d 447, 460 (5th Cir. 2001). Plaintiffs are confusing false statements that would cause injury to Plaintiffs' goods, with what they alleged, which is statements made by Defendants on an InfoWars show, which

advertises to support the radio show. *See* Am. Compl. ¶ 73. False advertising about a competitors' goods or service is a potential Lanham violation. It is the advertisements that must be deceptive. *Ford,* 301 F.3d at 333. And the issue must concern goods and services. *See Logan*, 263 F.3d at 460.

As to Stone, the motive alleged was to intimidate Corsi from testifying against Stone in a criminal case in the District of the District of Columbia. Am. Compl. ¶¶ 15, 16, 22, 25, 27, 30. Corsi never testified, nor did he allege that was the reason he did not testify. Plaintiffs do not allege why Corsi or Klayman would need a defense fund, or they are in the business of maintaining one. Because Plaintiffs failed to prove Stone caused them commercial injuries through false advertising, under the Lanham Act, they have no Article III standing.

### B. Plaintiffs Lack Prudential Standing

In determining whether a plaintiff has prudential Lanham Act standing, this Circuit has adopted the test articulated by the Third Circuit in *Conte Bros. Auto., Inc. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 233–34 (3d Cir.1998). *Ford,* 301 F.3d at 337; *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539, 562–63 (5th Cir.2001). Under this test, five factors are relevant to the prudential standing analysis: "(1) the nature of the plaintiff's alleged injury ... (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages." *Id.* at 563. "Although technically distinct, these five factors can be distilled into an essential inquiry, i.e., whether, in light of the competitive relationship between the parties, there is a sufficiently direct link between the asserted injury and the alleged false advertising." *Id.* at 562 n. 51 (citing Restatement (Third) of Unfair Competition § 3 cmt. f (1995)).

7

The nature of the alleged injury is reputational injury and loss of money for an alleged defense fund for Corsi. Klayman unclearly attempts to tie himself into that injury as well. Plaintiffs do not explain or allege with any specificity, outside of a mere conclusion that because Stone had a defense fund, he must have received the funds that would have otherwise been delivered to Corsi. Under this analysis Plaintiffs do not sufficiently allege they are in competition with Stone. Stone is not a lawyer and is not in the business of selling a good or services in the context of the Lanham Act. Nor did Stone advertise on InfoWars; and, no advertisement fraudulently injured Plaintiffs' mark or brand.

While the InfoWars defendants are alleged to promote and sell various goods, medicine, and "tchotchkes," Plaintiffs do not. *Compare* Am. Compl. ¶¶ 15, 16 *with* ¶¶ 71, 73. The closest Plaintiffs come to "services" is referring to the term in paragraph 73. Acting as a lawyer is not a good or service contemplated by the statute and certainly the InfoWars Defendants are not competing as a lawyer with Klayman. The amended complaint does not allege Corsi or Klayman sell goods; nor, do they specify the service Defendants compete against or disparage. If it is speech on the airwaves, then that would be political speech entitled to the highest level of protection under the First Amendment and not contemplated by the Lanham Act. *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014). *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n. 6 (5th Cir. 1996) (citations omitted). "The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act. To the contrary, it reinforces *Esquire* 's position that its blog post was political speech aimed at critiquing Farah's and Corsi's position on the birth certificate question. As our sister circuits have emphasized, 'trademark rights cannot be used to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" *Farah v. Esquire Magazine*, 736 F.3d 528,

8

541 (D.C. Cir. 2013) (Klayman case). Because Plaintiffs fail to also meet the prudential standing standard under the Lanham Act, the cause of action must be dismissed.

### III.  No Federal Jurisdiction if the Lanham Act cause of action is dismissed

Plaintiffs alleged federal question jurisdiction through the Lanham Act only. *See* Am. Compl. ¶ 1. They did not allege diversity jurisdiction. If the sole federal cause of action has been dismissed, then the Court may dismiss the remaining state law claims on grounds found in the common law factors of judicial economy, convenience, fairness, and comity; or the factors under 28 U.S.C §1367(c) (novel, complex issue of state law; claim predominates over federal claim; original jurisdiction claim dismissed; other exceptional circumstances). *See also Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988); *Baker v. DeShong*, 90 F. Supp. 3d 659, 665 (N.D. Tex. 2014), *aff'd sub nom. Office of Med. & Sci. Justice, Inc. v. DeShong,* 596 Fed. Appx. 328 (5th Cir. 2015) (Lanham case). If the Lanham Act is dismissed, the Court should dismiss this case in its entirety.

### IV.  Plaintiff Fails State a Claim upon which Relief can be Granted (Rule 12(b)(6)).

#### A. Standard of Review

Until the Supreme Court' decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, since *Twombly*, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

9

does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 796 (5th Cir. 2011).

Next, the court must determine whether the well-pled factual allegations, if assumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 662. When the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 663. A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The court is not "'bound to accept as true a legal conclusion couched as a factual allegation,' or to 'accept inferences drawn by plaintiff if such interferences are unsupported by the facts set out in the complaint.'" *Trudeau v. Federal Trade Com'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Applying the *Iqbal Twombly* standard in this case, it is abundantly clear that Plaintiffs' allegations of defamation, defamation *per se*, defamation by implication, intentional infliction of emotional distress, assault, and Lanham Act, fall short in crossing the line from "conceivable" to the "plausible" as they allege unfounded and conclusory claims unsupported by facts.

*First,* all causes of action that are not filed within the statute of limitations should be dismissed. Statutes of limitations defenses can be considered on a motion to dismiss. *Cuba v. Pylant*, 814 F.3d 701, 714 (5th Cir. 2016). *Second,* the amended complaint is riddled with outlandish and groundless accusations against Stone. *See* ECF No. [57-2] (Order), *Cosi v. InfoWars, LLC,* 9:20-cv-80614 (S.D. Fla. Apr. 13, 2020) (Altman, J.,). One of the most implausible claims against Stone (presumably to support his common law causes of action) is that his alleged conduct was purposefully and strategically orchestrated to give Plaintiff Corsi "heart attacks and strokes." *See* Am. Compl., ¶ 10. This outrageous claim has not been supported by any plausible allegations made in Plaintiff's Complaint, nor has Plaintiff Corsi described a single instance that would lend support to this claim. The District Court in the Southern District of Florida dismissed the case without response from defendants after a voluntary dismissal by Plaintiffs. No doubt, Plaintiffs read Judge Altman's Order and decided to shop elsewhere. As discussed below, the allegations are implausible because they do not provide any legitimate basis of the claims asserted; they rely on an overarching assumption of a conspiracy not set forth in a cause of action, and misconstrue statements made about non-party individuals (some of them fictional) as the basis of threats made to Corsi. *See* ECF No. [57-2] (Order), *Cosi v. InfoWars, LLC,* 9:20-cv-80614 (S.D. Fla. Apr. 13, 2020) (citing ¶ 27, Am. Compl.)).

### B. Plaintiffs' failed to file written corrective notice under TDMA

The Texas Defamation Mitigation Act ("TDMA") provides that ""[a] person may maintain a cause of action for defamation only if . . . the person has made a timely and sufficient request for correction, clarification, or retraction from the defendant." *Tubbs v. Nicol*, 675 F. App'x 437 439 (5th Cir. 2017) (citing Tex Civ. Prac. & Rem. Code § 73.055(a)). "If a plaintiff

11

does not make such a request before the statute of limitations expires, she may not state a claim for defamation." *Id.* (citing *id.* § 73.055(b)).[7]

Plaintiffs did not allege they provided or provide any written notice at all, pursuant to the TDMA. By the time plaintiffs came to add Stone as a party in Texas, the statute of limitations had expired. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007). The statute of limitations for defamation claims is one-year. Tex. Civ. Prac. & Rem. Code § 16.002(a). *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019). Plaintiffs allege four dates when the defamatory statements occurred: October 26, 2018, January 17, 2019, January 18, 2019, and January 21, 2019. Am. Compl. ¶¶ 41, 47-69. Plaintiffs' complaint was filed to include Stone as a defendant on July 29, 2020. *See* ECF No. [47]. The one-year statute of limitation has expired. Since plaintiffs failed to provide notice within the one-year statute of limitations, and the notice cannot be served now, this case must be dismissed with prejudice as to Roger Stone for failing to comply with the TDMA. *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1018 (S.D. Tex. 2018), appeal dismissed *sub nom. Tu Nguyen v. Radio Free Asia*, 18-20529, 2018 WL 7142200 (5th Cir. Oct. 5, 2018).

### C. Statute of limitations

#### 1. Plaintiffs' defamation related causes of action must be dismissed because they failed to file suit within the statute of limitations

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (citing *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014)); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule

---

[7] Plaintiffs allege they have demanded a retraction and correction of the defamatory videos and publications, the subject of this complaint, but that notice is not attached and Roger Stone never received one. *See* Am. Compl. ¶ 38.

12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like"). The limitations period is evident from amended complaint. *See Nationwide Bi-Weekly Admin., Inc.,* 512 F.3d at 141. As stated above, the statute of limitations is one-year. Tex. Civ. Prac. & Rem. Code § 16.002(a). *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 741-42 (5th Cir. 2019); *Cuba v. Pylant,* 814 F.3d 701, 714 (5th Cir. 2016). The statute of limitation may apply to other causes of actions for which "the gravamen of the complaint is injury to a plaintiff's reputation because of allegedly defamatory statements." *Walker,* 938 F.3d at 742 (citations omitted).

In this case, Plaintiffs filed an amended complaint adding Roger Stone as a defendant for the first time, over seven-months after the one-year statute of limitations for defamation claims expired. *See id.* Plaintiffs identified and made allegations against Stone in the lawsuit filed in the Southern District of Florida. ECF No. [57-2] ("Klayman asserts five causes of actions against five Defendants. Somewhat surprisingly—given the allegations—none of the Defendants is named Roger Stone"). Plaintiffs' amended complaint cannot relate back to the original pleading date of the original District of the District of Columbia complaint because the complaint was beyond the statute of limitations when originally filed and Stone was known to Plaintiffs as a tortfeasor at the time of filing. *See Jacobsen v. Osborne,* 133 F.2d 315, 321 (5th Cir. 1998). The dates alleged are based upon publications of the alleged defamatory material that plaintiffs have made part of the record. *See Walker,* 938 F.3d at 734 (citing *Taylor v. City of Shreveport,* 798 F.3d 276, 279 (5th Cir. 2015). Am. Compl. ¶¶ 41, 47-69. Because Stone was added as a defendant after the one-year statute of limitations for defamation causes of action expired, and because the relation-back doctrine does not apply, all the defamation causes of action (counts I-III) must be dismissed with prejudice.

### 2. **Plaintiffs' Lanham Act cause of action must be dismissed**

#### a. **Statute of Limitations**

The Lanham Act does not have a specific statute of limitations. *Occidental Life Ins. Co. of Cal. v. EEOC,* 432 U.S. 355, 367, 97 S. Ct. 2447, 53 L.Ed.2d 402 (1977), *superseded by statute on other grounds,* 29 C.F.R. § 1601.28 (1995). The first step is to determine the applicable statute of limitations. The courts have typically applied state statutes of limitations to claims under Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a). *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 804–05 (S.D. Tex. 1996) (citing 1A Jerome Gilson & Jeffrey M. Samuels, *Trademark Protection and Practice* § 8.12[16], at 8–326.1 (1995)).

To the extent that the Lanham Act can be supported by defamatory statements made against individuals, the one-year statute of limitations in Texas should apply. Plaintiffs theory is limited to Defendants' "false and misleading statements" that were intended to "influence supporters' decisions to provide financial support," or purchase "goods and services," (although those goods and services are not specified).  *See* Am. Compl. ¶¶ 105-09. Words are the mechanism for Plaintiffs Lanham Act claim. Because the claim is based upon alleged defamatory words, the Court should consider the statute of limitations relating to defamation, the basis for the Lanham claim.  *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 147 (5th Cir. 2007) (". . . Texas courts have applied a one-year statute of limitations to business disparagement claims when the gravamen of the complaint is defamatory injury to the plaintiff's reputation. . ."). Plaintiffs have not sought injunctive relief to stop ongoing defamation, disparagement, or misrepresentation of their goods or services. *See Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813 (7th Cir.1999) (most Lanham Act claims involve continuing wrongs). Yet in one instance, Plaintiffs allege that they have suffered damages "which are ongoing." Am. Compl.

¶ 109. Nowhere else is it alleged other than the dates outside the statute of limitations for defamation that there is some ongoing scheme to violate the Lanham Act.

The dearth of cases about the statute of limitations based upon defamatory statements violating the Lanham Act can be explained by reason that defamation, as Plaintiffs claim it, are not Lanham violations. *See Enigma Software Group USA, LLC v. Bleeping Computer LLC,* 194 F. Supp. 3d 263, 280 (S.D.N.Y. 2016). *Willis Elec. Co., Ltd. v. Polygroup Macau Ltd. (BVI),* 437 F. Supp. 3d 693, 706 (D. Minn. 2020) (deceptive advertising claims). There is typically an element of fraud involved or dilution of a trademark. *See id.* Defaming someone to the point of misleading statements about goods and services that do not relate to a company's actual product or service does not exist in this case. Since the basis of the Lanham Act violation alleged is defamation of people, not goods and services, the Texas statute of limitations on defamation of one-year should apply. One year has expired, and therefore the Lanham Act claim must fall as well for failing to file their claim against Stone within the statute of limitations period. *See Nationwide Bi-Weekly Admin., Inc.*, 512 F.3d at 147.

### b. Laches bars Plaintiffs Lanham Act claim

Laches bars the claim here as well. Plaintiffs can recover damages pursuant to the Lanham Act "subject to the principles of equity." 15 U.S.C. § 1117(a). "[L]aches penalizes inexcusable dilatory behavior." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). Plaintiffs did file defamation claims against Roger Stone after the one-year statute of limitations. Additionally, Plaintiffs filed this lawsuit in two separate district courts and did not sue Stone in either. *See Corsi v. InfoWars, LLC,* 2020 WL 1156864 (D.D.C. 2020) (slip op.) (Kelly J.,) and *Cosi v. InfoWars, LLC,* 9:20-cv-80614 (S.D. Fla. 2020) (Altman, J.,). As previously mentioned, Plaintiffs also filed identical state court cases in Florida. *Supra,* n. 5.

Plaintiffs are making this up as they go along, and it should be considered vexatious litigation only designed to harass. *See also*, ECF No. [55 at 15-16]. The equities, therefore, do not balance in their favor.

Plaintiffs' claims in this Court were a product of unreasonable delay. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). Plaintiffs' multiple suits and attempts in other district courts without filing their claims against Stone, while making him the center piece of the lawsuit, demonstrates deliberateness – Plaintiffs deliberately did not file suit against Roger Stone until the amended complaint filed on July 29, 2020. ECF No. [47].

The next step in the analysis is prejudice to Roger Stone. *See Hot Wax, Inc.,* 191 F.3d at 824. The prejudice to Stone is he is compelled to again litigate a case in a place where he did not commit any of the torts. The lawsuit does not allege that Stone was in Texas during the interviews broadcast on InfoWars. He also did not threaten or cause distress (even if those claims can be made out) in Texas because Plaintiffs were also not in Texas.

A party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances. The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice. *See Hot Wax, Inc.*, 191 F.3d at 825 (citing *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"). Stone is not accused of fraud. There is no claim by Plaintiffs in equity. Therefore, Stone has clean hands to assert this equitable defense of laches. Plaintiffs should be precluded from asserting a Lanham claim beyond a one-year limitations period.

### D. Common law claims must be dismissed

#### 1. Defamation causes of action (counts I-III)

A claim for defamation under Texas law has three elements: The defendant (1) published a statement; (2) that was defamatory concerning the defendant; (3) while acting with actual malice (if the plaintiff was a public official or figure) or with negligence (if the plaintiff was a private individual) regarding the truth of the statement. *Cuba v. Pylant*, 814 F.3d 701, 713–14 (5th Cir. 2016) (citing *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998)). Both Plaintiffs fail to meet the elements as a matter of law. "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 53–54 (1988) (citations omitted).

At the outset, the amended complaint is a shotgun pleading. *See Klayman v. Infowars,* Case No. 20-cv-80614 (S.D. Fla. Apr. 8, 2020) ECF No. [57-2] (complaint is "littered with ostentatious irrelevancy"). Second, Stone is a commentator and receives the protection of the First Amendment. *See Hustler Magazine, Inc.,* 485 U.S. at 53-54. Plaintiffs claim that Defendants acted in concert, so all statements are attributed to all defendants and all speakers were surrogates of Stone. Am. Compl. ¶¶ 12, 13, 20, 36, 81. It was, however, Alex Jones's show and Stone does not have an ownership interest in InfoWars, but Plaintiffs allege, nonetheless, Jones was acting "in concert" with and at the direction of Stone, as if Jones was employed by Stone, or Stone had some other type of legal relationship where Stone could exercise control over Jones and Jones's employees. *See* Am. Compl. ¶ 41. It is unclear which Defendant is alleged to have said what, and what Plaintiffs claim was defamatory.

Private individuals become limited-purpose public figures when they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974). Corsi wrote a book[8] about his experience being under investigation by and sued Robert Mueller and the Special Counsel's Office. *Corsi v. Mueller*, 422 F. Supp. 3d 51, 57 (D.D.C. 2019), aff'd, 19-5314, 2020 WL 5360991 (D.C. Cir. Sept. 2, 2020). Klayman was Corsi's lawyer in that suit. *See id.* Both Plaintiffs also allege what amounts to being public figures in this suit. *See* Am. Compl. ¶¶ 3 & 4. *See also* ECF No. [59 at 9-10]. Since both Plaintiffs are public figures, the malice standard must be applied to their allegations in this suit. *See Gertz*, 418 U.S. at 345.

Actual malice is a heavy burden. *Peter Scalamandre & Sons, Inc. v. Kaufman,* 113 F.3d 556, 561 (5th Cir. 1997); *Garrison v. Louisiana,* 379 U.S. 64, 73 (1964). As long a defendant does not knowingly make statements that are false or with reckless disregard for the truth, actual malice is not present. *Id.* The Supreme Court has noted "'imaginative expression' and 'rhetorical hyperbole' are not actionable in defamation because 'they cannot reasonably be interpreted as stating actual facts about an individual.'" *Ford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596-7 (D.C. 2000), (quoting *Milkovich v. Lorain Journal Co.*, 491 U.S. 1, 2 (1990)). "Satire is particularly relevant to political debate because it tears down facades, deflates stuffed shirts, and unmasks hypocrisy. By cutting through the constraints imposed by pomp and ceremony, it is a form of irreverence as welcome as fresh air." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 151 (Tex. 2004) (quoting *Falwell v. Flynt,* 805 F.2d 484, 487 (4th Cir.1986) (Wilkinson, J., dissenting), *rev'd sub nom. Hustler Magazine v. Falwell,* 485 U.S. 46 (1988)).

---

[8] Jerome R. Corsi, Ph.D., <u>Silent No More: How I Became a Political Prisoner of Mueller's "Witch Hunt,"</u> (2019), available at <u>https://www.simonandschuster.com/books/Silent-No-More/Jerome-R-Corsi/9781642932171.</u>

18

In addition to Plaintiff Corsi claiming he was being harassed by the Special Counsel, he also claimed he was going to be indicted for perjury for lying to the Special Counsel.[9] Comments about what those lies might be is fair comment. But the entire underlying basis of this lawsuit, as far as we can tell, specific to Stone, is that Stone defamed Corsi and Klayman because Corsi was going to tell the truth to the Special Counsel. Corsi claims to have been near indictment for lying, the Mueller reports concluded he lied, and Corsi's lawsuit against Mueller and others contradict the alleged cause of Corsi's damages in this lawsuit. *Mueller*, 422 F. Supp. 3d at 59 (Bezos destroyed Corsi's relationship with InfoWars).

As to the claim that Klayman never won a courtroom victory in his life, this is exaggeration and hyperbole. Am. Compl. ¶ 55. Interestingly, Klayman cites to a verdict in the Southern District of Florida against Judicial Watch, his former employer, as an attempt to disprove he was ousted from that organization. *See* Am. Compl. ¶ 58. Yet, Klayman did not advise this Court of the $2.3 million verdict on a counterclaim against him and in favor of Judicial Watch in the District of the District of Columbia in 2018 for Lanham Act violations and unfair competition. *See* Exhibit – 3.

Claims that Klayman is not a good lawyer is exaggeration to bolster the opinion Stone does not think Klayman is a good lawyer. Am. Compl. ¶ 21. Corsi could not be sentenced to the "electric chair" because Corsi was not charged with a death qualified crime and states no longer use the electric chair. *See generally Coker v. Georgia,* 433 U.S. 584, 592 (1977) (death penalty

---

[9] Rosalind S. Helderman, Manuel Roig-Franzia, and Carol D. Lenning, *Conservative author and Stone associate Jerome Corsi said he expects to be indicted by special counsel for allegedly lying*, The Washington Post (Nov. 12, 2018), https://www.washingtonpost.com/politics/conservative-author-and-stone-associate-jerome-corsi- said-special-prosecutors-plan-to-indict-him-for-allegedly-lying/2018/11/12/773e6722-e6c7-11e8-a939- 9469f1166f9d_story.html?noredirect=on&utm_term=.395c908f58a1.

for rape cruel and unusual); *Glossip v. Gross,* 576 U.S. 863, 880 (2015) (lethal injection, not electric chair).

Klayman cites to a victory against then President Obama in *Klayman v. Obama* to challenge the statement that he did not have a courtroom victory. Am. Compl. ¶ 60. Perhaps Klayman considers that case a victory; but the final result on appeal, if one is going to cite to it as a courtroom victory is: *Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013), vacated and remanded, 800 F.3d 559 (D.C. Cir. 2015) ("The preliminary injunction entered by the district court is hereby vacated and the case remanded for such further proceedings as may be appropriate"). The litigation continued on remand. *Klayman v. Obama*, 142 F. Supp. 3d 172, 178 (D.D.C. 2015) (injunction granted in part). Finally, the emergency petition for rehearing *en banc* was denied *per curiam. Klayman v. Obama*, 805 F.3d 1148, (Mem)–1149 (D.C. Cir. 2015). The Circuit Court concluded: "In sum, Appellants lack standing to challenge the PRISM and Section 402 programs and to seek expungement of metadata collected under Section 215, and their other challenges to the Section 215 program are moot. The district court's dismissal therefore is affirmed." *Klayman v. Obama*, 759 Fed. Appx. 1, 4 (D.C. Cir. 2019) (unpublished). While there is no allegation that Stone was specifically referring to that case, and setting aside the exaggeration that Klayman never had a victory, Klayman chose at best a controversial example.

The allegation that Klayman's I.Q. is 70 is also an exaggeration. The score of 100 is average. The score of 70 is so low that a person would require assistance with independent living. Klayman also never alleges that because Stone and company defamed him, he lost legal business. Klayman never connects the defamation to any damages, and therefore fails to allege proximate cause. *See WFAA–TV, Inc.,* 978 S.W.2d at 571. As to causation, Corsi as well claims that he was damaged by Jeff Bezos, the publisher of the Washington Post and Robert Mueller,

and due to their actions, interfered with the payments Corsi was receiving from the Jones Defendants and InfoWars. *Mueller*, 422 F. Supp. 3d at 59. The allegation that working for the government's intelligence agencies is presumed to be bad and defamatory. Am. Compl. ¶¶ 66-67. Plaintiffs never explain why being a member of the "deep state" and working for "different government agencies" is defamatory.

Lastly, calling Klayman a "piece of garbage," is an opinion. Am. Compl. ¶ 61. Klayman is currently on suspension with the D.C. Bar. *In re Klayman,* 228 A.3d 713, 719 (D.C. 2020). He has other ethical and professional issues pending before the D.C. Bar.[10] Stone's colorful commentary on Klayman, a very public figure, is fair comment, opinion, and based upon truth. *See Gertz,* 418 U.S. at 345. In sum, neither plaintiff has stated a claim for defamation.

## 2. Intentional Infliction of Emotional Distress (Count IV)

To recover for intentional infliction of emotional distress, "a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe*." Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). Plaintiffs also fail to allege severe emotional distress, which is distress "so severe that no reasonable person should be expected to endure it." *Villasenor v. Villasenor*, 911 S.W.2d 411, 416-17 (Tex. App—San Antonio 1995, no writ). This all assumes that the plaintiffs were injured in Texas, which they were not, since both allege they reside somewhere else.

---

[10] Klayman is subject to *three* additional ongoing disciplinary proceedings by the D.C. Bar. The Court of Appeals for the District of Columbia recently issued two orders in one of these matters. *In Re Larry Klayman*, No. 18-BG-0100 (D.C. June 11, 2020); *In Re Larry Klayman,* No. 18-BG-0100 (D.C. July 6, 2020). Klayman attempted to collaterally attack these proceedings in *Klayman v. Fox,* No. 18-cv-1579 (D.D.C. July 5, 2019) and *Klayman v. Lim*, No. 18-2209 (D.D.C. July 5, 2019), but both actions were dismissed. Klayman has appealed these decisions and they are awaiting decision in that court. *See Klayman v. Fox*, No. 19-7100 (D.C. Cir.); *Klayman v. Lim,* No. 19-7099 (D.C. Cir). *Klayman v. Porter,* Case No. 2020 CA 756 B, reply of D.C. Bar in support of motion to dismiss, n. 1. (filed Aug. 3, 2020).

Plaintiffs' claim of emotional distress comes from speech that defamed them. As to Corsi, it was speech similar to that posted in the Mueller report – Corsi is an unreliable witness who cannot be trusted. *See* Exhibit -- 1. How those comments were said with the intent to cause heart attacks or strokes Corsi never suffered is implausible. *See* Am. Compl. ¶ 10.   As to Klayman, he alleges Stone said Klayman has an absurdly low I.Q., (70 indicates issues with self-care and independent living), and was a bad lawyer who is not skilled enough to help Corsi. Plaintiffs compare themselves to another witness from the Mueller investigation and the District Judge. Am. Compl. ¶¶ 24, 94. Neither have anything to do with Corsi or Klayman. The logic of the allegations is: because them, us too. But neither Plaintiff sufficiently alleges the outrageous conduct that befell them because of Stone, outside of an interview on a radio show. Plaintiffs do not allege any distress they claim to have endured. *See* Am. Compl. ¶ 96. *See Larson v. Hyperion Int'l Techs*., 2012 WL 12960648, at *3 (W.D. Tex. Jan. 20, 2012) (dismissing IIED claim that "merely recites … elements and does not contain any factual allegations aside from conclusory statements") (Yeakel, J.).

 Plaintiffs know "'[l]iability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 76 (D.D.C. 2018) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010)). *See also Luhn v. Scott*, 2019 WL 5810309, at *5 (D.D.C. Nov. 7, 2019) (Klayman case). The law in Texas is the same as in the District of Columbia; liability for this tort does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Quintanilla v. K-Bin, Inc.,* 993 F. Supp. 560, 564 (S.D. Tex. 1998). Although the Amended Complaint alleges that Stone in concert with the other Defendants threatened Plaintiffs (Am. Compl. ¶¶ 94, 95), it offers no details about who made these alleged threats, when they were made, how they were made, or what was said

that constituted a threat. Plaintiffs only inject Roger Stone likes the *Godfather* series. *See* Am. Compl. ¶ 29.  Even if the allegations are accepted as true, it fails to state a claim upon which relief can be granted because the alleged interview does not support a threat to either Plaintiff's life and therefore is not outrageous conduct causing emotional distress.

### 3.  Assault (Count V)

Plaintiffs at best allege an *assault by threat* cause of action. Texas Penal Code § 22.01(a)(2). None of the parties in this alleged assault is within twenty miles of each other, hundreds if Klayman was in D.C. at the time of this unspecified assault and even hundreds more if Corsi was at his home in New Jersey. The question is whether a reasonable person under the circumstances would consider the words and conduct to be an objective threat of imminent bodily injury. *Jones v. Shipley*, 508 S.W.3d 766, 768 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citation omitted). The words and conduct are not alleged by Plaintiffs, so they have failed to properly state a claim. Also, neither Plaintiff was alleged to be in Texas ever, let alone for an assault perpetrated by Stone, who also is not alleged to ever be in Texas. Therefore, no assault could occur in Texas.

The elements of assault are the same in the criminal and civil context. *Loaisia v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012); *Johnson v. Davis,* 178 S.W.3d 230, 240 (Tex. App. –Houston [14th Dist] 2005, pet. denied). Texas Penal Code § 22.01(a)(2) defines assault as "threaten[ing] another with imminent bodily injury," . . ." *LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 138 (Tex. App.—Amarillo 1997, writ denied). The cause of action is frivolous. Plaintiffs allege: "Defendants placed Plaintiffs in apprehension of an imminent harmful or offensive contact and physical harm and death. . ." *See* Am. Compl. ¶ 98. By doing what? This is never alleged. Again, Plaintiffs compare themselves to another witness in the Mueller investigation and a District

Judge; but, do not say how Stone threatened their lives. Plaintiffs, without any basis, claims Stone acts like he is in the Mafia, but does not say how Stone employed any "Mafia" tactics against them. Am. Compl. ¶ 99. Defendants call their followers (whoever they might be) "to arms," who have killed unspecified "victims." Am. Compl. ¶100. Stone did not call to arms any of his followers against either plaintiff. Plaintiffs do not even meet the standard of a vague threat directed at either plaintiff. *See Jones,* 508 S.W.3d at 770-71 (aggressively walking to meet face to face, verbal threat to "get" victim is not threat of imminent bodily injury). This cause of action is frivolous because it fails to allege what Stone did to threaten Plaintiffs with imminent bodily injury in Texas.

## **CONCLUSION**

Based on the foregoing, the amended complaint should be dismissed with prejudice.

Respectfully submitted,

Robert C. Buschel, Esq.
BUSCHEL GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 1300
Fort Lauderdale, Florida 33394
Tele: (954) 530-5301
Email: Buschel@BGlaw-pa.com

Attorneys for Roger J. Stone

By: __/s/_ Robert Buschel_____
        ROBERT C. BUSCHEL
        Florida Bar No. 0063436
        (pending admission W.D. Texas)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on September 16, 2020 by CM/ECF, the court's electronic filing system.

By: ___/s/   Robert Buschel_____
ROBERT C. BUSCHEL

**1:20-cv-00298-LY** Corsi et al v. Infowars, LLC et al

**Sanjay Biswas**
Sanjay Biswas Attorney at Law PC
11720 Duxbury Drive
Frisco, TX 75035
972-866-5879                          representing          **Jerome Corsi**
800-506-6804 (fax)                                        *(Plaintiff)*
sanjaybiswas41@gmail.com
 *Assigned: 07/29/2020*
 *ATTORNEY TO BE NOTICED*

                                                         **Larry Klayman**
                                                         *(Plaintiff)*

**Larry Klayman**
Klayman Law Group P.A.
2020 Pennsylvania Ave. NW #800
Washington, DC 20006
561-558-536                           representing          **Jerome Corsi**
202-318-8839 (fax)                                       *(Plaintiff)*
leklayman@gmail.com
 *Assigned: 03/07/2019*
 *ATTORNEY TO BE NOTICED*

                                                         **Larry Klayman**
                                                         *(Plaintiff)*

**Marc J. Randazza**
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
702-420-2001                          representing          **Free Speech Systems, LLC**
702-297-6584 (fax)                                       *(Defendant)*
mjr@randazza.com
 *Assigned: 07/24/2019*
 *PRO HAC VICE*
 *ATTORNEY TO BE NOTICED*

cell is 702-757-1001                                     **Infowars, LLC**
                                                         *(Defendant)*
                                                         **Alex E. Jones**
                                                         *(Defendant)*
                                                         **David Jones**
                                                         *(Defendant)*
                                                         **Owen Shroyer**
                                                         *(Defendant)*

**Bradley Jordan Reeves**
Reeves Law, PLLC
702 Rio Grande St., Suite 306
Austin, TX 78701
512-827-2246                        representing          **Free Speech Systems, LLC**
512-318-2484 (fax)                                        *(Defendant)*
brad@brtx.law
 *Assigned: 04/02/2020*
 *ATTORNEY TO BE NOTICED*

                                                         **Infowars, LLC**
                                                         *(Defendant)*

                                                         **Alex E. Jones**
                                                         *(Defendant)*

                                                         **Owen Shroyer**
                                                         *(Defendant)*

**Gregory P. Sapire**
Soltero Sapire Murrell PLLC
7320 North MoPac Expy.
Suite 309
Austin, TX 78731-2311
512-431-9518                        representing          **David Jones**
512-359-7996 (fax)                                       *(Defendant)*
greg@ssmlawyers.com
 *Assigned: 04/02/2020*
 *ATTORNEY TO BE NOTICED*

**David Scott Wachen**
Wachen LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121                      representing          **David Jones**
301-259-3846 (fax)                                       *(Defendant)*
david@wachenlaw.com
 *Assigned: 04/24/2019*
 *LEAD ATTORNEY*
 *ATTORNEY TO BE NOTICED*

**Jay Marshall Wolman**
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
(702) 420-2001                      representing          **Free Speech Systems, LLC**
(305) 437-7662 (fax)                                     *(Defendant)*
jmw@randazza.com
 *Assigned: 04/04/2019*
 *LEAD ATTORNEY*
 *ATTORNEY TO BE NOTICED*

**Infowars, LLC**
*(Defendant)*

**Alex E. Jones**
*(Defendant)*

**David Jones**
*(Defendant)*

**Owen Shroyer**
*(Defendant)*