# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>       Plaintiff,<br><br>   vs.<br><br>INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; ALEX E. JONES; DAVID JONES; OWEN SHROYER; and ROGER STONE,<br><br>       Defendants. | Case No. 0:20-cv-61912-DPG<br><br>**DEFENDANTS INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, AND OWEN SHROYER'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT UNDER FLA. STAT. § 768.295** |

In the face of Defendants Infowars, Free Speech Systems ("FSS"), Alex Jones & Owen Shroyer's Motion to Dismiss and/or for Summary Judgment under Fla. Stat. § 768.295 (ECF No. 5-1),[1] Klayman seeks to run away from a decision *again*. He chose to multiply proceedings with three identical suits; this case should be dismissed and sanctions under the Florida anti-SLAPP statute must issue. Nothing in his opposition (ECF No. 29) countenances otherwise.[2]

**1.0    Introduction**

Klayman has engaged in a campaign of frivolous litigation hoping to forum-shop until he finds a court willing to support him. *See, e.g., Klayman v. Infowars, et al.*, Case No. 9:20-cv-80614-RKA (S.D. Fla. filed Apr. 8, 2020) ("1st S.D. Fla. Case"). There are no specific allegations that any Defendant worked in concert with others, none of the statements are reasonably capable of a defamatory meaning, and Moving Defendants did nothing to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.202 *et seq.* ("FDUTPA").[3]

---

[1] This motion was filed prior to removal (ECF No. 1). It conforms with Florida local practice, rather than to Fed. R. Civ. P. 12(b)(6) and 56. Klayman's opposition generally addresses the Rule 12(b)(6) requirements, but omits any discussion of summary judgment. Because summary judgment has been invoked, Klayman is now seeking to transfer the case as he can no longer voluntarily dismiss it by notice. Fed. R. Civ. P. 41(a)(1)(A)(i).

[2] In his Opposition, Klayman relies on extrinsic evidence. This evidence cannot be considered on a Rule 12(b)(6) motion. A motion to dismiss may be converted to a motion for summary judgment when "matters outside the pleadings are presented and not excluded by the court," but Moving Defendants did not present any extrinsic evidence other than what was referred to in the Amended Complaint and properly subject to consideration in a 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). Klayman does not argue that this Motion should be adjudicated under summary judgment standards and provides no argument for why his extrinsic evidence should be considered. The Court should exclude this evidence in ruling on the Motion to Dismiss. That said, to the extent summary judgment is invoked, his evidence is self-serving and generally lacks probative value, except that it confirms Klayman is a public figure and fails to show that moving defendants have any liability for the statements or that they acted with actual malice.

[3] *Corsi v. Stone*, Case No. 2019CA013711 (Palm Bch Cty., Aug 12, 2020), ECF No. 5-1 at 186.

Klayman largely ignores the numerous other duplicative lawsuits he filed and demonstrates that his purported claims are against Stone, who is not a properly served defendant.[4]

**2.0    Analysis**

**2.1    The Complaint is a Shotgun Pleading, Thrown Out Before**

Klayman argues that Judge Altman's *sua sponte* order is not binding because, rather than replead as ordered, he dismissed and re-filed the same complaint in state court. However, there is no reason to diverge from Judge Altman's finding that Klayman's nearly identical complaint was a shotgun pleading. His action demonstrates a course of forum-shopping claims in multiple courts at the same time. His latest effort to affect a transfer demonstrates this motivation.

**2.2    Klayman has No Actionable Defamation Claim**

The first eighteen causes of action sound in defamation, whether *per quod*, *per se*, or by implication.[5] None of the statements made meet the actual malice standard or are actionable.

**2.2.1    As a Matter of Law, the Statements Are Not Defamatory**

Klayman's defamation claims against Moving Defendants fail because *they did not actually say anything about him*. For the sake of thoroughness, however, they will discuss the allegedly actionable statements about Klayman spoken by Mr. Stone in the unlikely event the Court gives credence to Klayman's theory of all Defendants acting "in concert" – a claim that was summarily thrown out in a nearly identical case in Florida. *See* ECF No. 5-1 at p. 186. Rather than appeal, Klayman is trying to see if another judge will hold differently.

The statements at issue are generally neither false nor defamatory, whether viewed

---

[4] This is not to argue that any of the claims against Stone are viable either.
[5] There are two "eleventh" causes, six against David Jones & Roger Stone, not addressed here.

directly or by implication. Although "[a] false statement of fact is the *sine qua non* for recovery in a defamation action," *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983), "[u]nder the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true," *Smith v. Cuban Am. Nat'l Fdn.*, 731 So. 2d 702, 706-07 (Fla. 3d DCA 1999) (explaining falsity only exists where ""the publication is substantially and materially false, not just if it is technically false"). Statements of pure opinion and true factual statements are not actionable. *See Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985). Whether a statement is one of fact or opinion is a matter of law for the Court. *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016). Just as Klayman could not meet his burden in *Klayman v. Segal,* 783 A.2d 607 (D.C. 2001), he cannot do so here.

Context is important in determining whether a listener will view a statement as one of fact, as opposed to opinion or rhetorical hyperbole. Listeners likely view statements made on bombastic radio commentary shows as expressions of opinion or hyperbole, not factual representations. The Ninth Circuit in *Gardner v. Martino*, 563 F.3d 981, 988-89 (9th Cir. 2009) found that statements made on a radio "shock jock" program were not statements of fact, noting that the show "contains many of the elements that would reduce the audience's expectation of learning an objective fact: drama, hyperbolic language, an opinionated and arrogant host, and heated controversy." This analysis is apt in the political context. In *McDougal v. Fox News Network, LLC*, 2020 U.S. Dist. LEXIS 175768, *14-16 (S.D.N.Y. Sept. 23, 2020) it was found that, when viewed in context of Fox News's "The Tucker Carlson Show," Carlson's claim that plaintiff was an extortionist was a protected expression of opinion and rhetorical hyperbole. The court noted that statements are especially likely to be seen as hyperbolic "in the context of commentary talk shows like the one at issue here, which often use 'increasingly barbed'

language to address issues in the news." *Id*. at *14.  Carlson had a reputation for partisan, non-literal commentary, and thus "any reasonable viewer 'arrive[s] with an appropriate amount of skepticism about the statements he makes.  Whether the Court frames Mr. Carlson's statements as 'exaggeration,' 'non-literal commentary,' or simply bloviating for his audience, the conclusion remains the same – the statements are not actionable." *Id*. at *17 (quoting *600 W. 115th Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141, 603 N.E.2d 930, 936 (1992).  A different court came to the same conclusion as to Rachel Maddow.  *See Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1053 (S.D. Cal. 2020) ("For her to exaggerate the facts and call OAN Russian propaganda was consistent with her tone up to that point, and the Court finds a reasonable viewer would not take the statement as factual given this context. The context of Maddow's statement shows reasonable viewers would consider the contested statement to be her opinion.").

Klayman alleges that Moving Defendants "have a long and sordid history of publishing and broadcasting defamatory material…" Dkt. No. 1-1 at ¶ 17.[6]  He claims they are well-known for allegedly propagating conspiracy theories.  *Id*. at ¶¶ 17-21.  Klayman alleges that Defendants are not reliable sources of factual information and are widely known not to be reliable.  This places them in a category of a radio shock jock, Rachel Maddow, or Tucker Carlson, meaning the audiences are less likely to view statements made on their radio programs as factual.

Stone's statements about Klayman are primarily statements of opinion and rhetorical hyperbole as to his competence.  They are otherwise true or substantially true.[7]  Klayman's legal

---

[6] Moving Defendants deny that these allegations of fabricating statements are accurate, but Klayman's own allegations establish that they have an alleged reputation for bending the truth.
[7] Klayman asserts that Moving Defendants do not address any statements about him in the

work has been deemed "patently inadequate." *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011). It was also observed that "[d]espite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings." *Id*. at 149. As to the separation from Judicial Watch in paragraph 40 of the Complaint, such was relaying assertions about which Klayman had already lost. *See Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 12-13 (D.D.C. 2007).

Klayman alleges this is false, despite the portion of this decision he quotes in his Opposition making it abundantly clear that (1) Judicial Watch learned of allegations against Klayman that he had an inappropriate relationship with an employee and physically assaulted his wife; (2) Judicial Watch asked Klayman to resign based on these allegations; and (3) Klayman offered to resign to avoid an internal investigation, resulting in a severance agreement. ECF No. 29 at 10-11. Claiming Klayman was "ousted" due to a "sexual harassment complaint" is a fair characterization of these court documents. Klayman additionally cites the transcript of a deposition of Tom Fitton, who claims that Klayman was not "ousted as a result of a sexual

---

Complaint other than the one concerning his removal from Judicial Watch, but this is false. An exhaustive breakdown of each individual statement is not necessary when they are self-evidently expressions of opinion uttered by another person. The Court does not need briefing on how calling someone, for example, a "piece of garbage" is not actionable or that no one would seriously think Stone had the results of Klayman's IQ test (and one demonstrating borderline intellectual functioning at that). His opposition discusses being on the AT&T monopoly case "trial team", that he "participated" in *Gore v. Bush* and was "the first to challenge" amnesty, not an actual win attribute to *him*. He cites to his NSA and FARA litigation, but omits he ultimately lost those cases. *Obama v. Klayman*, 800 F.3d 559 (2015); *In re Cheney*, 406 F.3d 723 (2005). Even in his case against Judicial Watch, the verdict appears to have been pyrrhic, where he was unable to personally collect the funds. *Klayman v. Judicial Watch, Inc.*, 650 F. App'x 741 (11th Cir. 2016) (finding funds were suited to an interpleader action). Thus, the gist or sting of the statement as to lack of courtroom victories is substantially true.

harassment complaint." ECF No. 29 at 11. This extrinsic evidence cannot be considered on a motion to dismiss, but even if it could, it does not bear on the question of actual malice, or even negligence. The deposition was conducted on June 6, 2019, while the statements were uttered in January 2019. Defendants could not have been aware of this deposition testimony when Stone made his statements, meaning there is nothing to suggest they acted with actual malice.

### 2.2.2 Klayman is a Public Figure and the Statements Were Not Published with Actual Malice

Klayman has been found to be a public figure, meaning this issue need not be relitigated. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) (finding that "[b]ecause of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure"); *see also Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, *39 (M.D. Fla. Apr. 3, 2015) (noting that "Plaintiff has conceded that he is a public figure").[8] He cannot point to his appearances, publications, and high-profile cases with one breath and claim to be a nobody with the next. He also voluntarily injected himself into the high-profile prosecution of Stone. *See, e.g., United States v. Stone*, 2019 U.S. Dist. LEXIS 28860, *2 (D.D.C. Feb. 15, 2019). No one forced him to represent Corsi or file pleadings. All of the statements were in that context; Klayman devotes pages of the Complaint to the prosecution.

As a public figure, Klayman must demonstrate "actual malice," *i.e.* knowledge that the statements were false or made with reckless disregard for their truth or falsity. *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964). Klayman fails. Moving Defendants did not do anything

---

[8] Klayman strangely ignores this case law establishing him as a public figure, while touting his public figure status in some parts of the pleading, and then denying it in others.

in relation to Stone's spontaneous statements about Klayman, meaning there is can be no actual malice. Klayman's sole argument is that Moving Defendants knew and worked with Stone, and thus somehow must have known Stone would make false statements. This is speculative and does not allow for an inference of knowing falsity or recklessness, particularly where the statements are expressions of subjective opinion. The knowledge Stone allegedly had regarding any falsity cannot be imputed to Moving Defendants, and Klayman makes no argument as to why it should be imputed. Thus, the defamation claims must be dismissed.

### 2.3   There is No Plausible FDUTPA Claim

Although Klayman notes the elements of a FDUTPA claim, he fails to show the Moving Defendants committed a violation. He claims that they knowingly made false statements to cause him harm, as a purported competitor. ECF No. 29 at 14-15. This is insufficient.

First, as set forth above, there is no plausible allegation that Moving Defendants made any false statements about Klayman—they themselves made no statements, the statements made by Stone do not contain actionable falsehoods, and Moving Defendants would not have had foreknowledge that anything Stone would say would be false. Thus, there is no deceptive conduct. "[T]ag-along" claims, including FDUTPA, based on the same underlying facts as in a dismissed defamation count must also be dismissed. Accordingly, Plaintiff's claims for commercial disparagement and violation of FDUTPA must be dismissed. *See Bongino v. Daily Beast Co.*, No. 19-14472-CV, 2020 U.S. Dist. LEXIS 208381, at *17 (S.D. Fla. Aug. 6, 2020) citing *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014).

Second, as Klayman notes, FDUTA only applies "in the conduct of any trade or commerce." ECF No. 29 at 14. "Where the allegedly violative action is the publication of information," FDUTPA only applies to commercial speech. *Bongino, supra.* at *17-18.

"[M]agazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech." *Tobinick v. Novella,* 848 F.3d 935, 952 (11th Cir. 2007). The statements did not advertise Infowars to the detriment of Klayman's purported broadcasting career—they were about his legal abilities, an area in which no defendant competes. Thus, he does not meet the "trade or commerce" element. Failing to meet these two elements, in a claim identical to the Lanham Act one that Judge Altman highlighted as problematic, fees under Fla. Stat. § 501.2105(1) should be awarded.

### 2.4 The "Acting in Concert" Theory Fails (Again)

Klayman has already had an Anti-SLAPP order entered against him for trying to use this theory. *Corsi v. Stone,* Case No. 2019CA013711AXX (Palm Beach Cty., Aug 12, 2020).[9] It is unclear why he thinks it should work here.

The bare assertions that Defendants acted "in concert" is not sufficient to bring any of the claims.[10] "Bald allegations that a conspiracy existed are insufficient." *Ferguson v. Destefano*, No. 10-80385-CIV, 2010 U.S. Dist. LEXIS 157306, at *25 (S.D. Fla. Oct. 6, 2010) *quoting Anderson v. Law Firm of Shorty,* 393 F. App'x 214, 217 (5th Cir. 2010). Klayman expects the Court to believe that his bald assertions are actually detailed factual allegations. They are not. At most, Klayman alleges that Alex Jones and David Jones are employees or agents of Infowars and FSS and that Roger Stone appeared on Defendants' radio broadcasts. That is it. Klayman

---

[9] ECF No. 5-1 at 186.

[10] Moreover, "[b]ecause a civil conspiracy derives from the underlying claim that forms the basis of the conspiracy, a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *JAWHBS, LLC v. Arevalo,* 2017 U.S. Dist. LEXIS 55899, at *30 (S.D. Fla. Apr. 12, 2017) (Gayles, U.S.D.J.).

does not identify an objective, a meeting of the minds regarding this non-existent objective, any unlawful acts, or any resulting damages. "[C]onclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" that depends on existence of a conspiracy. *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). To satisfy the heightened pleading standard for conspiracy claims, the plaintiff "must show some evidence of agreement between the defendants." *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890-91 (11th Cir. 2007) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002)); *compare Diaz-Martinez v. Miami-Dade County*, 2009 U.S. Dist. LEXIS 84366 (S.D. Fla. Sept. 10, 2009) (conclusory allegation that police officers "agreed among themselves and with other individuals to act in concert in order to deprive [Plaintiff] of his clearly established Fourth and Fourteenth Amendment rights . . . is simply insufficient to satisfy Plaintiff's burden.") Mr. Klayman was required to show they were in a conspiracy to defame him, not merely that the defendants know each other. Having failed to so, no conspiracy liability can be found.

### 2.5   Klayman Failed to Comply with Fla. Stat. § 770.01

Klayman fails to show compliance with the pre-suit notice requirement of Fla. Stat. § 770.01. His January 25, 2019 e-mail (ECF No. 29 at 62) says" [a]s instructed by my client, Dr. Jerome Corsi, please be advised that any further defamation about Dr. Corsi ant the undersigned will result in immediate legal action." This e-mail does not specify the broadcast or specific statements alleged to be false as required by the statute. *See* Fla. Stat. § 770.01. The consequence for failure to comply is *dismissal*, not transfer. *See Tobinick v. Novella*, No. 9:14-CV-80781, 2015 U.S. Dist. LEXIS 31884, at *30-32 (S.D. Fla. Mar. 16, 2015).

Although, ordinarily, such dismissal is without prejudice (*see, id.*), here, it must be with prejudice as it is beyond the one-year Texas statute of limitations. Klayman makes no argument

as to why that state's statute of limitations would not apply except that Moving Defendants invoked the Florida anti-SLAPP statute. (ECF No. 29 at 19). Florida law recognizes dépeçage, requiring conflicts of law to be evaluated issue by issue. *See Dopson-Troutt v. Novartis Pharm. Corp.,* No. 8:06-CV-1708-T-24-EAJ, 2013 U.S. Dist. LEXIS 102135, at *7 (M.D. Fla. July 22, 2013). As Klayman offers no argument why Florida law would not restrict a purported Florida resident from filing a SLAPP suit while at the same time recognizing that Texas has the most significant interest in protecting its citizens from untimely suits, both should apply.

### 2.6 Moving Defendants are Entitled to Fees and Costs under the Florida Anti-SLAPP Statute, as Klayman is purportedly a Florida Citizen

Because his claims are meritless and because he plainly filed this suit in response to conduct protected under Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, Klayman violated the Anti-SLAPP statute and Moving Defendants are entitled to an award of attorneys' fees against him. The elements are met: the suit lacks merit and the right of free speech was exercised in connection with a public issue—the prosecution of Roger Stone. Unlike the D.C. anti-SLAPP statute discussed by Klayman,[11] Florida's statute has not been found to conflict with the Federal Rules and applies. *Bongino, supra,* at *21-24. Thus, fees must be awarded.

### 3.0 Conclusion

In light of the foregoing, Defendants Alex Jones, Infowars, and FSS respectfully request this Honorable Court dismiss the matter as to them for failure to state a claim and award them their attorneys' fees and costs under the Florida Anti-SLAPP law and FDUTPA.

---

[11] *This* suit was not the one Klayman original filed in D.C., though it contains the same allegations. D.C. law has no basis to apply.

Dated: November 9, 2020.                    Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (FL Bar No. 625566)
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com
*Attorneys for Defendants*
*Infowars, LLC; Free Speech Systems, LLC;*
*Alex E. Jones; and Owen Shroyer*

Case No. 20-cv-61912

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 9th day of November 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Elena Strakosha
Employee,
Randazza Legal Group, PLLC