**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN,

             Plaintiff,

     vs.

INFOWARS, LLC; FREE SPEECH SYSTEMS,
LLC; ALEX E. JONES; DAVID JONES;
OWEN SHROYER; and ROGER STONE,

             Defendants.

Case No. 0:20-cv-61912-AMC

**<u>OPPOSITION TO MOTION FOR LEAVE TO AMEND</u>**

Marc J. Randazza (FL Bar No. 625566)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants
Infowars, LLC; Free Speech Systems, LLC;
Alex E. Jones; and Owen Shroyer

Defendants Infowars, LLC ("Infowars"), Free Speech Systems, LLC ("FSS"), Alex E. Jones, and Owen Shroyer (collectively, "Moving Defendants") file their Opposition to Plaintiff Larry Klayman's Motion for Leave to Amend Complaint (ECF No. 53).   Moving Defendants previously asked for attorneys' fees under Fla. Stat. § 768.295 due to the frivolous nature of Klayman's claims, and reiterates its request in light of Klayman's fifth attempt to assert the same claims.

## 1.0    INTRODUCTION

Plaintiff is on a mission to file as many frivolous claims as possible in as many forums as possible in order to waste Moving Defendants' resources in the hope of extracting a nuisance settlement from them.   Plaintiff has thus far filed approximately 10 identical or closely related actions in five or so courts.   *See* ECF No. 51.   He keeps losing, and then keeps re-filing.[1]   Moving Defendants request that this Court put an end to it.

The court should deny Plaintiff's motion.   The proposed amendment is virtually identical to the one he filed before Judge Altman, who dismissed it *sua sponte* with leave to amend.   Rather than amend, Plaintiff filed the same complaint in state court.   This Court gave Klayman one last chance to prosecute this complaint, despite it being duplicative.   He has squandered that chance.

Moving Defendants previously filed an Anti-SLAPP motion, which has yet to be fully adjudicated.   (ECF No. 5-1.)   Fla. Stat. § 768.295 gives Moving Defendants a right to an expeditious resolution of these frivolous claims.   Further, if Plaintiff's conduct does not violate 28 U.S.C. § 1927, then there is simply *no* conduct that could ever violate that statute.

---

[1]    *See* ECF No. 5-1 at 43-181, Complaints in *Corsi v. Infowars, LLC*, Case No. 1:20-cv-00298-LY (W.D. Tex.); *Corsi v. Stone*, Case No. CACE-20-004473 (Broward Cty., Florida Cir. Ct.); and *Klayman v. Stone*, Case No. CACE-19-002672 (Broward Cty., Florida Cir. Ct.).   These documents, and all other filings in state or federal courts, are properly subject to judicial notice by this Court under Fed. R. Evid. 201, and thus may properly be considered in determining whether Plaintiff's claims in his proposed amended complaint are futile.   A useful chart showing the similarities in the allegations between these suits was previously attached for the Court's convenience at ECF No. 5-1 at 182-84.

## 2.0    FACTUAL BACKGROUND

Klayman does not allege Moving Defendants made any actionable statements about him, instead asserting that they acted "in concert" with Roger Stone, who talked about Klayman.  This unsupportable surrogacy theory already led to Anti-SLAPP sanctions against Klayman's client, Jerome Corsi, in *Corsi v. Stone*, Palm Beach County Circuit Court, Case No. 2019CA013711AXX (Aug. 12, 2020).  (ECF No. 5-1 at 185-88.)  This Court does not need to travel any new ground – it need only look at the *Corsi* case, where Klayman was counsel, and recognize the same thing as Judge Kastrenakes found – that this theory has no support, at all, and is sanctionably frivolous.

The only allegedly actionable statement Klayman identifies about himself is by **former defendant** *Roger Stone* – not any of the Moving Defendants.  Stone's statements were made during a January 18, 2019 video on Shroyer's broadcast program *The War Room*, in which **Stone** said that Klayman "never actually won a courtroom victory"; that Klayman was "ousted" from employment due to sexual misconduct; and that Klayman is a "piece of garbage," "incompetent," "a numbskull," "an idiot," "an egomaniac," and "could be the single worst lawyer in America" whose IQ is not "higher than 70." (ECF No. 53 at ¶¶ 37-45.)[2]  No other pertinent factual allegations are asserted.[3]  Klayman otherwise makes a series of conclusory allegations as to his purported competition with Defendants.  *Id.* at ¶¶ 46-53.[4]  New to the proposed amended complaint is an additional allegation "on information and belief" that Defendants and Stone are "causing to be

---

[2]    Klayman repeatedly states that "Stone and the Infowars Defendants, each and every one of them jointly and severally as joint tortfeasors, maliciously and falsely published these statements." (*Id.*)  But, a cursory examination of the video linked in the proposed amended complaint shows that Stone is the only person who uttered these words.  Stone is not a defendant.

[3]    Though he has trimmed some of the grossest excesses in his proposed amendment, Klayman still includes significant unrelated matter, turning his Complaint into a "free for all."  *See USA v. Stone*, Case No. 1:19-cr-00018 (D.D.C. Feb. 28, 2019) (striking filing from Klayman on behalf of Dr. Jerome Corsi and admonishing them upon the filing of improper matter).

[4]    Klayman's dispute is only with Stone, as Klayman alleges that "Stone, in a recent interview with Real Clear Politics, admitted that he intends to host a weekly syndicated radio talk show and a daily podcast in 2021." (*Id.* at ¶ 51.)  This has nothing to do with anyone other than Stone.

RANDAZZA | LEGAL GROUP

filed and then financing frivolous bar complaints against [Klayman] ….”  (*Id*. at ¶¶ 58-62.)[5]

Defendants do not concede that Stone's statements were defamatory, but to whatever extent there is liability, it would be Stone's liability, not these Defendants'.  To the extent it matters, Moving Defendants acknowledge that Klayman might have, at least once, won a courtroom victory.[6]  That said, none of the statements Stone made about Klayman is an actionable statement of fact.  There are also no plausible factual allegations to support Klayman's false allegation that Moving Defendants are coordinating a spate of frivolous bar complaints against Klayman.

## 3.0    LEGAL STANDARD

A court need not give leave “where amendment would be futile.”  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005); *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).  Amendment is futile “when the complaint as amended is still subject to dismissal because, for example, it fails to state a claim for relief.”  *Chang v. JPMorgan Chase Bank,* 845 F.3d 1087, 1094 (11th Cir. 2017); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1990) (citations omitted).  In determining futility, the motion to dismiss standard applies.  *Chang*, 845 F.3d at 1094.  To withstand a motion under Fed. R. Civ. P. 12(b)(6), a complaint “must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.”  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions “are not entitled to the assumption of truth.”  *Id*. at 679.

## 4.0    ANALYSIS

### 4.1    Klayman Has No Actionable Defamation Claim

Claims 1-3 are for defamation. A defamation plaintiff must show (1) the defendant's publication of an allegedly defamatory statement; (2) falsity; (3) the defendant acted with knowledge or reckless disregard as to the falsity on a matter concerning a public figure; and (4) actual damages.  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010) (*citing*

---

5    Even if Klayman had any evidence of this, bar complaints are absolutely privileged.  *See Magre v. Charles*, 729 So. 2d 440, 443 (Fla. 5th DCA 1999) *citing Tobkin v. Jarboe*, 710 So. 2d 975 (Fla. 1998).

6    That said, Stone's absolute statement is rhetorical hyperbole.

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  A statement is substantially true, and thus not defamatory, "*if its substance or gist* conveys essentially the same meaning that the truth would have conveyed." *Rapp*, 997 So. 2d at 1107.  Klayman fails on all elements.

### 4.1.1   As a Matter of Law, the Statements are Not False or Defamatory

Failing the first element, **Moving Defendants did not say anything about Klayman at all**.  Rather, Klayman's claims rest on allegations of guilt by association, with Defendants acting as Roger Stone's "surrogates."  A Florida court has ruled that this unsupported theory is implausible.  (*See* ECF No. 5-1 at 185-88.)  That said, the statements are not otherwise actionable.

The statements are neither false nor defamatory.[7]  "A false statement of fact is the *sine qua non* for recovery in a defamation action," *Byrd v. Hustler Magazine, Inc*., 433 So.2d 593, 595 (Fla. 4th DCA 1983).  However, "[u]nder the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true," *Smith v. Cuban Am. Nat'l Fdn*., 731 So. 2d 702, 706-07 (Fla. 3d DCA 1999) (explaining falsity only exists where "the publication is substantially and materially false, not just if it is technically false").  Statements of truth or opinion are not actionable.  *See Keller v. Miami Herald Publ'g Co*., 778 F.2d 711, 717 (11th Cir. 1985).  Whether a statement is one of fact or opinion is a matter of law – not something discovery can explore.  *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016).

Statements of opinion and rhetorical hyperbole, even when delivered in a caustic tone, are protected.  "The First Amendment requires neither politeness or fairness." *Pullum v. Johnson*, 647 So. 2d 254, 258 (Fla. 1st DCA 1994).  "Although rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target."  *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378-79 (S.D. Fla. 2006).  "[V]igorous

---

7    Florida recognizes defamation by implication claims, but this claim is only viable where a defendant "'(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication ….'"  *Rapp*, 997 So. at 1106, 1108 n.13 (*quoting* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)).  Klayman fails to plead any omission or juxtaposition as to truthfully stated facts that give a false impression.

epithets" cannot create defamation liability. *Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6, 7 (1970); *see also Seropian v. Forman*, 652 So. 2d 490, 492 (Fla. 4th DCA 1995) (dismissing defamation claim as "influence peddler" was "hyperbolic"). Just as Klayman could not meet his burden in *Klayman v. Segal,* he cannot do so here. 783 A.2d 607 (D.C. 2001) (unsuccessfully claiming statements made "him ridiculous and odious and stupid in front of courts").

Context is important in determining whether a listener views a statement as one of fact. Listeners view statements made on bombastic radio commentary shows as expressions of opinion or hyperbole. In *Gardner v. Martino*, 563 F.3d 981, 988-89 (9th Cir. 2009), it was found that statements made on a radio "shock jock" program were not statements of fact, noting that the show "contains many of the elements that would reduce the audience's expectation of learning an objective fact: drama, hyperbolic language, an opinionated and arrogant host, and heated controversy." This analysis is apt in the political context. In *McDougal v. Fox News Network, LLC*, 2020 U.S. Dist. LEXIS 175768, *14-16 (S.D.N.Y. Sept. 23, 2020), when viewed in context of Fox News's "The Tucker Carlson Show," Carlson's claim that plaintiff was an extortionist was a protected expression of opinion and rhetorical hyperbole. Statements are especially likely to be seen as hyperbolic "in the context of commentary talk shows like the one at issue here, which often use 'increasingly barbed' language to address issues in the news." *Id*. at *14. Carlson had a reputation for partisan, non-literal commentary, and thus "any reasonable viewer 'arrive[s] with an appropriate amount of skepticism about the statements he makes. Whether the Court frames Mr. Carlson's statements as 'exaggeration,' 'non-literal commentary,' or simply bloviating for his audience, the conclusion remains the same – the statements are not actionable." *Id*. at *17 (quoting *600 W. 115th Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141 (1992)). Another court came to the same conclusion as to Rachel Maddow. *See Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1053 (S.D. Cal. 2020) (finding that "[f]or her to exaggerate the facts and call OAN Russian propaganda was consistent with her tone up to that point, and the Court finds a reasonable viewer would not take the statement as factual given this context. The context of Maddow's statement shows reasonable viewers would consider the contested statement to be her opinion").

RANDAZZA | LEGAL GROUP

Klayman alleges that Defendant Alex Jones "is a well-known extreme and totally discredited 'conspiracy theorist' and media personality …." (ECF No. 53 at ¶ 6.) He also alleges *The War Room*, the program on which Stone made the allegedly defamatory statements, is hosted by both Shroyer and Alex Jones. (*Id*. at ¶¶ 16, 30, 35.) In his previous complaint, Klayman alleged Moving Defendants "have a long and sordid history of publishing and broadcasting defamatory material…" (ECF No. 1-1 at ¶ 17.)[8] Klayman alleges that Defendants are not and are widely known not to be reliable sources of factual information. This places them, and Stone, on par with a radio shock jock, Rachel Maddow, or Tucker Carlson. By Klayman's own allegations, audiences are less likely to view statements made on their radio programs as factual. Asserting this lack of credibility, Klayman finds yet another way to render his claims implausible.

Stone's statements about Klayman were opinion and hyperbole as to his competence. A human is not literally a "piece of garbage," yet Klayman would seek to put everyone through a trial in order to provide a jury with instructions that state "Has the jury found that Larry Klayman is a piece of garbage?" The rest of his statements are equally incapable of ever sustaining a defamation claim. Saying that Klayman is "incompetent," "a numbskull," "an idiot," "an egomaniac," and "could be the single worst lawyer in America" whose IQ is not "higher than 70" are all opinion or hyperbolic. No listener would think Stone is reporting the results of Klayman's IQ test. They are otherwise true or substantially true, even if the statements that Klayman "never actually won a courtroom victory"[9] and that Klayman was "ousted" from employment due to sexual misconduct were statements of fact (though they, too, are opinion and hyperbole). For

---

[8]   Moving Defendants do not concede that these allegations are accurate.

[9]   In asserting this statement is false, Klayman makes allegations regarding his alleged professional victories. (Doc. No. 53 at ¶ 42 and *Exhibit 4* at ¶¶ 21-27.) Specifically, he discusses being on the AT&T monopoly case "trial team," that he "participated" in *Gore v. Bush* and was "the first to challenge" amnesty, not an actual win attribute to *him*. He cites to his NSA and FARA litigation, but omits he ultimately lost those cases. *Obama v. Klayman*, 800 F.3d 559 (2015); *In re Cheney*, 406 F.3d 723 (2005). Even in his case against Judicial Watch, the verdict appears to have been pyrrhic, where he was unable to personally collect the funds. *Klayman v. Judicial Watch, Inc*., 650 F. App'x 741 (11th Cir. 2016) (finding funds were suited to an interpleader action). Thus, the gist or sting of the statement as to lack of courtroom victories is substantially true.

example, consistent with Stone's assertions as to Klayman's competence, Klayman's work has been deemed "patently inadequate." *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011). It was also observed that "[d]espite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings." *Id.* at 149. As to the separation from Judicial Watch in paragraph 38 of the proposed amended complaint, such was relaying assertions about which Mr. Klayman has already lost, to wit:

> Judicial Watch alleges that in May 2003, Klayman informed Fitton and Orfanedes that his wife, a former Judicial Watch employee, had commenced divorce proceedings against him and that she alleged that Klayman had had an inappropriate relationship with a Judicial Watch employee with whom he had been in love and that Klayman had assaulted her physically. According to Judicial Watch, Klayman denied having a sexual relationship with the employee but acknowledged that he had been in love with the employee, that he had purchased gifts for the employee and had kissed her, and also acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault. Judicial Watch alleges that Fitton and Orfanedes considered Klayman's acknowledged behavior entirely inconsistent with that of a leader of a conservative, pro-family organization, as well as Klayman's fiduciary duties to the organization, and that they were concerned about Klayman's possible misuse of Judicial Watch resources. Judicial Watch further alleges that, as a result of these revelations, Fitton requested that Klayman resign, and Fitton and Orfanedes also insisted that Judicial Watch undertake an internal investigation into Klayman's conduct, including an audit. According to Judicial Watch, Klayman offered to resign rather than face such an inquiry, and the parties began negotiating for his separation from Judicial Watch, which eventually culminated in the September 19, 2003 Severance Agreement.

*Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 12-13 (D.D.C. 2007) (internal citations and quotation marks omitted).

In that matter, Judicial Watch and Fitton counterclaimed, *inter alia*, that Klayman made false and disparaging statements when he said his separation related to Fitton "set[ting] out to hijack the group to further his own personal interests." *See Klayman v. Judicial Watch, Inc.*, Case No. 1:06-cv-00670 (Dec. 3, 2007) (Dkt. No. 86 at ¶ 35). Final judgment on the claim in favor of Judicial Watch and Fitton entered on March 18, 2019, and Klayman is estopped from relitigating

the allegations.  *See Klayman v. Judicial Watch, Inc*., Case No. 1:06-cv-00670 (Mar. 18, 2019) (Dkt. No. 584).[10]  Thus, as a matter of law, Stone's statement is true or substantially true.

Finally, is Klayman "the worst lawyer in America?"  Certainly, *someone* must have the opinion that he is actually the *best* lawyer.  That Stone does not share this opinion does not make it untrue – since an opinion is neither true nor false.  If Roger Stone believed that Klayman is *the worst* lawyer in America, he was entitled to that opinion – as is anyone else.

### 4.1.2    Klayman is a Public Figure and there is no Actual Malice

Klayman is a public figure.  *See Klayman v. Judicial Watch,* 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) (finding "[b]ecause of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure"); *see also Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, *39 (M.D. Fla. Apr. 3, 2015) (noting "Plaintiff has conceded that he is a public figure").  He voluntarily injected himself into Stone's high-profile prosecution.  *See*, *e.g., United States v. Stone*, 2019 U.S. Dist. LEXIS 28860, *2 (D.D.C. Feb. 15, 2019).  No one forced him to represent Corsi or file pleadings.  All of the statements were in that context, and the proposed amended complaint makes repeated reference to the prosecution.  (ECF No. 53 at ¶¶ 20-29.)[11]

A public figure defamation plaintiff must prove that Moving Defendants acted with "actual malice," meaning knowledge that the statements were false or reckless disregard for their truth or falsity.  *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964).  This requires proof that the defendant had a "high degree of awareness of … probable falsity" of their statements.  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  "[The plaintiff] must prove actual malice with clear and

---

[10]    Klayman alleges he obtained a jury verdict and judgment against Judicial Watch in *Klayman v. Judicial Watch*, 13-cv-20610 (S.D.F.L.), but fails to mention that his claim there was based on a statement that Klayman had been convicted of a crime for failing to pay child support; the actionable statements were unrelated to the reason for his ouster at Judicial Watch.

[11]    Klayman continues to allege Moving Defendants conspired with Stone to engage in witness intimidation without bringing a claim related to this alleged intimidation.  (ECF No. 53 at ¶ 29.)

convincing evidence." *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001); *see also Bose Corp. v. Consumers Union,* 466 U.S. 485, 511 n.30 (1984).

There are no plausible allegations that Moving Defendants acted with actual malice. As they did not say anything at all, there are no allegations that  they caused the statements to be made with knowing falsity or in reckless disregard thereof.  Klayman's sole factual allegation is that Moving Defendants knew and worked with Klayman, and that they "effusively praised" him while Klayman appeared on their shows.  (ECF No. 53 at ¶ 32 and *Exhibit 4* at ¶ 38.)  Klayman's declaration defeats his allegations.  The declaration goes into detail about his relationship and history with Stone, and how Stone was allegedly aware of Klayman's courtroom victories, but he does not include any specific factual allegation about Moving Defendants' alleged knowledge of his successes.  (ECF No. 53 at *Exhibit 4*, ¶¶ 39-73.)  Klayman's allegations of Moving Defendants' knowledge are speculative and do not allow for an inference of knowing falsity or recklessness, particularly where the statements are expressions of subjective opinion.[12]  The knowledge Stone allegedly had regarding any falsity cannot be imputed to Moving Defendants, and Klayman makes no allegations supporting imputation.  Thus, the defamation claims are futile.

### 4.2    Klayman Has No Actionable Lanham Act Claim

Klayman, in his proposed amendment, has made the decision to add claims Judge Altman informed him were baseless, and they are duplicative of claims asserted in pending litigation in the Western District of Texas.  Now that he has decided to open himself up to Lanham Act liability, the Court should find this case exceptional and grant an award of fees under 15 U.S.C. § 1117.

---

[12]    Klayman alleges the statements about his reasons for being ousted from Judicial Watch were made with knowing falsity, citing the deposition testimony of Tom Fitton, who claims that Klayman was not "ousted as a result of a sexual harassment complaint."  (ECF No. 53 at ¶¶ 39-40 and *Exhibit 4*.)  This does not bear on the question of actual malice, or even negligence.  The deposition was conducted on June 6, 2019, while the statements were uttered in January 2019. Moving Defendants could not have been aware of this deposition testimony when Stone made his statements, meaning there is nothing to suggest they acted with actual malice.

Lanham Act Section 1125(a) "appl[ies] only to commercial speech." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).[13] "The mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Id*. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). The "core notion" of commercial speech is speech that does "'no more than propose a commercial transaction,'" *Nat'l Assoc. of Mfrs. v. S.E.C.,* 800 F.3d 518, 523 n.12 (D.C. Cir. 2015) (quoting *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66 (1983)). "The Supreme Court has identified three factors in looking beyond the core notion of commercial speech: (1) that the material was 'conceded to be advertisements,' (2) it contained a 'reference to a specific product,' and (3) the speaker 'has an economic motivation' for distributing the material. No one factor is dispositive." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) quoting *Bolger*, 463 U.S. at 66-67; *see also Seven-Up Co. v. Coca-Cola Co*., 86 F.3d 1379, 1383 (5th Cir. 1996) ("A representation constitutes a 'commercial advertising or promotion' under section 43(a)(1)(B) if it is: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.") These factors do not support a claim that the speech is commercial.

First, Moving Defendants do not concede the speech to be *advertisements*. Second, as in *Tobinick,* the speech does not discuss any products or services for sale. Third, there is no basis to suggest an economic motivation for the speech. *Compare Tobinick*, *supra* at 952 ("Even if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for memberships may generate revenue"); *Burstyn v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded

---

[13]    Klayman was counsel to the losing plaintiff in *Farah*.

by the First Amendment").   Aside from this threshold defect, as explained above, Moving Defendants did not make any false statements of fact that violate the Lanham Act.[14]

The Lanham Act claim is nothing more than Klayman's defamation claims in different clothing.  The facts here, and the injuries alleged, thus fall outside the "zone of interests" of the Lanham Act, and Klayman cannot avail himself of it.  *See Lexmark Int'l v. Static Control Comps.*, 572 U.S. 118, 130 (2014).  A false advertising claim only falls within the statute "zone of interests" where a plaintiff "allege[s] an injury to a commercial interest in reputation or sales."  *Id.* at 131-32.  Klayman does no more than allege harm to his personal reputation which, as Judge Altman observed, "appears to lie *well* outside the zone of these interests."  (ECF No. 5-1 at 240) (emphasis in original).

### 4.3    Klayman Has No Actionable FDUTPA Claim

Klayman brings a cause of action for violation of FDUTPA based on the same facts as his defamation and Lanham Act claims.[15]  The statute prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices **in the conduct of any trade or commerce**."  *Waste Pro USA v. Vision Constr. ENT, Inc.*, 282 So. 3d 911, 917 (Fla. 1st DCA 2019) (emphasis added).  A plaintiff must demonstrate that the defendant committed a deceptive act or unfair practice which was the cause of actual and identifiable damages suffered by the plaintiff.  *See Virgilio v. Ryland Group, Inc.*, 680 F. 3d 1329, 1338 n.25 (11th Cir. 2012).  An "unfair practice" under this law is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*,

---

[14]    Klayman also mentions that "[c]oercion and extortion was also used to harm, damage and eliminate Plaintiff as a competitor, in addition to the above referenced false advertising."  (ECF No. 53 at ¶ 153.)  This is a bald conclusion with no factual support, and may be ignored.

[15]    That FDUTPA is statutory should not exempt it from the "actual malice" test, and this claim should be denied on this ground as well.  "[N]ot all inappropriate, disgusting speech is tortious, and not all otherwise-tortious speech can be banned consistently with the First Amendment. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988)."  *Hammer v. Sorensen*, 2018 U.S. Dist. LEXIS 196425, at *2 (N.D. Fla. Nov. 17, 2018).

782 So. 2d 489, 499 (Fla. 4th DCA 2001)).   A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, *to the consumer's detriment*."  *PNR*, 842 So. 2d at 777 (emphasis added).

As set forth above, Moving Defendants did not make any false statements of fact.  There is nothing unfair or deceptive about criticizing an individual on a radio broadcast with true statements or expressions of colorful opinion.  Klayman does not show Stone's statements are factual representations about the quality of Klayman's goods or services, and he does not show how consumers could potentially be harmed by the statements; he asserts it with no supporting facts.  Moreover, Klayman fails to allege any culpable conduct by Moving Defendants, other than allowing Stone to speak on their radio program.  This claim is duplicative of Klayman's defamation claims, and it is futile.  "[T]ag-along" claims, including FDUTPA, based on the same underlying facts as in a dismissed defamation count must also be dismissed.  Accordingly, Plaintiff's claims for commercial disparagement and violation of FDUTPA is also futile.  *See Bongino v. Daily Beast Co.*, 2020 U.S. Dist. LEXIS 208381, at *17 (S.D. Fla. Aug. 6, 2020) citing *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014).

Furthermore, FDUTPA only applies "in the conduct of any trade or commerce." *Vision Constr. ENT*, 282 So. 3d at 917.  "Where the allegedly violative action is the publication of information," FDUTPA only applies to commercial speech.  *Bongino, supra.* at *17-18.  "[M]agazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech." *Tobinick v. Novella*, 848 F.3d 935, 952 (11th Cir. 2007).  The statements did not advertise Infowars to the detriment of Klayman's purported broadcasting career—they were about his legal abilities, an area in which Moving Defendants do not compete.  Thus, he does not meet the "trade or commerce" element.

Due to the weakness of Klayman's FDUTPA claim, Moving Defendants should be awarded their costs and attorneys' fees.  Fla. Stat. § 501.2105 (1) provides that "[i]n any civil litigation resulting from an act or practice involving a violation of this part … the prevailing party

RANDAZZA | LEGAL GROUP

… may receive his or her reasonable attorney's fees and costs from the nonprevailing party."[16] In rendering FDUTPA fee awards, courts typically consider several factors, including the merits of the parties' positions and whether the claim was frivolous or brought in bad faith. *See Humane Soc'y of Broward County, Inc. v. Fla. Human Soc'y*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007) (citing *Rosen v. Rosen*, 696 So. 2d 697, 700-01 (Fla. 1997)). Klayman's FDUTPA claim has no merit and rehashes the other failed claims for the purpose of harassing Moving Defendants. This claim is objectively meritless and entitles Moving Defendants to a fee award.

### 4.4    Klayman Has No Tortious Interference Claim

The only new factual material in the proposed amendment is in Klayman's tortious interference claim, alleging "Defendants and Stone are also tortuously [sic] interfering with Mr. Klayman by causing to be filed and then financing frivolous bar complaints against him," specifically bar complaints "from Pete Santilli and Dennis Montgomery." (ECF No. 53 at ¶ 185.) The only alleged support is a link to a removed YouTube video that allegedly "prominently features [Moving Defendants, Stone, and Santilli] and Alex Jones actually directly tells Pete Santilli that Stone recommended him." (ECF No. 53 at ¶ 187.) Recommended him for what?

The elements of this claim are "(1) the existence of a business relationship … (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). The alleged business relationship "must afford the plaintiff existing or prospective legal or contractual rights." *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988).

---

[16]  Klayman is exposed to fee liability by invoking FDUTPA. *See Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 369 (Fla. 2013) (holding "[b]y invoking FDUTPA and seeking redress under its remedial provisions, Horowitch exposed himself to both the benefits and the possible consequences of that act's provision … simply because FDUTPA is ultimately held to have no application and does not provide a plaintiff with a basis for recovery … does not negate a defendant's status as a prevailing party in an action filed by a plaintiff under that act").

Klayman makes no factual allegations regarding most of the elements.  He provides the unsupported conclusion that he "has numerous business relationships, as well as potentials for other new business relationships," but provides nothing in support.  (ECF No. 53 at ¶¶ 192-93.)  Furthermore, while he alleges "significant pecuniary damages directly and proximately caused by the Infowars Defendants' deceptive and unfair practices" (*id*. at ¶ 195), he does not allege that these allegedly extant or potential business relationships have been breached or otherwise harmed.

Klayman also does not appear to make any allegations of conduct performed by Moving Defendants.  He lumps all Defendants and Stone together when describing the conduct alleged in this claim, but throughout the rest of the proposed amended complaint he also alleges Moving Defendants published statements that were uttered solely by Stone.  By alleging every Defendant took every unlawful action when that is demonstrably not the case, the Court cannot accept as true that Moving Defendants had any personal involvement in the alleged scheme to file frivolous bar complaints.  Klayman's sole factual allegation specific to Moving Defendants is Alex Jones allegedly telling Santilli that Stone recommended him.  This does not support Klayman's claim and the Court cannot draw any inferences from it that would help Klayman.

The claim also fails due to Florida's absolute privilege for filing bar complaints.  *See Charles*, 729 So. 2d at 443.  Klayman conspicuously avoids alleging that Moving Defendants filed any bar complaints, as that would be easily disprovable, instead relying on the more oblique allegation that Moving Defendants caused them to be filed and are funding them.  If Klayman is trying to skirt the absolute privilege, he will be unsuccessful, as the privilege must necessarily extend to individuals participating in the filing and maintenance of a bar complaint if the purposes of the privilege, to encourage valid grievances against attorneys, are to be furthered.

Moreover, this claim is invalid for lack of proximate causation.  If Klayman were to be disbarred, and thereby rendered unable to practice law, that would be on account of the Florida Bar, the D.C. Bar, or wherever else Klayman is licensed proving Klayman violated the applicable rules of professional conduct.  If the bar complaints are frivolous as alleged, they cannot, by

definition, result in his disbarment and the resulting alleged harm.  If they are meritorious, that is of Klayman's own misbehavior for which no other person is responsible.  Thus, this claim is futile.

### 4.5     Defendants Did Not Act in Concert with Stone or any Other Defendant

Klayman's proposed amended complaint hinges exclusively on the bare assertions that Moving Defendants acted "in concert" with one another and Stone.  Klayman has already lost on this, and had an Anti-SLAPP order entered against him for trying to use this theory.  *Corsi v. Stone*, Case No. 2019CA013711AXX (Palm Beach Cty., Aug 12, 2020).[17]  It is unclear why he thinks it should work here, or why he has made no attempt to make the argument more convincing after having the benefit of being sanctioned, already, for such a baseless argument.

While Klayman does not bring a civil conspiracy claim, he appears to be asserting one. The elements of a conspiracy claim are: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). "General allegations of conspiracy are inadequate." *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999).  "Bald allegations that a conspiracy existed are insufficient." *Ferguson v. Destefano*, 2010 U.S. Dist. LEXIS 157306, at *25 (S.D. Fla. Oct. 6, 2010) *quoting Anderson v. Law Firm of Shorty,* 393 F. App'x 214, 217 (5th Cir. 2010).  Factual allegations supporting a conspiracy claim "must be clear, positive and specific."  *Bond v. Koscot Interplanetary, Inc.*, 246 So. 2d 631, 635 (Fla. 4th DCA 1971).  A corporation cannot conspire with its agents or employees unless they "had a personal stake separate and distinct from that of the corporation."  *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 862, 865 (Fla. 3d DCA 2006).

The proposed amended complaint consists of bald assertion after bald assertion.  Although Klayman asserts Moving Defendants acted in concert with or as surrogates for Stone, with the word "concert" over a dozen times, no facts alleging how they acted in concert or how they were

---

[17]   ECF No. 5-1 at 186.

surrogates are set forth.  In fact, Dr. Corsi, represented by Mr. Klayman, lost on this "surrogacy" theory recently in a similar claim in the absence of "a scintilla of admissible evidence to support" it. (*See* ECF No. 5-1 at 185-88.)[18]  At most, Klayman alleges that Alex Jones and Shroyer are employees or agents of Infowars and FSS and that Roger Stone appeared on Moving Defendants' radio broadcasts.  That is it.  Klayman does not identify an objective, a meeting of the minds regarding this non-existent objective, any unlawful acts, or any resulting damages.[19]

"[C]onclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" that depends on existence of a conspiracy.  *Kearson v. Southern Bell Tel. & Tel. Co*., 763 F.2d 405, 407 (11th Cir. 1985).  To satisfy the heightened pleading standard for conspiracy claims, the plaintiff "must show some evidence of agreement between the defendants."  *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890-91 (11th Cir. 2007) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002)); *compare Diaz-Martinez v. Miami-Dade County*, 2009 U.S. Dist. LEXIS 84366 (S.D. Fla. Sept. 10, 2009) (conclusory allegation that police officers "agreed among themselves and with other individuals to act in concert in order to deprive [Plaintiff] of his clearly established Fourth and Fourteenth Amendment rights … is simply insufficient to satisfy Plaintiff's burden").  Mr. Klayman was required to show Moving Defendants and Stone were in a conspiracy to defame him, not merely that they knew each other.  Having failed to so, no conspiracy liability can be found.

Furthermore, there are no allegations as to Infowars or FSS independent of the natural-person defendants.  Thus, absent any viable claim against the individuals, the claims against

---

[18]   Intuitively, Klayman's "surrogate" theory doesn't make sense.  A surrogacy relationship is one in which person A (here, Stone) has person B (here, Moving Defendants) take actions on behalf of person A to person A's benefit.  Person B's actions are attributable to Person A because of this relationship.  Klayman's theory is exactly the opposite, because he only alleges person A (Stone) made defamatory statements.  This theory would only be coherent if Moving Defendants made statements and Klayman wanted to impute liability to Stone, not the other way around.  Klayman actually alleges that Moving Defendants are bystanders who did not stop Stone, not that they acted as surrogates of Stone.

[19]   Klayman generally alleges damages resulting from the acts underlying his claims, but there are no allegations related to damages caused by the non-existent conspiracy.

RANDAZZA | LEGAL GROUP

Infowars and FSS must fail as well.[20]  And to the extent Klayman's claims are premised on Alex Jones and Shroyer's alleged conspiracy with Infowars and FSS, they are barred by the intra-corporate conspiracy doctrine, which holds that a corporation cannot conspire with employees acting in the scope in the scope of their employment, and thus cannot conspire among themselves. *Valdes v. GAB Robins N.A.*, 924 So. 2d 862, 865 (Fla. 3d DCA 2006).

### 4.6    Klayman Did Not Comply with Fla. Stat. § 770.01; his Claims are Time-Barred

Klayman cannot maintain his action for defamation as he failed to comply with the pre-suit notification provisions of Fla. Stat. § 770.01.  This statute provides that "[b]efore any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory."  This requirement applies both for the publishing entity and the individuals who work for it.  *Mancini v. Personalized Air Conditioning & Heating*, 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997).  And though the statute refers to newspapers, it protects all individuals and entities engaged in news reporting activities.  *See Comins v. VanVoorhis*, 135 So. 3d 545, 560 (Fla. 5th DCA 2014) (holding that "[t]he presuit notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium the purpose of which is the free dissemination of news or analytical comment on matters of public concern").

Klayman did not provide pre-suit notice to Moving Defendants, nor does he allege to have done so.[21]  His failure to comply with this requirement "requires dismissal of the complaint for failure to state a cause of action."  *Id*. (citing *Gifford v. Bruckner*, 565 So. 2d 887 (Fla. 2d DCA

---

[20]   To the extent Klayman premises liability on Defendant Alex Jones's role as alleged owner of Infowars or FSS, his claims also fail because both Texas and Florida law provide that the owner of an LLC is not liable for the alleged torts of the LLC.  *See* Tex. Bus. Orgs. Code §§ 101.113, 101.114; *Chico Auto Parts & Serv. v. Crockett*, 512 S.W.3d 560, 570 (Tex. App.—El Paso 2017, pet. denied); Fla. Stat. § 605.0304(1).  Klayman makes no allegations that could pierce the corporate veil, and thus Alex Jones cannot be liable.  *Crockett*. 512 S.2.3d at 572.

[21]   Klayman sent notice well after filing this suit, but that is not sufficient.  Exhibit 3 to the putative Amended Complaint contains letters sent over 6 months after this action was initiated.

1990)).  This is not a defect that can be cured by belated notice and amendment.  *See Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 610 (Fla. 4th DCA 1975); *Canonico v. Callaway*, 26 So. 3d 53, 55 (Fla. 2d DCA 2010) (strictly construing § 770.01 such that even four days' presuit notice required dismissal).  The court in *Sentinel Star* made it clear that a plaintiff could not cure his failure to provide 770.01 notice by subsequent notice and amendment because the cause of action must exist *at the time the complaint is filed*, *not when it is amended*.  316 So. 2d at 610.  This Court in *Tobnick v. Novella*, 2015 U.S. Dist. LEXIS 31884, *23-24 (S.D. Fla. 2015) likewise acknowledged that "notice must be given *prior* to the filing of the suit – and understandably so, as post-suit notice is meaningless, both in concept and in practice."  Where the statute of limitations has run and it is no longer possible to provide timely pre-suit notice, summary judgment is appropriate.  *Id*. at *31-32 (citing *Bayliss v. Cox Radio, Inc.*, 2010 U.S. Dist. LEXIS 111758, *11-12 (M.D. Fla. Oct. 13, 2010); *see also, Comins, supra* (upholding summary judgment upon a failure to comply with 770.01 and the statute of limitations had run).

Texas has a similar statute that requires litigants to provide pre-suit notice, the Texas Defamation Mitigation Act ("TDMA"), Tex. Civ. Prac. & Rem. Code § 73.055, which also mandates dismissal for failure to comply with its provisions.  *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).  Florida's statute of limitations for defamation actions is two years, meaning Klayman could dismiss his claims, send a 770.01 notice, and re-file them.[22]  *See* Fla. Stat. § 95.11 (4)(g).  Texas, however, has a 1-year statute of limitations for defamation actions, which expired before Klayman filed this action.  *See* Tex. Civ. Prac. & Rem. Code § 16.002(a); *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019).  Florida considers the statutes of limitations of foreign states to be substantive and does not automatically apply the limitation period of the forum state.  *See Fulton County Adm'r v. Sullivan*, 753 So. 2d 549, 553 (Fla. 1999) (appropriate to apply Georgia statute of limitations).  This Court should apply Texas's statute of

---

[22] He could, theoretically, have done so.  However, since he already voluntarily dismissed once, and re-filed in Florida without abiding Fla. Stat. § 770.01, he would be subject to the consequences of having dismissed twice.  *See* Fed. R. Civ. P. 41(a)(1)(B).

limitations, as it is meant for the benefit of Moving Defendants, so that they do not have the prospect of litigation hanging over their heads years after allegedly tortious conduct has taken place. This is especially so in internet defamation cases; else, a defendant would have to consider every possible statute of limitations, which would be an onerous burden inconsistent with the First Amendment. Particularly with Stone not being a defendant, Texas thus has the most significant relationship for purposes of determining the applicable statute of limitations.[23]

### 4.7    Klayman Filed this Suit in Violation of Fla. Stat. § 768.295

Moving Defendants' request for attorneys' fees under Fla. Stat. § 768.295 is still unresolved. Denial of leave to amend will necessarily result in dismissal with prejudice under the Court's prior order. As the Court has not yet granted leave for Klayman to amend, Moving Defendants reiterate their request for fees under Florida's Anti-SLAPP statute and incorporate by reference their prior briefing on this issue. (*See* ECF No. 5-1 at 16; ECF No. 39 at 11.)

### 4.8    Further Prosecution of this Action is Improper in the Absence of Personal Jurisdiction

If the motion for leave were granted, Moving Defendants would move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) immediately. At the time the original complaint was served, Moving Defendants took Klayman at his word that he lived in Florida. However, Stone uncovered significant evidence that this is not true. *See* ECF No. 27 (incorporated by reference). As a consequence, the "effects test" cannot have been satisfied. *See Licciardello v. Lovelady,* 544 F.3d 1280, 1285-88 (11th Cir. 2008). Klayman was able to sidestep adjudication of that issue. The absence of personal jurisdiction will be newly implicated if the court finds reason to allow the amendment despite the fact that it is factually and legally futile.

---

[23]    Florida law recognizes *dépeçage*, requiring conflicts of law to be evaluated issue by issue. *See Dopson-Troutt v. Novartis Pharm. Corp.,* No. 8:06-CV-1708-T-24-EAJ, 2013 U.S. Dist. LEXIS 102135, at *7 (M.D. Fla. July 22, 2013). The Court is thus not required to the same state's law for all issues, and may properly apply the Texas statute of limitations while applying Florida defamation law and Florida's Anti-SLAPP statute. This Court does not have the discretion to decline to apply Fla. Stat. §770.01, however, as it is jurisdictional.

**5.0     CONCLUSION**

The Court should deny leave to amend and dismiss this action with prejudice. Klayman has tried to assert these same claims time and again, and the proposed amended complaint is no more meritorious. It is time for this abuse to end, and for the Court to award Moving Defendants their attorneys' fees.

Dated: December 18, 2020                    Respectfully submitted,

                                            /s/ Marc J. Randazza
                                            Marc J. Randazza (FL Bar No. 625566)
                                            RANDAZZA LEGAL GROUP, PLLC
                                            2764 Lake Sahara Drive, Suite 109
                                            Las Vegas, NV 89117
                                            Telephone: 702-420-2001
                                            ecf@randazza.com

                                            Attorneys for Defendants
                                            Infowars, LLC; Free Speech Systems, LLC;
                                            Alex E. Jones; and Owen Shroyer

Case No. 0:20-cv-61912-AMC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of December 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Employee,
Randazza Legal Group, PLLC

Opposition to Motion for Leave to Amend
0:20-cv-61912-AMC