**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN

                Plaintiff

      v.

INFOWARS, LLC, et al

               Defendants.

**Case Number:   0:20-cv-61912**

## PLAINTIFF LARRY KLAYMAN'S  REPLY TO DEFENDANT DAVID JONES'S OPPOSITION TO MOTION FOR STATUS CONFERENCE ON DISCOVERY AND RELATED ISSUES

Plaintiff Larry Klayman hereby replies to Defendant David Jones's Opposition to Motion for Status Conference on Discovery and Related Issues, which paints a highly misleading account of the state of the related case in the U.S. District Court for the Western District of Texas as well as before this honorable Court.

First, the Honorable Lee Yeakel, a federal judge with many of years of experience on the Texas state and federal bench, at the outset stated the following with regard to the firm trial date now set for August 2021. The Magistrate Judge, who is set to retire this month, and who is not ultimately in charge of the related case before the Western District, displayed an ill- informed unfamiliarity with the actual facts of the case during a recent conference. Here is what Judge Yeakel said about the trial date:

> You're going to have to figure how much time you want because once I get it set, once I fill in after a subsequent conference your trial month and final pretrial conference date and time, you're not likely to get a continuance or a postponement.

> I like to try lawsuits. If I had my way and could pass one law, I would do away with motion practice altogether, and you would either settle your case or try your case, the way it was in the olden days.

*See* Exhibit 1 -- Attached transcript excerpt of May 21, 2020

Second at the outset of the related case before the Western District of Texas Judge Yeakel brushed aside local counsel for David Jones's argument that his client David Jones had nothing to do with the per se defamation of both Mr. Klayman and the co-plaintiff in that case, Dr. Jerome Corsi. Here again is what Judge Yeakel said:

> No. Mr. Wachen, that's still argument. I don't want to hear about the substance of the motions right now. This is a status conference. And I am sure you're right about the uniqueness of your client, but I can't tell you how many times I hear about the uniqueness of clients and how they're differently situated than anybody else.
>
> ….
>
> I understand. I have never encountered a defendant that wanted to be in a lawsuit or be sued. Never happened in private practice. None of my clients were ever properly sued when I was in private practice. Everyone I sued when I represented plaintiffs deserved to be in the lawsuit.

*See* Exhibit 2 – Attached transcript excerpt of May 21, 2020.

David Jones' argument that his client has nothing to do with the defamation of Plaintiff Klayman is even refuted by the affidavit of Alex Jones's ex-wife, Kelly Morales, who swears under oath that David Jones personally runs and is thus in control of defamatory content on Infowars along with his son Alex Jones. Exhibit 3.

Third, the "shotgun" pleading which the Honorable Darrin Gayles referred to has been cured with the Amended Complaint, and the allegations of defamation per se, defamation generally and defamation by implication set forth prima facie actionable speech, not subject to the Florida Anti-SLAPP statute, even were it applicable -- which it is not. Thus, this case should proceed to discovery  if it is not otherwise transferred to the Western District of Texas.

 Indeed, counsel for Defendant David Jones initially favored transfer this but was effectively overridden by the co-defendants, the Infowars Defendants. Indeed, when Defendant

David Jones' counsel alludes to an alleged lack of personal jurisdiction over his client in Florida, he is admitting that the case can and should be transferred to Texas which is where David Jones and the Infowars Defendants reside, even though as an injured Florida citizen in this district, where the defamation per se was also published, Mr. Klayman had a right to choose this appropriate forum in the U.S. District Court for the Southern District of Florida. However, for purposes of judicial economy and the parties' economy, this honorable Court should revisit the issue of transfer to the Western District of Texas. The only reason the Infowars Defendants want the case to remain in the Southern District is that they misleadingly assert that the Florida Anti-SLAPP statute will benefit them. But as set forth previously, the defamation per se of Plaintiff Klayman, particularly with regard to the demonstrably false published statement, **"He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He was 'ousted' because of a 'sexual harassment complaint.'" Am. Comp. ¶ 38.** is not subject to the Florida Anti-SLAPP statute, which does not protect per se and other defamatory speech intended to harm the victim, particularly for profit, as it the modus operandi of the Infowars Defendants, as previously detailed. *See* Exhibit 4.

For these substantial reasons, there is absolutely no way the Amended Complaint can or will be dismissed and thus there is no valid basis not to commence discovery, as well as to reconsider transfer so this case can be consolidated with the related case in the Western District of Texas. This would be in the interests not just of judicial economy but of all the parties, particularly since the Florida Anti-SLAPP statute, however violative of the Federal Rules of Civil Procedure and unconstitutional in its own right, does not in any event apply to the facts of this case. And if Mr. Klayman thought that the Western District of Texas would dismiss its case, set for trial in August of 2021, there, he would logically not be suggesting that the case herein by transferred to the Western District of Texas.

Plaintiff Klayman thanks this Honorable Court for setting the status conference on May 6, 2021, during which these important issues will be raised and discussed.

Dated: April 29, 2021                                    Respectfully Submitted,

                                                          */s/ Larry Klayman*
                                                         Larry Klayman, Esq.
                                                         7050 W. Palmetto Park Rd
                                                         Boca Raton, FL, 33433
                                                         Telephone: (561)558-5336
                                                         Email:leklayman@gmail.com

                                                         *Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th  day of April  2021, a true copy of the foregoing was filed via ECF and served to all counsel of record though the Court's ECF system.

                                                          */s/ Larry Klayman*

EXHIBIT 1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
 2                             AUSTIN DIVISION

 3   JEROME CORSI, LARRY KLAYMAN,           ) AU:20-CV-00298-LY
                                            )
 4      Plaintiffs,                         )
                                            )
 5   v.                                     ) AUSTIN, TEXAS
                                            )
 6   INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, )
     ALEX E. JONES, DAVID JONES, OWEN SHROYER, )
 7                                          )
        Defendants.                         ) MAY 21, 2020
 8
                ***********************************************
 9                  TRANSCRIPT OF TELEPHONE CONFERENCE
                     BEFORE THE HONORABLE LEE YEAKEL
10              ***********************************************

11   APPEARANCES:

12   FOR THE PLAINTIFFS:   LARRY KLAYMAN
                           KLAYMAN LAW GROUP P.A.
13                         2020 PENNSYLVANIA AVENUE NW, SUITE 800
                           WASHINGTON, D.C. 20006
14
     FOR THE DEFENDANTS:   JAY MARSHALL WOLMAN
15                         RANDAZZA LEGAL GROUP, PLLC
                           100 PEARL STREET, 14TH FLOOR
16                         HARTFORD, CONNECTICUT 06103

17                         BRADLEY JORDAN REEVES
                           REEVES LAW, PLLC
18                         702 RIO GRANDE STREET, SUITE 306
                           AUSTIN, TEXAS 78701
19
                           MARC J. RANDAZZA
20                         RANDAZZA LEGAL GROUP, PLLC
                           2764 LAKE SAHARA DRIVE, SUITE 109
21                         LAS VEGAS, NEVADA 89117

22                         DAVID SCOTT WACHEN
                           WACHEN LLC
23                         11605 MONTAGUE COURT
                           POTOMAC, MARYLAND 20854

24

25
```

```
 1                         GREGORY P. SAPIRE
                           SOLTERO SAPIRE MURRELL PLLC
 2                         7320 NORTH MOPAC EXPRESSWAY, SUITE 309
                           AUSTIN, TEXAS 78731-2311
 3
     COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
 4                         501 WEST 5TH STREET, SUITE 4152
                           AUSTIN, TEXAS 78701
 5                         (512) 391-8791

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.
```

| | | |
|---|---|---|
| 09:44:34 | 1 | months here doesn't mean anything.  I realize this case may |
| 09:44:38 | 2 | have sat around in the previous court for a while.  That's not |
| 09:44:43 | 3 | your fault; that's not my fault.  I got it for new when it got |
| 09:44:49 | 4 | filed this year, and that's what I'm picking up with. |
| 09:44:54 | 5 | You're going to have to figure how much time you want |
| 09:45:00 | 6 | because once I get it set, once I fill in after a subsequent |
| 09:45:06 | 7 | conference your trial month and final pretrial conference date |
| 09:45:16 | 8 | and time, you're not likely to get a continuance or a |
| 09:45:20 | 9 | postponement. |
| 09:45:21 | 10 | So sit down, presume for the moment that the motion |
| 09:45:28 | 11 | to dismiss is denied, and schedule your case accordingly.  And |
| 09:45:33 | 12 | then if the motions to dismiss are granted, then it just got |
| 09:45:36 | 13 | easier for everybody.  So put those dates firmly in your mind |
| 09:45:45 | 14 | because, as I said, once I have scheduled you for final |
| 09:45:50 | 15 | pretrial conference and trial, I am not likely to change those |
| 09:45:55 | 16 | dates. |
| 09:45:55 | 17 | You'll hear about this again.  I've told you about |
| 09:45:59 | 18 | the large dockets we have.  It creates far too big a ripple |
| 09:46:03 | 19 | effect through my docket if I start trying to reset things, so |
| 09:46:08 | 20 | I simply don't do it. |
| 09:46:10 | 21 | Each of you needs to understand you only have one |
| 09:46:12 | 22 | role in this case, and that's to resolve it.  And you can do in |
| 09:46:17 | 23 | one of three ways -- and you will hear this again -- you could |
| 09:46:21 | 24 | settle it or I could grant a well-taken dispositive motion for |
| 09:46:26 | 25 | one or more defendants, be it a motion to dismiss or a motion |

09:46:32   1    for summary judgment or any other nature of dispositive motion,
09:46:37   2    or you can try the case.  And I don't care which of the three
09:46:40   3    alternatives it is.
09:46:42   4            I like to try lawsuits.  If I had my way and could
09:46:47   5    pass one law, I would do away with motion practice altogether,
09:46:51   6    and you would either settle your case or try your case, the way
09:46:55   7    it was in the olden days.  And it was a much better system
09:47:00   8    before we developed this cottage industry about discovery and
09:47:04   9    motions practice.
09:47:05   10           So I'm not going to get you back here before your
09:47:07   11   trial and knock you around about why you haven't settled.
09:47:12   12   You're not going to be pushed as you go along to get your case
09:47:16   13   settled.  If you get it settled, that will be fine.  But that
09:47:20   14   is not anything that particularly bothers me.
09:47:23   15           I also don't care about controversial cases or
09:47:28   16   parties, and I don't care how long it takes to try a case.
09:47:31   17   Lengthy cases do not bother me.  However, I will tell you now
09:47:36   18   that you will get put on a clock.  At the appropriate point in
09:47:43   19   this case we will discuss how much time you're going to get to
09:47:46   20   try in your case, so you need to factor into what you're doing
09:47:49   21   that you're not going to get unlimited time to try your case.
09:47:52   22           So how long do you think you need to get in a
09:47:56   23   scheduling order for me?
09:48:02   24           MR. KLAYMAN:  Your Honor, I think we can do it in
09:48:04   25   ten days.

# EXHIBIT 2

```
09:37:43    1   no allegations about David Jones' conduct at all.  That's a
09:37:47    2   direct quote from page 3 of the decision.  There are no
09:37:53    3   allegations that he did anything wrong.  There are no
09:37:55    4   allegations that he did anything.
09:37:56    5           THE COURT:  All right.  Wait a minute.  Stop right
09:37:58    6   there.  I don't want to hear argument on any of the motions
09:38:00    7   right there.
09:38:01    8           MR. WACHEN:  Your Honor, I understand that.  But he's
09:38:03    9   in a unique circumstances, because I really think he -- he is
09:38:06   10   in the case maybe because he's the father of Alex Jones, who is
09:38:10   11   an adult and is competent to defend himself.  And I think --
09:38:14   12   and we asked in our --
09:38:16   13           THE COURT:  No.  Mr. Wachen, that's still argument.
09:38:21   14   I don't want to hear about the substance of the motions right
09:38:23   15   now.  This is a status conference.  And I am sure you're right
09:38:27   16   about the uniqueness of your client, but I can't tell you how
09:38:31   17   many times I hear about the uniqueness of clients and how
09:38:36   18   they're differently situated than anybody else.  That's an
09:38:41   19   issue for another day.
09:38:42   20           What I want to know today is what's pending right
09:38:45   21   now.  And what I've heard you say is it's now in a court that
09:38:55   22   has venue, and there are at least one -- one by your client and
09:39:07   23   perhaps others -- fully briefed motion to dismiss under
09:39:09   24   Rule 12(b)(6) that are ripe for me to rule on.
09:39:15   25           Are there any other motions that I need to pay
```

8

```
09:39:18    1    attention to at this time?
09:39:22    2              MR. WACHEN:  The only thing I would mention,
09:39:23    3    Your Honor -- and I apologize.  I'm not trying to make an
09:39:25    4    argument.  But in our status report we did ask the court to
09:39:30    5    consider an order to show cause that David Jones doesn't belong
09:39:38    6    in the case.
09:39:39    7              THE COURT:  What good would that do above and beyond
09:39:42    8    your 12(b)(6) motion?
09:39:50    9              MR. WACHEN:  Well, if Your Honor is going to take up
09:39:51   10    the 12(b)(6) motion, I guess it would be addressed there.  I'm
09:39:54   11    just looking out for my client.  He really does not want to be
09:39:58   12    in this case and doesn't belong in this case.
09:40:00   13              THE COURT:  I understand.  I have never encountered a
09:40:03   14    defendant that wanted to be in a lawsuit or be sued.  Never
09:40:06   15    happened in private practice.  None of my clients were ever
09:40:09   16    properly sued when I was in private practice.  Everyone I sued
09:40:14   17    when I represented plaintiffs deserved to be in the lawsuit.
09:40:22   18              So if it will solve your problem with your clients,
09:40:25   19    then I'm inclined to take up that on the pending motions and
09:40:32   20    not have an additional show cause.  One of the things that has
09:40:36   21    happened to you when you got moved down here from Washington is
09:40:41   22    that you got put right in the middle of one of the largest
09:40:45   23    United States District Court dockets in the country.  When I
09:40:50   24    say all hot potatoes, I wasn't joking.  We have a very complex
09:40:55   25    civil docket as well as a large civil docket here.
```

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

DR. JEROME CORSI, ET AL

Plaintiffs

     v.

             **Case Number:    1:20-cv-298-LY**

INFOWARS, LLC, et al

       Defendants.

**SWORN DECLARATION OF KELLY MORALES**

  1. I, Kelly Morales, hereby declare under penalty of perjury that the following is true and correct and based on my personal knowledge and belief.

  2. I am over the age of 18 and mentally and legally competent to make this affidavit, sworn under oath.

  3. I am the former wife of Defendant Alex Jones.  I was married to Alex Jones for 12 years and with him for 15 years and we have 3 children together. During our time together, I was involved in the activities of Alex, his father David and Infowars and am intimately knowledgeable about their activities and business structure.

  4. Based on my personal knowledge and experience, David Jones runs Infowars with Alex Jones and helps him with his activities, including fixing media stories and endorsing and/or aiding his slanderous and/or fraudulent behaviors, all for profit.

  5. Infowars, LLC is a sub-entity of Free Speech Systems, LLC ("FSS"), and David Jones is an employee of FSS, or he has been.

  6. David Jones is additionally a managing member of multiple entities that are closely held businesses, constituting financial holding companies or financial distribution centered around Infowars/Alex Jones' supplement line, which are quintessential to funding and running Infowars.

  7. Alex Jones could not function without David Jones, and has conspired with him on the past to commit this breach of fiduciary duty and fraud on my business/estate with Alex Jones. While David Jones did this, he slandered and/or defamed me to experts and assisted Alex Jones and his attorneys to do the same, so as to steal/hide my estate and his grandchildren's inheritance.

  8. Alex Jones is quasi-illiterate, and cannot use technology or apps such as email with any fluency, and he cannot function without assistance from those around him, including David Jones.

  I hereby swear under oath and penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

  Executed on September 30, 2020

Kelly Morales

2

EXHIBIT 4

# Alex Jones, Infowars, and the Sandy Hook Defamation Suits



Alex Jones and his website *Infowars* have been the subject of multiple defamation lawsuits over his repeated claims that the 2012 shooting at the Sandy Hook Elementary School in Newtown, Connecticut was a "giant hoax." Jones and *Infowars* continued to make these claims on broadcasts and in articles published on his website over the course of many years. Jones' followers have harassed the families of the victims and many, in turn, filed suit against him for making defamatory statements that were knowingly false, or made with a disregard for the truth.

*For news, analysis & additional materials read on.*

*First Amendment Watch Teaching Guide:* Can First Amendment Defenses Save Provocateur Alex Jones From The Sandy Hook Libel? (https://firstamendmentwatch.org/first-amendment-watch-teacher-guide-can-first-amendment-defenses-save-provocateur-alex-jones-from-the-sandy-hook-libel-suits/)

News & Updates  Analysis & Opinion  Documents & Resources

News & Updates

## April 5, 2021: U.S. Supreme Court Turns Down Appeal from Alex Jones

The U.S. Supreme Court rejected hearing an appeal from Alex Jones on April 5th. Jones was appealing a court sanction imposed by Connecticut Trial Court Judge Barbara Bellis after he made alarming comments on his radio show, Infowars, about an attorney for the families of the Sandy Hook victims. The Court announced its decision without a written explanation.

In July 2020, the Connecticut Supreme Court characterized Jones' comments as an "imminent and likely threat to the administration of justice," and therefore the sanctions were not inconsistent with the First Amendment.

The sanctions include a prohibition on Jones filing a motion to dismiss the ongoing defamation lawsuit against him.

Jones' attorney said that the decision of the U.S. Supreme Court was "a disappointment."

Associated Press (https://apnews.com/article/connecticut-shootings-lawsuits-alex-jones-school-shootings-59360449ed878c5cdfcbb550291c90a2)

## January 25, 2021: Texas Supreme Court Says Defamation Suits Against Alex Jones Can Continue (https://firstamendmentwatch.org/texas-supreme-court-says-defamation-suits-against-alex-jones-can-continue/)

On January 22nd, the Texas Supreme Court rejected conspiracy theorist Alex Jones' request to toss four defamation lawsuits filed by parents whose children died in the 2012 mass shooting at Sandy Hook Elementary School.

The parents filed the suits in Travis County, Texas, where Jones and his media company, InfoWars, are based. The suits claim that Jones' statements calling the mass shooting a "giant hoax," and accusing the parents of faking their children's death were defamatory and caused the families emotional distress.

Defamatory statements are one of the few categories of speech that the First Amendment does not protect. For private persons, (https://firstamendmentwatch.org/libel-new-york-times-v-sullivan-sets-standard/) such as the victims' parents, to prove that another person's speech defamed them, they need to show that the defendant's statements were false and harmful, and that they published them carelessly.

See also: Can First Amendment Defenses Save Provocateur Alex Jones From The Sandy Hook Libel? (https://firstamendmentwatch.org/first-amendment-watch-teacher-guide-can-first-amendment-defenses-save-provocateur-alex-jones-from-the-sandy-hook-libel-suits/)

In their appeal to the Supreme Court, Jones' lawyers claimed that his statements were protected under the Texas Citizens Participation Act (https://texaslawhelp.org/article/slapp-lawsuits-and-texas-citizens-participation-act-introduction) because he was speaking on a matter of public concern.

"The pursuit of so-called 'conspiracy theories' concerning controversial government activities has been a part and parcel of American political discourse since our Founding, and it is protected by the First Amendment," the lawyers wrote in a brief for one of the lawsuits.

Mark Bankston, the attorney representing the parents, dismissed this notion in a response (https://infowarslawsuit.com/wp-content/uploads/2018/06/april-16-2018-heslin-original-petition-file-stamped.pdf) filed on behalf of Neil Heslin. "[A]ccusing Mr. Heslin of lying about holding the body of his dead son does not amount to a matter of public concern," Bankston wrote.

The ruling, first reported by the *Austin American-Statesman* (https://www.statesman.com/story/news/2021/01/22/alex-jones-sandy-hook-parents-texas-supreme-court/6670360002/), also gave a fifth plaintiff permission to continue with his defamation lawsuit against InfoWars and reporter Kit Daniels for mistakenly labeling him as a suspect in the 2018 mass shooting at Parkland High School.

**July 23rd, 2020: Connecticut Supreme Court Upholds Sanctions Against Alex Jones**

The Connecticut Supreme Court upheld a lower courts' sanctions against conspiracy theorist Alex Jones for threatening the attorney and law firm representing Sandy Hook families in a defamation case against Jones.

"[T]he sanctions did not run afoul of the First Amendment because they addressed speech that was an imminent and likely threat to the administration of justice. Accordingly, it was not an abuse of the trial court's discretion to sanction the defendants for their discovery violations and Jones' vituperative speech," the Connecticut Supreme Court ruled on July 23rd.

In 2019, Jones accused Charles Mattei, and his law firm, Koskoff Koskoff & Bieder, of planting images of child pornography on his computer to discredit him. In an angry outburst during a live broadcast, Jones appeared to ask his fans to target Mattei.

"I pray for divine intervention against the powers of Satan. I literally would never have sex with children. I don't like having sex with children. I would never have sex with children. I am not a Democrat. I am not a liberal. I do not cut children's genitals off like the left does. And so, if they want war — you know, it's not a threat. It's like an AC/DC song. If you want blood, you've got it. Blood on the streets, man," Jones said in a televised broadcast.

On the same broadcast, Jones pounded a picture of Mattei and shouted, "I'm gonna kill … Anyway I'm done. Total war. You want it, you got it."

The ruling allows the defamation suit to move towards a jury trial in the fall.

News Times (https://www.newstimes.com/local/article/Supreme-Court-upholds-sanctions-for-Alex-Jones-15429879.php)

Case 1:22-cv-61912-AMC Document 68 Entered on FLSD Docket 04/09/2021 Page 19 of 27

**March 25, 2020: Texas Appeals Court Rejects Alex Jones' Motion to Dismiss Heslin Defamation Suit**
(https://firstamendmentwatch.org/texas-appeals-court-rejects-alex-jones-motion-to-dismiss-heslin-defamation-suit/)

On March 25th, the Texas Court of Appeals rejected Infowars founder Alex Jones' motion to dismiss a defamation lawsuit brought by Neil Heslin, whose son was killed in the 2012 mass shooting at Sandy Hook Elementary School. The judge has ordered Jones to pay Heslin $22,250 in attorney fees, making the total amount Jones now owes Heslin just under $150,000.

Heslin sued Jones in April 2018 over false statements he made on his site, claiming that the mass shooting in Sandy Hook was a government hoax and the victims' parents were "crisis actors". A number of Jones' readers went on to harass families of Sandy Hook victims, including the Heslins, causing them significant emotional distress.

Jones has tried on multiple occasions to have the lawsuit dismissed on free speech grounds, albeit with little success.

In October 2018, Jones was ordered to pay $25,000 for failing to comply with a discovery order. Then, in December 2019 (https://firstamendmentwatch.org/alex-jones-ordered-to-pay-100000-in-legal-fees-in-defamation-lawsuit/), a Texas district court judge ruled against Jones' motion to dismiss Heslin's lawsuit, finding that Heslin had met the standard for defamation under state law. The district judge ordered Jones to pay an additional $100,000 in legal costs to the attorneys representing Heslin.

In his opinion (https://www.courthousenews.com/wp-content/uploads/2020/03/Infowars.pdf), Judge Scott H. Jenkins affirmed the district court's denial of Jones' motion to dismiss.

"We affirm the district court's dismissal of Appellants' motion to dismiss, and we grant Heslin's motion for sanctions and award him $22,250 for attorney's fees," Jenkins opinion reads.

Huffington Post (https://www.huffingtonpost.co.uk/entry/alex-jones-loses-another-sandy-hook-court-battle-must-now-pay-150000-in-court-costs_n_5e7cf82dc5b6cb9dc19cadf0?ri18n=true&utm_source=CJR+Daily+News&utm_campaign=23284480cc-EMAIL_CAMPAIGN_2018_10_31_05_02_COPY_01&utm_medium=email&utm_term=0_9c93f57676-23284480cc-174753011&mc_cid=23284480cc&mc_eid=e4edaef73b&guccounter=2) Opinion (https://www.courthousenews.com/wp-content/uploads/2020/03/Infowars.pdf)

**December 20, 2019: Alex Jones Ordered to Pay $100,000 in Legal Fees in Defamation Lawsuit**
(https://firstamendmentwatch.org/alex-jones-ordered-to-pay-100000-in-legal-fees-in-defamation-lawsuit/)

On December 20th, a Texas district court judge ordered Alex Jones to pay more than $100,000 in legal fees in a defamation suit brought by the father of one of the victims of the Sandy Hook Elementary School mass shooting.

The defamation suit brought by Neil Heslin is one of several suits filed against Jones by the families who lost children in the school shooting on December 14, 2012. Following the massacre, Jones repeatedly stated on his website, Infowars, that the shooting was a hoax and had been staged by the U.S. government in an attempt to confiscate Americans' guns.

The order by Travis County District Judge Scott Jenkins comes after Jones ignored a court order to provide documents and witnesses. Jenkins also ruled against a motion from Jones's attorneys to dismiss the suit, adding additional legal fees that brought the amount that Jones has had to pay to $126,024. (Jones was ordered to pay $25,875 last October for failing to comply with another ruling.) A trial date for the Heslin case has not yet been scheduled.

In an email to the *Daily Beast*, Heslin's lawyer, Mark Bankston, said that the suit could have been avoided if Jones had accepted responsibility for his lies and his harassment of Heslin and other Sandy Hook parents. "Instead, Mr. Jones seems to prefer exiting into the dustbin of history in the most expensive and embarrassing way possible," Bankston wrote.

Daily Beast (https://www.thedailybeast.com/alex-jones-and-infowars-ordered-to-pay-dollar100k-in-court-costs-for-sandy-hook-case) Hartford Courant (https://www.courant.com/breaking-news/hc-br-alex-jones-sandy-hook-legal-fees-20191231-wrj2xzoporh6lbk76bv7sdniue-story.html) CNN (https://www.cnn.com/2019/12/31/media/alex-jones-sandy-

**December 12, 2019: Lawyer files motion in *Heslin v Jones* case to hold Jones and *Infowars* liable without trial**

Mark Bankston, the attorney representing Neil Heslin in his defamation lawsuit against Alex Jones, filed a motion on December 12th, 2019 asking that the judge hold Jones and *Infowars* liable without trial.

In his motion, Bankston argues that the defendants committed "willful and flagrant discovery abuse." This behavior allegedly includes refusing to make good faith efforts to answer written discovery or respond at deposition, withholding tens of thousands of emails relating to Sandy Hook, and erasing many of the computers prior to collection efforts.

"Defendants have been given ample opportunity to take these lawsuits seriously and obey the rule of law," the filing said. "Yet despite a rotating cast of counsel, Defendants have remained stubborn in their refusal to respect the integrity of the proceedings."

The jury wouldn't decide whether Jones' was guilty, it would only be used to determine the amount of damages Jones. The motion is scheduled to be heard by the court on Wednesday, December 18th.

The Hill (https://thehill.com/regulation/court-battles/474335-lawyer-seeks-judgement-without-a-trial-for-alex-jones-in-sandy-hook)

**July 10, 2019: Connecticut Supreme Court Agrees to Hear Alex Jones' Appeal to Review Trial Court's Sanctions**

The Connecticut Supreme Court has agreed to review Alex Jones appeal regarding sanctions imposed by a trial court judge over alleged threats to lawyers in Sandy Hook case.

On June 17, 2019, trial Court Judge Barbara Bellis denied Jone's lawyers requests to pursue a special motion to dismiss the lawsuit by the Sandy Hook families. She also ordered Jones to pay for all legal fees associated with an incident that occurred during the discovery process when dozens of emails from Jones and Infowars were found to contain child pornography. An investigation cleared Jones of any wrongdoing, and revealed that none of the emails had ever been opened.

In his 10-page appeal to the Supreme Court, Jones' lawyer, Norm Pattis, argues that the penalties imposed on his client are too harsh, and threaten his First Amendment rights to speak on a matter of public interest.

According to the Hartford Courant, the Connecticut Supreme Court will now hold "a full hearing on Pattis' appeal" in which they "could overturn Bellis' ruling" and "restore Jones' right to possibly have the case dismissed."

The hearing will likely take place in September.

Hartford Courant (https://www.courant.com/news/connecticut/hc-news-sandy-hook-lawsuit-reversed-20190710-2jqandrmmrgn5okxfhaugoxkwm-story.html)

**June 24, 2019: Alex Jones Hit With Sanctions, His Attorney Requests Connecticut Supreme Court to Review**

The lawyer defending Alex Jones in the defamation suit brought the parents of some of the Sandy Hook victims has asked the Connecticut Supreme Court to review sanctions imposed on Jones by a trial judge.

On June 18, Bridgeport Superior Court Judge Barbara Bellis imposed the sanctions during an emergency hearing after Jones threatened the Sandy Hook families' attorney, Christopher Mattei, on Jones' webcast.

Jones' rant was triggered by a recent revelation that a dozen emails retrieved from him and his Infowars website during the discovery process had images of child pornography attached. The FBI investigated, and determined that they were sent to Jones from outside of his organization, and no one ever opened the files to view the images.

televised webcast, however, Jones accused Mattei and his law firm, Koskoff Koskoff & Bieder, of planting the images, and made threatening comments towards Mattei and his firm.

Norm Pattis, Jones' lawyer, is arguing that his client was only exercising his First Amendment right to speak on a matter of public interest.

Hartford Courant (https://www.courant.com/news/connecticut/hc-alex-jones-sandyhook-lawsuit-appeal-0625-20190624-5rslpozzkvaf7mgyqd2yidjfze-story.html)

## May 2, 2019: Alex Jones and InfoWars Banned on Facebook

Facebook is banning some controversial, well-known figures for violating the social media giant's policies on hate speech and promoting violence.

The list includes Sandy Hook-denier Alex Jones, right-wing provocateur Milo Yiannopoulos, conspiracy theorists Laura Loomer and Paul John Watson, Louis Farrakhan, who promotes anti-Semitic views, and Paul Nehlen, a white nationalist who ran for Congress in 2018.

"We've always banned individuals or organizations that promote or engage in violence and hate, regardless of ideology," a Facebook representative said Thursday in a statement. "The process for evaluating potential violators is extensive and it is what led us to our decision to remove these accounts today."

The ban includes their individual Facebook accounts, fan pages, and groups affiliated with them. These individuals are also banned from Instagram, the photo-sharing app owned by Facebook.

Jones, who has spread his conspiracy theories about the Sandy Hook school mass shooting on his InfoWars site, was temporarily banned on Facebook last year. His official fan page was also banned, but Jones was allowed to keep his personal account.

The new prohibition makes all of Jones' temporary bans permanent, bans Jones from having a personal Facebook account, and extends more broadly to fan pages and videos that promote InfoWars.

According to Angelo Carusone, the president of Media Matters, nonprofit that monitors conservative misinformation online, says that recent mass shootings and other acts of violence caused by online hate speech prompted Facebook to finally take action.

"The reality is, people are getting killed. There are mass shootings and mass murders that are clearly being connected to ideas like white genocide, which are fueling radicalization," Carusone told *The Washington Post*. "The conditions have changed. When you have these massive catalyzing moments that are connected to real-life consequences, it puts pressure on Facebook and others to look in the mirror."

Facebook isn't the first social media platform to ban some of these polarizing figures. In recent years, Twitter has temporarily or permanently banned Jones, Loomer, Nehlen, and Yiannopoulos for their inflammatory content.

Los Angeles Times (https://www.latimes.com/business/technology/la-fi-tn-facebook-ban-alex-jones-milo-yiannopoulos-20190502-story.html) The Washington Post (https://www.washingtonpost.com/technology/2019/05/02/facebook-bans-extremist-leaders-including-louis-farrakhan-alex-jones-milo-yiannopoulos-being-dangerous/?utm_term=.66811cd057dd)

## April 1, 2019: Under Oath, Jones Admitted His Opinion Was Wrong But Blamed "Psychosis"

During a three-hour long taped deposition as part of a defamation case brought by some of the families of the Sandy Hook victims, Alex Jones claimed he had a "form of psychosis" that caused him to question whether certain events like the Sandy Hook mass shootings were staged.

"And I, myself, have almost had like a form of psychosis back in the past where I basically thought everything was staged, even though I'm now learning a lot of times things aren't staged," Jones said in a video released by Kaster Lynch Farrar & Ball LLP, a Texas law firm representing some of the families.

Jones blamed the "the media" for leading him to distrust everything.

"So long before these lawsuits I said that in the past I thought everything was a conspiracy and I would kind of get into that mass group think of the communities that were out saying that," he said. "And so now I see that it's more in the middle… so that's where I stand."

Jones also acknowledged that some of his reporting was based off of Internet sources like YouTube and 4Chan.

Regardless, Jones would not admit that his conspiratorial claims caused the families pain, and described the lawsuits as an attack on him and on the First Amendment.

"I was stating that I was reporting on the general questioning when others were questioning. And, you know, it's painful that we have to question big public events. I think that's an essential part of the First Amendment in America. And I do not take responsibility for the entire train of things that lawyers and the media have said I've done."

CNN (https://www.cnn.com/2019/03/30/us/alex-jones-psychosis-sandy-hook/index.html) NBC (https://www.nbcnews.com/news/us-news/infowars-alex-jones-claims-psychosis-caused-him-question-sandy-hook-n989091) Deposition Videos (https://www.youtube.com/channel/UCeeCy2sW9BRXjlfsIOA5DgA)

**February 7, 2019: Judges Have Advanced The Cases In Favor Of The Sandy Hook Families In The Past Few Weeks**

*The New York Times* reports on a series of legal victories in favor of the Sandy Hook families in three lawsuits against Alex Jones and Infowars.

In Texas, a judge ordered Jones and Infowars representatives to submit to questioning by the lawyers of one Sandy Hook mother, and also granted access to the company's business records against the wishes of Jones' lawyers, who wanted them to remain sealed.

In Connecticut, a judge ordered Infowars' business associates and partners to testify, and will soon rule on the deposition of Jones himself and other Infowars associates, as per the families' request.

The New York Times (https://www.nytimes.com/2019/02/07/us/politics/alex-jones-sandy-hook.html)

**January 11, 2019: CT Superior Court Judge Grants Sandy Hook Families' Discovery Request To Access Infowars' Internal Documents And Communications**

The six families suing Alex Jones and *Infowars* in Connecticut over repeated defamatory comments about the Sandy Hook Elementary School massacre were granted a legal victory in their case. The judge ruled that the families can gain access to *Infowars'* financial and marketing documents, contracts between *Infowars* and platforms like Facebook and Twitter, and any communications including letters, emails, and text messages related to Sandy Hook, Adam Lanza, crisis actors, or mass shootings. According to an attorney for the families, this documentation is meant to corroborate the claims made in the lawsuit to prove that Alex Jones is a "conspiracy profiteer." The judge will decide whether to let the plaintiffs' legal team depose Jones at a hearing scheduled for this week.

The New York Times (https://www.nytimes.com/2019/01/12/us/alex-jones-infowars-lawsuit.html) ABC News (https://abcnews.go.com/US/families-sandy-hook-shooting-victims-win-legal-victory/story?id=60314174) Hartford Courant (https://www.courant.com/news/connecticut/hc-news-sandy-hook-jones-lawsuit-20190111-xao67zxhmnbrfm2wjnz5xjchcu-story.html)

**August 17, 2018: Motion Accuses Jones Of Intentionally Destroying Evidence Related to Suits**

Lawyers representing the families of two Sandy Hook shooting victims accused Alex Jones of intentionally destroying evidence related to the lawsuit. According to the motion filed, Jones said on his broadcast that he instructed his staffers to delete select content like social media messages and videos, some of which was considered evidence in the Sandy Hook case.

The New York Times (https://www.nytimes.com/2018/08/07/us/politics/alex-jones-evidence-infowars.html?
hp&action=click&pgtype=Homepage&clickSource=story-heading&module=first-column-region&region=top-
news&WT.nav=top-news) Motion (https://int.nyt.com/data/documenthelper/171-alex-jones-sandy-hook-
evidence/283173e237c0c133f158/optimized/full.pdf#page=1)

## August 1, 2018: First Of 3 Defamation Suits Against Jones Reaches Courtroom

Lawyers for Alex Jones are fighting to dismiss a defamation case brought against him and his site Infowars by parents
of victims of the Sandy Hook shooting under the Texas Citizens Participation Act. His attorneys are arguing that what
Jones says on his show is not fact, but rather his opinion. According to Reuters, an attorney for Jones told the judge,
"Maybe it's fringe speech. Maybe it's dangerous speech, but it is not defamation."

The judge has 30 days to rule on a motion to dismiss the case.

The New York Times (https://www.nytimes.com/2018/08/01/us/politics/infowars-sandy-hook-alex-jones.html) Reuters
(https://www.reuters.com/article/us-usa-lawsuit-alexjones/conspiracy-theorist-jones-seeks-halt-of-sandy-hook-
defamation-suit-idUSKBN1KM4GI) Buzzfeed News (https://www.buzzfeednews.com/article/briannasacks/alex-jones-
infowars-defamation-lawsuit)

## July 24, 2018: Alex Jones Compares Himself To Storied Watergate Journalists In Effort To Dismiss Lawsuit

In an attempt to dismiss a defamation lawsuit, Alex Jones of Infowars compared himself to Carl Bernstein and Bob
Woodward, *The Washington Post* journalists who helped uncover the Watergate scandal, saying he acted like a
journalist when he questioned the narrative of the Sandy Hook school shooting in 2012.

Lawyers for Jones wrote in his filing for dismissal: "Such journalism, questioning official narratives, would be chilled
if reporters were subject to liability if they turned out to be wrong….To stifle the press (by making them liable for
merely interviewing people who have strange theories) will simply turn this human tragedy into a Constitutional one."

Bill Bloss, an attorney for the families said in many news reports that, "The First Amendment simply does not protect
false statements about the parents of one of the worst tragedies in our nation's history. Any effort by any of the
defendants to avoid responsibility for the harm that they have inflicted will be unsuccessful."

CBS News (https://www.cbsnews.com/news/alex-jones-compares-himself-bob-woodward-carlbernstein-sandy-hook-
lawsuit/) The Associated Press (https://apnews.com/ce04388309ee44249a0f9461d34bef5f) Motion to Dismiss
(https://drive.google.com/file/d/1kxMDBH1QVV_tlceTsvrF1Jw_QVd14xAr/view)

## May 24, 2018: More Sandy Hook Families File Defamation Lawsuit Against Alex Jones For False Stories Promoted on Infowars

Six families of Sandy Hook victims and an FBI agent filed a third lawsuit Wednesday against Alex Jones and his
businesses for repeated claims he made on his *Infowars* show that the 2012 massacre was a hoax. The families are
suing on defamation, invasion of privacy by false light, intentional infliction of emotional distress, and negligent
infliction of emotional distress. The suit, filed in Superior Court in Bridgeport, Connecticut, comes after two other suits
that were filed last month in Texas by two other Sandy Hook victim families. The complaints from all eight families
allege that Jones used his internet and radio platforms to push the conspiracy theory that the shooting in Newtown was
a staged event. It lists a campaign of abuse starting from December 19, 2012 through June 26, 2017. On a complaint
listed for January 13, 2015, the parents allege that during the broadcast of The Alex Jones Radio Show, Jones said, "…
Sandy Hook is a synthetic completely fake with actors, in my view, manufactured. I couldn't believe it at first. I knew
they had actors there, clearly, but I though they killed some real kids. And it just shows how bold they are, that they
clearly used actors." The complaint says that "a reasonable person would understand these statements to assert that the
Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones."

The lawsuit claims that while Jones' false accusation brought him attention and business, the plaintiffs suffered
personal pain and abuse from the radio and internet personality and his fans.

*The New York Times* reported Elizabeth Williamson writes that Jones claims First Amendment protection for his work and that the most recent lawsuit filed challenges that defense. "The First Amendment has never protected demonstrably false, malicious statements like the defendants'," it reads.

New York Times (https://www.nytimes.com/2018/05/23/us/politics/alex-jones-trump-sandy-hook.html) The Daily by The New York Times (https://www.nytimes.com/2018/05/24/podcasts/the-daily/sandy-hook-alex-jones-infowars-lawsuit.html) NBC News (https://www.nbcnews.com/business/business-news/six-more-families-sue-alex-jones-over-sandy-hook-conspiracy-n876881)

Connecticut Law Tribune (https://www.law.com/ctlawtribune/2018/05/23/connecticut-lawyers-sue-conspiracy-theorist-alex-jones-for-sandy-hook-families-fbi-agent/)

**April 17, 2018: Sandy Hook Parents Take on False Stories Promoted by Alex Jones in Defamation Suit**

The 2012 Sandy Hook school massacre which killed 20 children and 6 adults galvanized parents and relatives of those murdered to promote gun reform. One conservative commentator who responded negatively to their efforts: Alex Jones and his *Infowars* which ran segments claiming the massacre at Sandy Hook was "a giant hoax." Jones' followers have continued to harass Sandy Hook families. Now Leonard Pozner and his former wife, Veronique De La Rosa, parents of Noah Pozner, and Neil Heslin, the father of Jesse Lewis, have responded by filing two defamation suits against Alex Jones stating "defendants' defamatory statements were knowingly false or made with reckless disregard for the truth." They are seeking at least $1 million in damages. This is the second time this year Alex Jones has been sued for defamation. In March, Brennan Gilmore sued Jones for stories that led to threats against him.

New York Times (https://www.nytimes.com/2018/04/17/business/media/alex-jones-sandy-hook.html) Reuters TV (https://www.reuters.tv/v/u5t/2018/04/17/sandy-hook-parents-sue-infowars-alex-jones-for-defamation) Reuters (https://www.reuters.com/article/us-texas-lawsuit-alexjones/sandy-hook-parents-sue-conspiracy-theorist-alex-jones-for-defamation-idUSKBN1HO2FU)

Analysis & Opinion

**February 5, 2020:** <u>The Professor of Denial  (https://www.chronicle.com/article/the-professor-of-denial/)</u>

Amanda J. Crawford writes about James H. Fetzer, a retired philosophy professor who has promoted conspiracy theories since the 1990s. Among the theories he has promoted are that the Apollo moon landing was fake and that the Holocaust where 11 million Jews and others were killed, never occurred.

In 2015, Fetzer published a book *Sandy Hook: It Was a FEMA Drill to Promote Gun Control*, and began a movement of Sandy Hook "truthers." Though it was Alex Jones who, using Infowars, helped the lies spread more quickly, much of the theory itself was invented by Fetzer. In October 2019, a Wisconsin jury awarded Leonard Pozner $450,000 for accusing him of falsifying his son's death certificate. Pozner's son, Noah Pozner, was 6-year-old when he was killed in the Sandy Hook Elementary School shooting.

Unlike Jones, Fetzer says he still believes that the massacre was staged.

**December 5, 2019:** <u>I worked for Alex Jones. I Regret It.  (https://www.nytimes.com/2019/12/05/magazine/alex-jones-infowars.html)</u>

 Josh Owens, a former writer for Infowars, gives a close-up view of what it was like to work with Alex Jones. Lured by Jones' combative personality, Owen's account may help explain why so many are attracted to Jones ' style of broadcasting.

"He railed against government corruption and secrecy, the militarization of police. He confronted those in power, traipsed through the California redwoods to expose the secretive all-male meeting of elites at Bohemian Grove and even appeared in two Richard Linklater films as himself, screaming into a megaphone."

But once he began working with Jones, Owens learned how many of the stories were made up and used to exploit the "prejudices and fears" of Jones's audiences.

**July 8, 2019: Newton Parents Fight Back (https://www.washingtonpost.com/local/education/first-they-lost-their-children-then-the-conspiracies-started-now-the-parents-of-newtown-are-fighting-back/2019/07/08/f167b880-9cef-11e9-9ed4-c9089972ad5a_story.html)**

Susan Svrluga writes in *The Washington Post* about the parents of Newtown and their experience battling conspiracy theorists in court. Using a number of interviews with the parents, she highlights the psychological and emotional toll of "unimpeded conspiracy theories" as well as the way in which social media enables their quick spread.

"Story by story, site by site, year after year," Svrluga writes," Pozner has been working to restore the truth about his son."

**March 31, 2019: Legal System Will Force Jones To Tell The Truth (https://www.nytimes.com/2019/03/31/opinion/alex-jones-sandy-hook.html)**

Charlie Warzel writes in the *New York Times* that the deposition of Alex Jones in one of the defamation lawsuits he is faced with "highlights a troubling reality: The legal system may be the only way to defang a well-known conspiracy theorist at the height of his powers."

**August 6, 2018: Alex Jones Lawsuit Will Change The Way We Think About Free Speech On The Internet (https://www.wired.com/story/alex-jones-lawsuit-will-help-redefine-free-speech/)**

Emma Grey Ellis asserts in *Wired* that the legal questions of free speech on the internet brought up in the defamation cases against Alex Jones will have formative implications. Are the victims' parents public figures? Is what Alex Jones says the truth, or is it trolling? Is Infowars a media institution? "This push and pull between internet and legal norms is a good thing—as long as it continues to evolve," she writes. "That's important is we learn to negotiate the balance between speaking safely, and freely, on the web."

**July 24, 2018: Are There Actual Constitutional Concerns In Jones' Lawsuit? (https://www.esquire.com/news-politics/politics/a22538181/alex-jones-sandy-hook-trial/)**

Charles P. Pierce writes in *Esquire* that the case contains may test the constitutional limits of talk radio, punditry, and extreme internet broadcasting. He also makes note of the other fringe figures that have been represented by Jones' legal team in the past.

-

Documents & Resources

*Pozner v. Jones*: Lawsuit against Alex Jones and Infowars and others by Sandy Hook shooting victim Noah Pozner's parents Leonard Pozner and Veronique De La Rosa in Texas.

Pozner Complaint (https://drive.google.com/file/d/1SnPMj3h2sdlCfL1e4nwm7d0jSCercoV1/view) Alex Jones Motion to Dismiss (https://www.courthousenews.com/wp-content/uploads/2018/08/Alex-Jones-Motion-to-Dismiss.pdf)

*Lafferty v. Jones:* Lawsuit against Alex Jones and Infowars and others by six families of Sandy Hook shooting victims in Connecticut.

Complaint (https://drive.google.com/file/d/12mHNXnFQo2nH555yJxC5JIEEeAoxi_Fj/view) Motion to Dismiss Plaintiffs' Complaint (https://drive.google.com/file/d/1kxMDBH1QVV_tlceTsvrF1Jw_QVd14xAr/view)

*Heslin v. Jones*: Lawsuit against Alex Jones and Infowars and others by father of Sandy Hook shooting victim Neil Heslin in Texas.

Complaint (https://drive.google.com/file/d/1opX6d3Bycbl4sWGo8o37SuPcjxDanzjL/view)

*Sherlach v. Jones:* Lawsuit against Alex Jones and Infowars and others by husband of Sandy Hook shooting victim William Sherlach spouse of Mary Sherlach in Connecticut.

Complaint (https://drive.google.com/file/d/1iNhsZCYo6ifS9M0JHBiLO1-x2KmjuLhT/view)

Allegations made by Alex Jones and Infowars that created the foundation for the complaints detailed in the lawsuit.

Below are a select few instances in which Jones and Infowars contributors made claims to support the Sandy Hook shooting conspiracy theory on broadcasts and in published articles over the course of many years.

In 2013, Jones called the shooting *"staged"* and said, *"It's got inside job written all over it."*

In March 2014, Alex Jones began stating his allegation regarding a "fake" interview between Anderson Cooper and Noah Pozner's mother, Veronique De La Rosa. The allegation that the interview took place in front of a "blue screen" became central to Jones' assertion that the Sandy Hook school shooting was manipulated by the government and performed by crisis actors.

*"Folks, we've got video of Anderson Cooper with clear blue-screen out there. [Shaking head]. He's not there in the town square. We got people clearly coming up and laughing and then doing the fake crying. We've clearly got people where it's actors playing different parts for different people, the building bulldozed, covering up everything. Adam Lanza trying to get guns five times we're told. The witnesses not saying it was him…I've looked at it and undoubtedly, there's a cover-up, there's actors, they're manipulating, they've been caught lying, and they were pre-planning before it and rolled out with it."*

In May 2014, InfoWars published an article titled: "CONNECTICUT TRIES TO HIDE SANDY HOOK TRUTH." (https://www.infowars.com/connecticut-tries-to-hide-sandy-hook-truth/)

In September 2014, Infowars published an article titled: "FBI SAYS NO ONE KILLED AT SANDY HOOK." (https://www.infowars.com/fbi-says-no-one-killed-at-sandy-hook/)

*"The whole thing is a giant hoax. How do you deal with a total hoax? It took me about a year, with Sandy Hook, to come to grips with the fact that the whole thing was fake. I did deep Research."* (December 2014)

*"The general public doesn't know the school was actually closed the year before. They don't know they've sealed it all, demolished the building. They don't know that they had the kids going in circles in and out of the building as a photo-op. Blue-screen, green-screens, they got caught using."* (December 2014)

*"You learn the school had been closed and re-opened. And you've got video of the kids going in circles, in and out of the building, and they don't call the rescue choppers for two hours, and then they tear the building down, and seal it. And they get caught using blue-screens, and an email by Bloomberg comes out in a lawsuit, where he's telling his people get ready in the next 24 hours to capitalize on a shooting. Yeah, so Sandy Hook is a synthetic, completely fake with actors, in my view, manufactured. I couldn't believe it at first. I knew they had actors there, clearly, but I thought they killed some real kids. And it just shows how bold they are that they clearly used actors. I mean they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in Turkey, or Pakistan. The sky is now the limit."* (January 2015)





