**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN

               Plaintiff

      v.

INFOWARS, LLC, et al

            Defendants.

**Case Number:   0:20-cv-61912**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 60 (b) FOR
RECONSIDERATION AND TO VACATE ORDER OF MARCH 25, 2022 AND TO
GRANT LEAVE TO AMEND COMPLAINT**

Plaintiff Larry Klayman ("Mr. Klayman") hereby moves for reconsideration of the Court's March 25, 2022 order denying leave to amend his complaint and dismissing the action with prejudice. ECF No. 77. This motion is being made pursuant to Fed. R. Civ. P. 60(b), which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons… any other reason that justifies relief." Here, the Court's March 25, 2022, order egregiously results in an unjust miscarriage of justice as it is without any real factual or legal bases. It is so cursory, conclusory and devoid of specific factual or legal reasoning that an inference logically results that it may have been issued with regard to potentially undisclosed considerations of extra-judicial bias, and not based on the application of the facts or law as properly pled by Mr. Klayman.

This case involves Roger Stone's concerted tortious action as joint tortfeasors with the other Defendants as his surrogate agents. Stone profits by and is known to be a "gatekeeper" for Donald Trump, especially in the Palm Beach, Broward and South Florida region, where he attends Republican events, is omnipresent, and creates the aura that he is a great influencer of

former President Donald Trump. Palm Beach and South Florida, not coincidentally, is also where former President Donald Trump resides at Mara Lago in this judicial district. This Court was appointed to the bench by then President Donald Trump and it is widely known that Stone has played a role in recommending persons to Mr. Trump, sometimes for remuneration as occurred when he attempted to illegally sell pardons using his connections with the former president. Plaintiff has thus asked the Court, without any accusation that the Court's appointment to the bench resulted in similar remuneration for Mr. Stone, for disclosure of this potential issue, for purposes of any disposing of this motion, appeal or collateral proceedings should this prove necessary.

Indeed, a few years after Mr. Klayman was, as a young lawyer, a prosecutor of the U.S. Department of Justice, Mr. Stone, then a partner of the political consulting firm of Black, Manafort, Stone and Kelly, recommended gratuitously, without remuneration, Mr. Klayman to President George H.W. Bush for the position of U.S. Attorney for the Southern District of Florida. Stone knew Klayman because they had both worked on the political presidential campaign of then Congressman Jack Kemp, and Mr. Klayman had also represented Stone on a personal matter when he was accused of attending a swingers party with his wife Nadia at the 1992 Republican Convention in San Diego where Congressman Kemp was nominated as a vice presidential candidate on the ticket with presidential candidate Senator Bob Dole. Of course that was before it became apparent that Mr. Stone, many years later and now a seven count convicted felon for making false statements to the government, witness tampering and obstruction of justice, was the unethical, lawless and vindictive person regrettably he came to be over the last several decades. It is no secret that Stone admittedly prides himself on being the penultimate dirty trickster and a Netflix documentary titled "Get Me Roger Stone" underscores this hard

truth, by his own incredible boastful admissions. See <u>Exhibit 1</u>, ECF No. 78.

This Court's order of March 25, 2022 is highly flawed and grossly erroneous and needs to be vacated, with leave granted to file the Amended Complaint for the following compelling reasons.

*First*, the Court incorrectly labels Mr. Klayman's proposed amended complaint as a "shotgun pleading." This is not the case and patently false. The proposed amended complaint very clearly and in extreme detail in the preamble facts and each specific count sets forth the roles that each of the individual Defendants played in the defamation of Mr. Klayman. The proposed amended complaint establishes that Stone was at the center of everything, and the Infowars Defendants were "acting in concert and at the direction of Stone…." Am. Comp. ¶ 19. The proposed Amended Complaint is far from conclusory painstakingly as to each and every count. To support the pattern and practice of Stone's malicious and tortious conduct generally, the Amended Complaint also sets forth Stone's established pattern and practice of using surrogates and agents to defame his victims, so much so that the Honorable Amy Berman Jackson, the jurist presiding over Stone's criminal trial, imposed a total "gag" order on Stone and his use of surrogates after Stone had threatened Judge Jackson on Instagram. Am. Comp. ¶¶ 27-28. The defamatory statements were aired (as Stone's surrogates and agents and joint tortfeasors), on Defendants Infowars and Free Speech Systems' network, which are both owned, controlled, and operated by Defendants Alex Jones and David Jones. Am. Comp. ¶ 11. The defamatory statements at issue were made on *The War Room* with Defendant Owen Shroyer, Am. Comp. ¶¶ 35 – 45. Defendants Alex Jones and David Jones collectively run Infowars, and Defendant David Jones "directs, assists and helps him with his activities, including fixing media stores and endorsing and/or aiding his slanderous and/or fraudulent behaviors, all for profit."

Am. Comp. ¶ 14, Ex. 1. Thus, the roles of each of the Defendants working together—and Stone worked for the Infowars Defendants at the time -- to maliciously defame Mr. Klayman. This is clearly pled and established and, therefore, it was clearly erroneous for the Court to find that it had to "speculate as to the involvement of each Defendant in the publication of each statement." ECF No. 77 at 5.

*Second*, the Court erroneously found that Mr. Klayman's proposed amended complaint was a "shotgun pleading" because it was "replete with conclusory, vague, and immaterial facts." ECF No. 77 at 4. The Court appears to take issue with discussion about Stone's background, but this background information is necessary to establish Stone's pattern and practice of himself, and also using surrogate agents such as the Infowars Defendants,  to do his defamatory and tortious "dirty work," as was the case here. These are background facts that add context to the proposed amended complaint. Indeed, "[a] complaint must contain enough facts to indicate the presence of the required elements." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1315 (S.D. Fla. 2017). These background facts are necessary to establish the fact that the Infowars Defendants were acting as Stone's surrogates and agents and as joint tortfeasors.

Pursuant to the Restatement (Second) of Torts §577 comment (f), "One is liable for the publication of defamation by a third person whom as his servant, agent, or otherwise he directs or procures to publish defamatory material."  This fundamental principle has been adopted by Florida Courts. "One is liable for defamation by a third person whom as his servant, agent, or otherwise he directs or procures to publish defamatory matter." *Universal Commun. Sys. v. Turner Broad. Sys.,*2005 U.S. Dist. LEXIS 58575 (S.D. Fla. Mar. 17, 2005). Here, the Amended Complaint expressly set forth the facts that show that all of the Defendants were working

together in concert as joint tortfeasors, with the Infowars Defendants acting as Stone's agents and surrogates. Thus, each and every single Defendant is equally liable for the defamatory statements alleged herein.

*Third*, the Court erroneously denies even leave to amend, choosing to simply dismiss the case with prejudice, for whatever improper reason.  Mr. Klayman's proposed amended complaint is clearly properly pled, is not a shotgun pleading, and complied with the directives of the Honorable Darrin P. Gayles when he granted leave to amend. Importantly, even if the Court disagreed, it should have granted leave to amend instead of dismissing the case with prejudice and not improperly ruled, without factual or legal bases,  than any amendment would be futile.

FRCP Rule 15(a) provides that leave to amend shall be freely given when justice requires. "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The U.S. Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989). The U.S. Supreme Court explained that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper source of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 at 182. A plaintiff may even amend a complaint during or after trial, if justice so requires. "A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." Fed. R. Civ. P. 15(b)(2). Indeed, "cases should, as far as possible, be determined on their merits and not on technicalities . . ." *Copeland Motor Co. v. General Motors Corp.*, 199 F.2d 566, 567-68 (5th Cir. 1952). There is no issue of timeliness,

since "Federal courts grant leave to amend even after trial has commenced." *Data Optics Cable, Inc. v. Americom Automation Servs., Inc.*, No. 14-CIV-21372-MORE, 2015 U.S. Dist. LEXIS 7258, at *2 (S.D. Fla. Jan. 22, 2015). Thus, the "issues" asserted by the Court, while erroneous as set forth above, could easily have been mooted out with a simple amendment. The Court, at a minimum, should have therefore granted leave to amend in the interests of justice.

In sum, as set forth above, the Court's March 25, 2022 order was clearly and egregiously erroneous, and it must be immediately vacated and corrected forthwith in order to conserve time and judicial resources to avoid having to go up on appeal and pursue collateral proceedings.. Mr. Klayman's proposed amended complaint clearly was not a shotgun pleading, and sets forth the role of each of the parties in the malicious defamation and tortious conduct at issue in great detail, and did not contain any extraneous, immaterial facts beyond what was necessary to provide the Court with an adequate background and foundation showing a pattern and practice of similar conduct with regard to others, which raises an evidentiary inference of similar illegal conduct herein.

Lastly, Mr. Klayman respectfully requests oral argument on this motion before any ruling is made, pursuant to his due process and other rights.

Dated: March 29, 2022                                             Respectfully Submitted,


                                                    /s/ *Larry Klayman*
                                                    Larry Klayman, Esq.
                                                    7050 W. Palmetto Park Rd
                                                    Boca Raton, FL, 33433
                                                    Telephone: (561)558-5336
                                                    Email:leklayman@gmail.com

                                                    *Pro Se*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of March 2022 , a true copy of the foregoing

was filed via ECF and served to all counsel of record though the Court's ECF system.

_/s/ Larry Klayman_